IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

PENROD MANAGEMENT GROUP,

                Plaintiff-Petitioner,

      v.

STEWART'S MOBILE CONCEPTS, LTD.,

                Defendant-Respondent.

Civil Action No.: 07-CV-10649

# PENROD MANAGEMENT GROUP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITION TO ENJOIN ARBITRATION

Attorneys for Plaintiff-Petitioner
Penrod Management Group

James V. Marks (JM 6257)
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007 3189
(212) 513-3200

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT .............................................................................................................................2

POINT I      PENROD HAS NOT WAIVED ITS RIGHT TO A JUDICIAL
DETERMINATION OF ARBITRABILITY........................................................2

         A.     The Federal Arbitration Act Applies………………………………… 2

         B.     New York Law Does Not Apply to the Issue of Waiver ..............................2

         C.     Penrod has Preserved its Right to a Judicial Determination of
Arbitrability by Objecting to Arbitration Before the Arbitrator .................3

POINT II     PENROD HAS SUSTAINED ITS BURDEN OF PROVING THAT
INJUNCTIVE RELIEF IS WARRANTED..........................................................7

         A.     Penrod Will Be Irreparably Harmed if a Stay is not Granted Not
Only Because of the Cost and Expense of Litigating the Arbitration
but Also Because of the Risk of a Default Judgment or Waiver of
the Right to its Day in Court .......................................................................7

         B.     Likelihood of Success on the Merits...........................................................8

CONCLUSION............................................................................................................................11

## TABLE OF CASES

Alejandre v. Telefonica Larga Distancia, de Puerto Rico, Inc.,
 183 F.3d 1277 (11th Cir. 1999) ...........................................................................................10

Application of Herman Miller, Inc.,
 No. 97 Civ. 7878, 1998 WL 193213 (S.D.N.Y. Apr. 21, 1998)............................................ 6-7

Barbier v. Shearson Lehman Hutton Inc.,
 948 F.2d 117, 120 (2d Cir. 1991).............................................................................................2

Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine,
 951 F.2d 1357 (2d Cir. 1991).................................................................................................10

First Options of Chicago v. Kaplan,
 514 U.S. 938, 946, 115 S. Ct. 1920 (1995).............................................................................5

Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations,
 107 F.3d 979 (2d Cir. 1997).................................................................................................... 8

Merrill Lynch & Co., Inc. v. Optibase, Ltd.,
 No. 03 Civ. 4191, 2003 WL. 21507322 (S.D.N.Y. June 30, 2003)..........................................9

Murphy v. Wack,
 No. 89 CIV. 3300, 1990 WL. 77249 (S.D.N.Y. May 29, 1990)..........................................2, 3

Opals on Ice Lingerie v. Bodylines Inc.,
 320 F.3d 362 (2d Cir. 2003)................................................................................................4, 5

Sands Bros. & Co. v. Zipper,
 No. 03 Civ. 7731, 2003 WL. 22439789 (Oct. 27, 2003) ....................................................9, 10

Security Ins. Co. of Hartford v. TIG Ins. Co.,
 360 F.3d 322 (2d Cir. 2004)....................................................................................................4

Testamentary Trust v. Watts Inv. Co.,
 No. 99 Civ. 10590, 2000 WL. 546490 (S.D.N.Y. May 3, 2000)..............................................6

Textile Unlimited v. A..BMH & Co.,
 240 F.3d 781 (9th Cir. 2001) ................................................................................................... 6

Verni ex rel. Burstein v. Harry M. Stevens, Inc.,
 903 A.2d 475, 387 N.J. Super. 160 (N.J. Super. A.D. 2006)..................................................10

Woodcrest Nursing Home v. Local 144, et al.,
 788 F.2d 894 (2d Cir. 1986)...........................................................................................3, 6, 7

## **PRELIMINARY STATEMENT**

Through its application to this Court, Penrod is asking the proper authority to determine the questions of arbitrability and alter-ego. Stewart's, on the other hand, is asking this Court to ignore its important role under the Federal Arbitration Act (the "FAA"). It also is essentially asking the Court to compel[1] Penrod to participate in the arbitration despite the undisputed fact that Penrod is non-party to the arbitration agreement. Stewart's argument is premised upon its misunderstanding of certain "waiver" cases and misapplication of New York law. In essence, Stewart's is asking this Court to punish Penrod for having challenged the arbitrator's jurisdiction in the most direct and cost-effective way – by filing objections in the first instance with the arbitrator.

