**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------
**PENROD MANAGEMENT GROUP,**

    **Plaintiff-Petitioner,**

    - against -

**STEWART'S MOBILE CONCEPTS, LTD.,**

    **Defendant-Respondent.**
-------------------------------------

07 Civ. 10649 (JGK)

<u>OPINION AND ORDER</u>

**JOHN G. KOELTL, District Judge:**

    Stewart's Mobile Concepts, Ltd. ("Stewart's"), the defendant-respondent, was a party to an equipment lease agreement (the "Agreement") with Nikki Beach Atlantic City, LLC ("Nikki Beach"). The Agreement provides that the parties will submit any dispute to binding arbitration in New York, and that the Agreement "shall be construed in accordance with New York law." (Mulvany Certification Ex. A.) On or about September 20, 2006, Stewart's commenced an arbitration against Nikki Beach and Penrod Management Group ("Penrod"), the plaintiff-petitioner. The arbitration demand alleged that Nikki Beach damaged the equipment and failed to pay pursuant to the Agreement. At some point prior to October 2006, Nikki Beach was dissolved and Stewart's was notified that Nikki Beach would not be represented at the arbitration.

    On or about July 27, 2007, Penrod filed a motion to dismiss with the arbitrator, on the grounds that the arbitrator lacked

jurisdiction over Penrod because Penrod was not a party to the Agreement.  Stewart's responded by arguing that Penrod was an alter ego of Nikki Beach.  In its motion to dismiss, Penrod did not argue that the arbitral panel was not the appropriate body to decide the alter ego issue.  On August 16, 2007, the arbitrator issued a written opinion denying the motion to dismiss without prejudice pending discovery on the alter ego issue.  (Mulvaney Certification Ex. K.)  Discovery subsequently proceeded on the alter ego issue and concluded with a stipulation that all documents on the alter ego issue were produced.  (Mulvaney Certification Ex. R.)  The arbitrator has not ruled on the alter ego issue or on the underlying merits of the dispute.  Penrod now moves for a stay of the arbitration proceedings pursuant to Rule 65(a) of the Federal Rules of Civil Procedure.

                              I.

     The general rule is that arbitrability is a matter for the Court to decide.  See Spear, Leeds & Kellogg v. Cent. Life Assur. Co., 85 F.3d 21, 25 (2d Cir. 1996).  This rule applies to the determination of whether a party can be compelled to arbitrate as an alter ego of a party to an arbitration agreement.  See Data-Stream AS/RS Techs., LLC v. China Int'l. Marine Containers, Ltd., No. 02 Civ. 6530, 2003 WL 22519456, at

*3 (S.D.N.Y. Nov. 6, 2003).  Indeed, Stewart's concedes that this is the correct rule of law to be applied.  However, it is also well settled that an agreement to arbitrate may be implied from a party's conduct in arbitration proceedings.  See Gvozdenovic v. United Air Lines, 933 F.2d 1100, 1105 (2d Cir. 1991).

Stewart's argues that Penrod waived its right to object to the jurisdiction of the arbitrator to decide if it was bound by the Agreement by submitting the question of arbitrability to the arbitrator, attending several case management conferences, consenting to venue in New York City, producing discovery as directed by the arbitrator, and serving its pre-hearing witness and exhibit lists.  Penrod responds that its participation in the arbitration is insufficient to effectuate a waiver of its jurisdictional objection.

The Federal Arbitration Act (the "FAA") applies to this case, because there is diversity jurisdiction and the underlying contract "evidenc[es] a transaction involving interstate commerce."  9 U.S.C. § 2; see also Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 120 (2d Cir. 1991).  The Agreement includes a choice of law clause which states that the "Agreement shall be construed in accordance with New York law."  (Mulvaney Certification Ex. A.)  In its opposition papers, the plaintiff appears to argue that the Court should apply the waiver

provisions of Section 7503(b) of the New York Civil Practice Law and Rules ("CPLR") rather than the standards applicable to waiver under the FAA, which are more difficult to satisfy.