Notably, in its opposition papers Stewart's does not dispute the following:

- The FAA governs this action;
- Courts, not arbitrators, determine issues of arbitrability under Second Circuit law;
- Courts, not arbitrators, determine questions of alter-ego status under Second Circuit law;
- Penrod is not a party to the underlying agreement; and
- Penrod will be forced to spend time and money participating in the arbitration.

These concessions strongly indicate that Penrod has a likelihood of success on the merits and that its application for injunctive relief should be granted.

---

[1] Although Stewart's has not filed a motion to compel arbitration, the Court effectively will be granting Stewart's such relief if it does not stay the arbitration because Penrod will find itself in the Catch-22 situation discussed below.

**ARGUMENT**

**POINT I**

**PENROD HAS NOT WAIVED ITS RIGHT TO A
JUDICIAL DETERMINATION OF ARBITRABILITY**

A.   **The Federal Arbitration Act Applies**

It is undisputed that Penrod, Nikki Beach, and Stewart's are located in different states and that the underlying contract between Stewart's and Nikki Beach required Stewart's to deliver equipment from New York to New Jersey. Thus, the FAA governs this action because it involves interstate commerce. See 9 U.S.C. § 1 et seq.; Barbier v. Shearson Lehman Hutton Inc., 948 F.2d 117, 120 (2d Cir. 1991). Accordingly, federal standards, not Article 75 of the N.Y. C.P.L.R., determine whether Penrod waived its right to a judicial determination of arbitrability.

B.   **New York Law Does Not Apply to the Issue of Waiver**

In its opposition papers, Stewart's does not articulate any basis for its argument that New York law applies with respect to waiver. Penrod presumes that Stewart's argument is based upon the choice-of-law provision in the lease agreement (the "Agreement") between Stewart's and Nikki Beach. Penrod, of course, is not a party to the Agreement and, therefore, is not bound by the choice-of-law provision in it.

Stewart's cites a one page, unpublished decision Murphy v. Wack, No. 89 CIV. 3300, 1990 WL 77249 (S.D.N.Y. May 29, 1990), for the proposition that N.Y. C.P.L.R. Article 75 governs whether this Court may stay the New York Arbitration. That case is distinguishable from the instant case in all material respects. In Murphy, the party seeking a stay of arbitration was the party that initiated arbitration in the first place. Id. at *1. He initiated arbitration pursuant to a collective bargaining agreement relating to public employees. Id. There was no

2

question in <u>Murphy</u> that the parties to the arbitration were parties to the collective bargaining agreement. Although the terms of the agreement were not discussed in the case, it presumably contained a choice-of-law provision making New York arbitration law applicable, thereby making C.P.L.R. § 7505(c) standards applicable to waiver. In any event, there is no indication in this decision that the FAA applied because no interstate interests were implicated.

Here, the parties are legitimately in federal court based upon diversity jurisdiction,[2] and the FAA is implicated given the interstate nature of the dispute. There is simply no basis to apply the C.P.L.R. to the instant arbitration. Thus, federal standards apply to determine whether Penrod waived its right for a judicial determination of arbitrability.

C.  **Penrod has Preserved its Right to a Judicial Determination of Arbitrability by Objecting to Arbitration Before the Arbitrator**

Stewart's primary argument in opposition to Penrod's motion to stay the arbitration is that Penrod waived its right to seek judicial determination of the issue of arbitrability. It is notable that Stewart's relies exclusively on the waiver argument and does not even attempt to sustain its burden of proving that Penrod is Nikki Beach's alter-ego and, therefore, should be bound by the arbitration agreement. The case law is clear, however, that Penrod has not waived its right to seek judicial relief because 1) it has not participated in arguing the underlying merits of Stewart's breach of contract claim or the alter-ego issue; and 2) submitting objections to the arbitrator's jurisdiction in the arbitration proceedings does not waive a judicial determination of the same.

As mentioned in Penrod's November 30, 2007 letter to the Court, in <u>Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home and allied Services Union</u>, 788 F.2d 894, 897 (2d Cir. 1986), the Second Circuit made clear that whether a dispute is arbitrable is an issue that "must in the first instance be decided by the court rather than by the arbitrators." In contrast to

---

[2] Penrod incorporates by reference its November 30, 2007 letter that explains why it believes diversity jurisdiction exists in this case.

3

New York law relating to waiver of the right to a judicial determination of arbitrability, under the federal standards, participation in arbitration proceedings does not necessarily warrant a finding of waiver. Id.