This argument is without merit. Penrod cannot be bound by the New York choice of law provision in the Agreement without an initial determination that it is bound by the Agreement. Whether Penrod is bound by the Agreement as the alter ego of Nikki Beach will be decided by ordinary contract and agency principles. See Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776-78 (2d. Cir. 1995); see also HD Brous & Co. v. Mrzyglocki, No. 03 Civ. 8385, 2004 WL 376555, at * 6-*7 (S.D.N.Y. Feb. 26, 2004). The central dispute on this motion is whether that determination should be made in the first instance by the arbitrator or this Court. It would not be appropriate to enforce the choice of law provision against Penrod before it has been determined that Penrod is in fact bound by the Agreement.

In any event, under New York law, the choice of law provision in the Agreement would apply the waiver standards of the FAA rather than the waiver standards of Section 7503(b) of the CPLR to determine whether Penrod had waived its right to have a Court decide whether it was bound by the arbitration provision of the Agreement even though it was not a signatory. The New York Court of Appeals has held that New York arbitration law applies in cases otherwise governed by the FAA where the

choice of law provision "states that New York law shall govern both the agreement and its enforcement." Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp., 826 N.E.2d 802, 806 (N.Y. 2005) (emphasis omitted); see also Smith Barney, Harris Upham & Co. v. Luckie, 647 N.E.2d 1308, 1313 (N.Y. 1995). However, "[i]n the absence of more critical language concerning enforcement," the New York Court of Appeals has found that the parties did not intend to modify the default rules of the FAA. See Diamond Waterproofing, 826 N.E.2d at 806. In this case, the choice of law provision states only that the Agreement "shall be construed in accordance with New York law." (Mulvaney Certification Ex. A.) This language is insufficient to find that the parties intended Section 7503(b) to govern the issue of waiver.

Therefore, the Court will apply the federal standards applicable to the waiver of a jurisdictional objection rather than the waiver standard under New York law. See Herman Miller, Inc. v. Worth Capital, Inc., No. 97 Civ. 7878, 1998 WL 193213, at *3 & n.1 (S.D.N.Y. Apr. 21, 1998) (declining to apply Section 7503(b) in a case arising under the FAA), aff'd, 173 F.3d 844 (2d Cir. 1999).

While courts generally should apply ordinary state-law principles when deciding whether the parties agreed to arbitrate a certain matter, the Supreme Court has "added an important

5

qualification" by holding that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." First Options, 514 U.S. at 944 (alterations in original) (citation omitted). The case law in this Circuit is clear that "to the extent that [a party] participate[s] in the arbitration hearings in order to resolve the question of arbitrability itself, such participation does not constitute waiver." Opals on Ice Lingerie v. Body Lines Inc., 320 F.3d 362, 369 (2d Cir. 2003); see also First Options, 514 U.S. at 946 (1995) ("[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue."). Therefore, Penrod did not waive its objection to arbitrability when it filed its motion to dismiss for lack of jurisdiction with the arbitrator.[1]

Nor does Penrod's other participation in the arbitration constitute a waiver of its jurisdictional objection. Penrod participated in case management conferences, consented to venue

---

[1] Stewart's relies on Sec. Ins. Co. v. TIG Ins. Co., 360 F.3d 322 (2d Cir. 2004), for the proposition that this Court must apply the New York law relating to waiver. Stewart's' reliance is misplaced. TIG involved the application of a California rule relating to the procedural mechanism by which a pending Court proceeding could continue while an arbitration was stayed. TIG did not concern the issue of who should decide the issue of arbitrability or what constitutes a waiver of the Supreme Court's presumption in First Options that the Court is to decide that question unless the parties had unmistakably indicated an agreement to arbitrate the issue. Moreover, TIG concerned the construction of a California choice of law provision to which the parties had indisputedly agreed, unlike in this case where it has yet to be determined whether Penrod is bound by the terms of the Agreement.