In this case, Penrod's objection in the arbitration to the jurisdiction of the arbitrator did not waive Penrod's right to seek a stay of the arbitration, particularly because the arbitration hearings had not yet and still have not taken place. For example, in Security Ins. Co. of Hartford v. TIG Ins. Co., 360 F.3d 322, 324 (2d Cir. 2004), the parties selected arbitrators and umpires, submitted position statements to the panel, held an organizational hearing, and submitted proposed briefing and hearing schedules. One of the parties also moved before the panel to stay the arbitration. Id. Despite the parties' extensive participation in the arbitration proceedings, the Second Circuit held that there was no waiver of the right to seek a stay. Id. at 329. The Court reasoned that the party had participated in the preliminary arbitration proceedings only, the arbitration hearings had not commenced, and the arbitration panel was on notice that the party would move for a stay of the proceedings. Id.

Here, Penrod has not participated in the arbitration proceedings to such a high degree as occurred in Security Ins. Co. Rather, Penrod's participation in the preliminary arbitration proceedings was minimal and was primarily for the purpose of contesting the jurisdiction of the arbitrators. Penrod, therefore, has not waived its right to seek a stay of the New York Arbitration.

Equally compelling is a case that Stewart's unsuccessfully attempts to distinguish in its opposition papers, Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362 (2d Cir. 2003). In Opals, there was a dispute about whether Bodylines was a party to an arbitration agreement. Id. at 366. The other party, Opals, then commenced litigation in federal court seeking a declaratory

4

judgment that there was a valid agreement between the parties. Id. at 367. While the declaratory judgment action was pending, the parties participated in the arbitration proceedings by attending conferences and exchanging discovery. Bodylines, however, argued throughout the arbitration that the arbitration clause was not valid, that the arbitration panel did not have jurisdiction over the dispute, and that Bodylines was not required to participate in arbitration. Id.

Seven days before the arbitration hearings were to begin, Bodylines sought a temporary restraining order and preliminary injunction in California state court to enjoin the arbitration, which the court denied. Id. Meanwhile, the arbitrators made a provisional finding that the panel had jurisdiction to hear the matter and Bodylines then filed a motion for summary judgment in federal court asserting that the agreement upon which Opals based its claim was invalid. Id. The court granted the motion, finding that there was no valid arbitration agreement. Id.

On appeal, Opals argued that Bodylines had "waived its right to object to proceeding with arbitration because it submitted the issue of arbitrability to the arbitrators, and participated actively in the arbitration." Id. at 368. The court acknowledged that when "a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration." Id. at 368. Notably, however, the court held that participation in the arbitration hearings in order to resolve the question of arbitrability itself did not constitute waiver. Id. at 369. The court noted that the Supreme Court has held that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue." Id. (citing First Options of Chicago v. Kaplan, 514 U.S. 938, 946, 115 S. Ct. 1920 (1995)).

The Opals court reasoned that, based on First Options, the fact that Bodylines objected to having an arbitrator decide the dispute suggested an *unwillingness* to submit to arbitration. Id.

5

(citing Textile Unlimited v. A..BMH & Co., 240 F.3d 781, 788 (9th Cir. 2001) (holding that party did not waive its right to object to arbitration by participating in arbitration proceedings where the party "only participated in the arbitration to contest the arbitration itself")).[3]

In the case at bar, by participating in the arbitration for the purpose of contesting the jurisdiction of the arbitrator, Penrod showed an unwillingness to submit to arbitration with respect to Stewart's breach of contract claim. As such, Penrod preserved its right to a subsequent judicial determination of arbitrability.

Stewart's also cites Testamentary Trust Under Article Seventh of Last Will and Testament of Jones v. Watts Inv. Co., No. 99 Civ. 10590, 2000 WL 546490 (S.D.N.Y. May 3, 2000), to support its waiver argument. Testamentary Trust is distinguishable from the instant matter because there, the court held that because the petitioner addressed the merits of the case and waited until after the arbitrator rendered an adverse decision on the merits, the petitioner waived its right to stay arbitration. Here, the arbitrator has not received evidence on the alter-ego issue and has not rendered a decision on it. The parties also have not arbitrated the merits of Stewart's underlying breach of contract claim. Simply stated, the reasons that the court denied the motion to stay arbitration in Testamentary Trust are not present here. Indeed, the Court in Testamentary Trust distinguished its holding from Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home and allied Services Union, 788 F.2d 894 (2d Cir. 1986), and Application of Herman Miller, Inc., No. 97 Civ. 7878, 1998 WL 193213 (S.D.N.Y. Apr. 21, 1998), in which the courts held that the right to judicial determination of arbitrability had not