6

in New York City, produced discovery on the alter ego issue, and served its pre-hearing witness and exhibit lists. In similar circumstances, courts have found this type of participation to be insufficient for a finding of waiver. See Herman Miller, 1998 WL 193213, at *3 (finding no waiver where party participated in choosing an arbitrator and selecting arbitration dates); cf. Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home and Allied Services Union, 788 F.2d 894, 899 (2d Cir. 1986) (finding no waiver where "participation was minimal, amounting for the most part to efforts to postpone and delay arbitration"). The cases cited by Stewart's are distinguishable because they either involve the application of New York law, which the parties concede provides a less onerous standard to find waiver, or involve situations where a party submitted the merits of the claim to the arbitrator and awaited the arbitrator's decision prior to seeking a stay. See, e.g., Merrill Lynch & Co. v. Optibase, Ltd., No. 03 Civ. 4191, 2003 WL 21507322, at *3-*5 (S.D.N.Y. June 30, 2003); Walter H. Jones v. Watts Investment Co, 99 Civ. 10590, 2000 WL 546490, *3-*4 (S.D.N.Y. May 3, 2000); N.Y. Hotel & Motel Trades Council, AFL-CIO v. Hotel Nikko of New York, Inc., No. 91 Civ. 0795, 1991 WL 168284, at *4-*5 (S.D.N.Y. Aug. 22, 1991); Halley Optical Corp. v. Jagar Int'l Mktg. Corp., 752 F.Supp. 638, 639 (S.D.N.Y. 1990). Penrod did not submit the merits of the dispute to the

arbitrator prior to seeking a stay and its participation in the arbitration thus far has been minimal.[2]

Therefore, the Court finds that Penrod has not waived its objection to the jurisdiction of the arbitrator.

## II.

The Court now turns to whether Penrod has satisfied the standards for the issuance of a preliminary injunction.

> [A] party seeking a preliminary injunction must demonstrate (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000). Because there is no waiver of Penrod's jurisdictional objection, the motion for an injunction should be granted.

Penrod, a non-signatory to the Agreement, has shown a likelihood of success on the merits of its claim that the arbitration should be stayed pending a decision by this Court on

---

[2] Stewart's also relies on Sands Bros. & Co. v. Zipper, where the court found that the plaintiff had waived his right to object to the arbitration. No. 03 Civ. 7731, 2003 WL 22439789, at *3 (S.D.N.Y. Oct. 27, 2003). However, Sands Bros. is factually distinguishable from this case. In Sands Bros., the Court noted that the plaintiff had "actively participated in [the arbitration] for at least eleven months," the parties had completed discovery on the merits, and the plaintiff had "argued the merits of the matter-the same issues it now raises before this Court-in a motion for summary judgment" submitted to the arbitrator. Id. at *2. Penrod's participation was much less significant than the participation of the plaintiffs in Sands Bros. and Merrill Lynch, 2003 WL 21507322.

whether it is bound to proceed with the arbitration. Stewart's will bear the burden of proving that Penrod is the alter ego of Nikki Beach. Furthermore, Penrod would be irreparably harmed if forced to expend time and resources arbitrating an issue that is not subject to arbitration. Masefield AG v. Colonial Oil Indus., Inc., No. 05 Civ. 2231, 2005 WL 911770, at *7 (S.D.N.Y. Apr. 18, 2005) (citing Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 985 (2d Cir. 1997)). Penrod should not be required to proceed with the arbitration until it is determined by this Court that Penrod was the alter ego of Nikki Beach.

CONCLUSION

The foregoing constitutes this Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. For the reasons stated above, Penrod's motion for a stay of the arbitration pending this Court's decision on the issue of whether Penrod is required to proceed with the arbitration is **granted**.

SO ORDERED.

Dated:   New York, New York
         February 16, 2008

                                        _____
                                        John G. Koeltl
                                        United States District Judge

9