---

[3] "Textile did not waive its objection to arbitration by failing to object within the time period specified in the arbitration rules. Because Textile never entered into an arbitration agreement, the district court correctly found that Textile did not forgo its right to contest the arbitration by neglecting to timely object. Textile cannot be said to have relinquished a right under a set of rules to which it never agreed." Textile, 240 F.3d at 788. The Textile court distinguished that case from a situation where a party participates on the arbitration on the merits and then contests jurisdiction. Id. Under those circumstances, the court may find a waiver to object to the jurisdiction of arbitration. Id. But in Textile, where Textile only participated in the arbitration to contest the arbitration itself, Textile did not waive its objection to the arbitration. Id.

been waived. Like in <u>Woodcrest</u> and <u>Herman Miller</u>, Penrod is seeking a stay of arbitration <u>before</u> the arbitrator has heard evidence regarding whether Penrod is Nikki Beach's alter-ego and <u>before</u> the parties arbitrate the merits of the breach of contract claim. Therefore, Penrod has not waived its right for a court to make a determination relating to arbitrability.

**POINT II**

**PENROD HAS SUSTAINED ITS BURDEN OF
PROVING THAT INJUNCTIVE RELIEF IS WARRANTED**

A.   **Penrod Will Be Irreparably Harmed if a Stay is not Granted Not Only Because of the Cost and Expense of Litigating the Arbitration but Also Because of the Risk of a Default Judgment or Waiver of the Right to its Day in Court**

Stewart's argues that the only irreparable harm identified by Penrod during the November 30, 2007 hearing was the cost and time associated with litigating the arbitration. This is not correct. During oral argument and in its moving papers, Penrod's counsel also raised the issue of the Catch-22 that Penrod would find itself in if a stay were not granted. In essence, Penrod may be prejudiced if it participates in the arbitration and prejudiced if it does not. Penrod's choices are 1) to not participate in the arbitration proceedings, risk an adverse decision on default, and upon Stewart's motion to confirm the award, risk the court holding that it was bound by the award rendered in a proceedings in which it did not participate; or 2) to participate in the arbitrator's hearings on the merits, attempt to challenge later in court any adverse award, and risk the court holding that Penrod waived its right to seek judicial determination of the alter-ego issue by participating in the arbitration.

Tellingly, during the November 30, 2007 oral argument, the Court asked Stewart's counsel if they would later argue waiver in the event that Penrod participated in the arbitration hearings. After conferring with co-counsel, Stewart's counsel revealed that there was an

7

agreement to adjourn the arbitration hearings and thus, a temporary restraining order was unnecessary. Therefore, neither the Court nor Penrod knows whether Stewart's would argue waiver if Penrod participated in the arbitration on the merits of the alter-ego issue. Given that Stewart's opposition papers herein focus on the issue of waiver, Penrod can only presume that Stewart's would present the same argument later if Penrod actually participates in the arbitration on the merits of the alter-ego issue.

In any event, Penrod has clearly shown irreparable harm justifying injunctive relief. First, as mentioned in Penrod's November 30, 2007 letter to the Court, the Second Circuit has made clear that the cost and expense of participating in the arbitration constitutes irreparable harm in and of itself. See Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 985 (2d Cir. 1997) (affirming district court's decision to issue a preliminary injunction enjoining arbitration because plaintiffs would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable). Second, Penrod will be further irreparably harmed whether it participates in the arbitration or not,: a default award or waiver of the right to its day in court.

**B.   Likelihood of Success on the Merits**

In arguing that Penrod has not shown a likelihood of success on the merits, Stewart's asserts that Penrod waived its right to a judicial determination of arbitrability. As explained above, Penrod has not waived its rights. The cases cited by Stewart's in support of its argument that Penrod fails to show a likelihood of success on the merits based on waiver of the right to a judicial determination of arbitrability are inapposite here. In those cases, the party seeking to stay arbitration had participated in the arbitration on the merits of the claim, whereas Penrod did not arbitrate the merits of Stewart's breach of contract claim or the alter-ego issue.

For example, Stewart's argues that under <u>Merrill Lynch & Co., Inc. v. Optibase, Ltd.</u>, No. 03 Civ. 4191, 2003 WL 21507322 (S.D.N.Y. June 30, 2003), Penrod fails to show a likelihood of success on the merits because it "affirmatively sought adjudication of its motion to dismiss in the arbitral forum, lost without prejudice, and participated in discovery in that forum relating to the merits of its motion." Stewart's, however, fails to recognize the crucial distinction identified in <u>Merrill Lynch</u> between participating in the arbitration by adjudicating the merits of a claim and participating by contesting the jurisdiction of the arbitrator. In <u>Merrill Lynch</u>, the party seeking to stay arbitration (ML& Co.) had participated in the arbitration by moving to compel discovery and by also filing a motion to dismiss that directly related to the <u>merits</u> of the negligence claims. ML & Co. also argued that the claim was not arbitrable. The court noted that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue" and that by raising the arbitrability issue in the arbitration, it appeared that ML & Co. preserved its objection to the arbitrability of the claim. <u>Id.</u> at *4. The court further noted that arbitrability issues that have been preserved can be raised in judicial proceedings. <u>Id.</u> However, the court found that ML & Co. waived the right to have a judicial determination of arbitrability because it argued the merits of the negligence claim. <u>Id.</u> This is the key distinction between <u>Merrill Lynch</u> and the instant case. Penrod has not argued the merits of the alter-ego issue and has not argued the merits of the underlying breach of contract claim brought against it by Stewart's. It has only challenged arbitrability and, therefore, preserved its objection to arbitrability, which it may now raise in a judicial proceeding.

Similarly, in <u>Sands Bros. & Co. v. Zipper</u>, No. 03 Civ. 7731, 2003 WL 22439789, at *2 (Oct. 27, 2003), the court found that the plaintiff had waived the right to object to arbitrability because it had never objected to the arbitrability of the dispute in the arbitration proceedings

itself. Instead, the party filed a motion for summary judgment on the merits of the claim. Because the party had participated in the arbitration on the merits without objecting to arbitrabilty, the court found that it had waived its right to a judicial determination of arbitrability. Id. Again, Penrod has not argued the merits of Stewart's breach of contract claim before the arbitrator. As such, Penrod did not waive the right to a judicial determination of arbitrability.

Finally, Stewart's has failed to present any evidence supporting its argument that Penrod is Nikki Beach's alter-ego and, therefore, may be compelled to arbitrate. As mentioned, the arbitrator also has not decided this issue. Regardless of which state's alter-ego test applies, under the standards of the three most likely applicable laws,[4] the burden of proving that the corporate entity should be disregarded is on the party making the assertion. Verni ex rel. Burstein v. Harry M. Stevens, Inc., 903 A.2d 475, 497, 387 N.J. Super. 160, 198 (N.J. Super. A.D. 2006); Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991) (applying New York law); Alejandre v. Telefonica Larga Distancia, de Puerto Rico, Inc., 183 F.3d 1277, 1285 (11th Cir. 1999) (applying Florida law). Having failed to meet its burden, Penrod has not shown a likelihood of success on the merits. The Court, therefore, is simply left with a contract to which Penrod is not a signatory.

In sum, based upon the parties' submissions to date, Penrod has shown a likelihood of success on the merits because 1) Penrod has not waived its right to a judicial determination of arbitrability; 2) Penrod is not a party to an arbitration agreement with Stewart's; and 3) Stewart's has not met its burden of proving that Penrod may be compelled to arbitrate on an alter-ego theory.

---

[4] Penrod assumes that Stewart's will argue that New York law determines whether Penrod is Nikki Beach's alter-ego. Penrod's position is that it is more likely that either New Jersey (the state of Nikki Beach's incorporation and where the Agreement was to be performed) or Florida (the state of Penrod's incorporation) law will apply.

10

## CONCLUSION

Based on the foregoing, Plaintiff-Petitioner Penrod Management Group respectfully requests that an Order be entered vacating Stewart's Demand for Arbitration as to Penrod and permanently enjoining the New York Arbitration. In the alternative, Plaintiff-Petitioner Penrod Management Group respectfully requests a stay of the New York Arbitration so that the Court can determine Stewart's alter-ego allegations.

Dated: New York, New York
December 17, 2007

HOLLAND & KNIGHT LLP

By: _____
James V. Marks (JM 6257)

195 Broadway, 24th Floor
New York, New York 10007
(212) 513-3200

Attorneys for Plaintiffs-Petitioners,
Penrod Management Group

# 4993887_v1