UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PENROD MANAGEMENT GROUP,

       Plaintiff-Petitioner,

   - against -

STEWART'S MOBILE CONCEPTS, LTD.,

       Defendant-Respondent.

Civil Action No.: 07-CV-10649

---

## DECLARATION OF CHRISTINE TRAMONTANO
## IN SUPPORT OF PENROD MANAGEMENT GROUP INC.'s MOTION *IN LIMINE*

   CHRISTINE TRAMONTANO declares, under penalty of perjury, as follows:

  1.  I am associated with the law firm of Holland & Knight LLP, attorneys for Plaintiff-Petitioner Penrod Management Group, Inc. ("PMG"). I am fully familiar with the facts and circumstances of this action.

  2.  This declaration is submitted in support of PMG's motion *in limine* to (1) quash Defendant-Respondent Stewart Mobile Concepts, Ltd.'s ("SMC") trial subpoena *ad testificandum* dated May 16, 2008 (the "Trial Subpoena") directed to Jack Penrod and (2) to preclude the admission of the Direct Examination Affidavit of Bob Hiss, the Accounts Receivable Manager for non-party Mr. John, Inc., sworn to on May 5, 2008.

  3.  On November 28, 2007, PMG commenced this action pursuant to Fed. R. Civ. Pro. 65 to enjoin arbitration proceedings that SMC initiated against PMG and non-party Nikki Beach Atlantic City, LLC ("NBAC") before the American Arbitration Association pursuant to an arbitration clause contained in an agreement between SMC and PMG. Annexed hereto as Exhibit A is a true and correct copy of the Petition filed in this action.

4.    SMC argued that PMG should be compelled to arbitrate, based on its theory that PMG is the alter-ego of NBAC.  On February 16, 2008, this Court granted PMG's motion to stay the arbitration pending this Court's determination of whether PMG is the alter-ego of NBAC. Annexed hereto as Exhibit B is a true and correct copy of this Court's Opinion and Order dated February 16, 2008.  As such, the sole issue to be resolved at trial is whether PMG is the alter-ego of NBAC.

5.    PMG has offered in evidence the testimony of John Michael Register, the individual who has the most direct knowledge concerning the facts relevant to SMC's alter-ego allegations. Annexed hereto as Exhibit C is a true and correct copy of the Direct Examination Declaration of John Michael Register.

6.    In support of its claim that PMG is the alter-ego of Nikki Beach Atlantic City, SMG offered in evidence the testimony of Mr. Bob Hiss.  Annexed hereto as Exhibit D is a true and correct copy of the Direct Examination Affidavit of Bob Hiss ("Hiss Aff.") served upon PMG.

7.    The Hiss Aff. references SMC Exhibits 14, 16, and 51.  Annexed hereto as Exhibit E are true and correct copies of SMC Exhibits 14, 16, and 51 served upon PMG and referenced in the Hiss Aff.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Dated:        New York, New York
              June 3, 2008

Christine Tramontano

# 5378914_v1

**EXHIBIT A**

James V. Marks (JM 6257)
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007
(212) 513-3200

Attorneys for Plaintiff-Petitioner
Penrod Management Group

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PENROD MANAGEMENT GROUP,

               Plaintiff-Petitioner,

   - against -

STEWART'S MOBILE CONCEPTS, LTD.,

               Defendant-Respondent.

Civil Action No.:

07-CV-10649

**PETITION**

---

Petitioner, Penrod Management Group, as and for its Petition against Respondent, Stewart's Mobile Concepts, Ltd., hereby respectfully alleges as follows:

**NATURE OF ACTION**

1.     This is a proceeding pursuant to Fed. R. Civ. Pro. 65 to enjoin the arbitration proceedings that Stewart's initiated against the Penrod before the American Arbitration Association.

2.     The arbitration proceedings should be stayed because there is no enforceable arbitration agreement between and among Penrod and Stewart's.

3.     No previous application for the relief herein sought has been made.

4.     Penrod makes this Petition for the sole and limited purpose of challenging the jurisdiction of the arbitration proceedings. By submitting this Petition, Penrod does not consent

to the general jurisdiction of any court in New York or to the jurisdiction of the arbitration proceedings. Penrod expressly reserves all of its rights and defenses, including, but not limited to, service and jurisdictional defenses, that may be asserted in the arbitration proceedings or in any court.

**THE PARTIES**

5.     Petitioner Penrod Management Group is a corporation organized under the laws of the State of Florida and maintains its principal place of business at 1 Ocean Drive, 4th Floor, Miami Beach, Florida 33139.

6.     Upon information and belief, Respondent Stewart's Mobile Concepts, Ltd. is a corporation organized under the laws of the State of New York and maintains its principal place of business at 845 East Jericho Turnpike, Huntington Station, New York, 11746-7504.

**PERSONAL JURISDICTION AND VENUE**

7.     The Court has original jurisdiction of this matter under 28 U.S.C. § 1332 because complete diversity of citizenship exists between Penrod (Penrod Management Group is a Florida corporation with its principal place of business in Florida) and Stewart's (upon information and belief, Stewart's Mobile Concepts, Ltd. is a New York corporation with its principal place of business in New York). The matter in controversy is in excess of $75,000 because it involves a Demand for Arbitration pursuant to an Equipment Lease Agreement between Stewart's and the entity Nikki Beach Atlantic City, LLC under which Stewart's is seeking damages from Penrod in an amount more than $200,000 but less than $300,000.

8.     Venue is proper in this District because the arbitration proceeding that is the subject of this action, if not declared to be unlawful and/or enjoined by this Court, would be conducted within the county of New York in this District.

2

## BACKGROUND

### A.    The Equipment Rental Agreement

9.     On or about April 18, 2005, Stewart's entered into an Equipment Rental Agreement, (the "Agreement") with Nikki Beach Atlantic City, LLC ("Nikki Beach"), whereby Stewart's agreed to lease ten pieces of equipment to Nikki Beach.

10.     The Agreement provides that the parties will submit the matter to binding arbitration in New York in the event that any dispute arose between Stewart's and Nikki Beach.

11.     Section Twenty-Two of the Agreement provides (emphasis added):

> **Arbitration:**  In the event that any dispute between *the parties to this Agreement* cannot be settled, the matter shall be submitted to binding arbitration.  The arbitration shall be conducted in accordance with the rules of the American Arbitration Association, with the prevailing party to be awarded all costs of arbitration and reasonable attorneys fees.  The arbitration shall be held in Suffolk County, New York.  Any judgment upon an award may be entered in the State(s) and Count(ies) where the lessor and lessee do business.

12.     Penrod is not a party to the Agreement and did not execute the Agreement in any capacity.

### B.    The Demand for Arbitration and Status of the Arbitral Proceeding

13.     On or about September 20, 2006, Stewart's initiated the arbitration against Penrod and Nikki Beach before the American Arbitration Association, Case No. 13-118-02115-06 (the "New York Arbitration").

14.     In the demand for arbitration, Stewart's asserts claims against Penrod for breach of the Agreement.

15.     Stewart's also asserts claims against Nikki Beach for breach of the Agreement.

16.     Specifically, Stewart's alleges that Penrod and Nikki Beach breached the Agreement by damaging the equipment and failing to pay.

17.     Stewart's bases its demand for arbitration on the arbitration clause set forth in Section Twenty-Two of the Agreement between Stewart's and Nikki Beach.

18.     To date, Penrod has participated only minimally in the arbitration proceedings in order to contest jurisdiction.

19.     On or about July 27, 2007, Penrod filed a motion to the arbitrator to dismiss the claim of Stewart's for lack of jurisdiction.

20.     Subsequently, the arbitrator issued an opinion denying Penrod's motion to dismiss, notwithstanding the fact that Penrod is not a signatory to any arbitration agreement with Stewart's on the basis that Penrod may be compelled to arbitrate pursuant to the Agreement on an alter ego theory. The arbitrator, therefore, determined that Stewart's was entitled to limited discovery from Penrod relating to the alter ego issue. Penrod complied with the order and provided Stewart's with documentation.

21.     Filing the motion to dismiss for lack of jurisdiction and providing Stewart's with limited discovery relating to the alter ego issue was the extent of Penrod's participation in the arbitration proceedings.

## CLAIMS FOR RELIEF

### COUNT I

22.     Penrod repeats and realleges each and every allegation contained within paragraphs 1 through 21 inclusive of this Petition with the same force and effect as if set forth at length herein.

23.     Penrod is not a proper party to the arbitration proceeding commenced by the Stewart's because there is no enforceable arbitration agreement between Penrod and Stewart's.

4

24.    Based upon the foregoing, Penrod respectfully requests that Stewart's Demand for Arbitration be vacated.

## COUNT II

25.    Penrod repeats and realleges each and every allegation contained within paragraphs 1 through 24 inclusive of this Petition with the same force and effect as if set forth at length herein.

26.    The New York Arbitration is pending and a hearing is scheduled for December 3, 2007.

27.    If the Court declares that the arbitrator has no jurisdiction over Stewart's claims against Penrod, Penrod cannot be forced to participate in the arbitration proceedings.

28.    Based upon the foregoing, Penrod respectfully request that the arbitration proceedings be stayed pursuant to Fed. R. Civ. Pro. 65(a) pending the resolution of the instant matter.

## COUNT III

29.    Penrod repeats and realleges each and every allegation contained within paragraphs 1 through 28 inclusive of this Petition with the same force and effect as if set forth at length herein.

30.    Penrod has a likelihood of success on the claims asserted herein.

31.    Penrod will be prejudiced if it is forced to participate in the arbitration proceedings while the instant application is pending.

32.    The issuance of a temporary restraining order will simply maintain the status quo while the instant application is pending.

33. Based upon the foregoing, Penrod respectfully requests that the Court issue a temporary restraining order pursuant to Fed. R. Civ. Pro. 65(b) enjoining Penrod and Stewart's from participating in the arbitration proceedings.

WHEREFORE, Petitioner, Penrod Management Group, respectfully requests that judgment be entered herein against Stewart's, Stewart's Mobile Concepts, Ltd., staying and perpetually barring the arbitration proceedings and vacating the Demand for Arbitration, and granting Penrod such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 28, 2007

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____
James V. Marks (JM 6257)
195 Broadway, 24th Floor
New York, NY 10007
(212)-513-3200

Attorneys for Plaintiffs-Petitioners, Penrod Management Group Petitioner

# 4957242_v1

6

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PENROD MANAGEMENT GROUP,

      **Plaintiff-Petitioner,**

      - against -

STEWART'S MOBILE CONCEPTS, LTD.,

      **Defendant-Respondent.**

07 Civ. 10649 (JGK)

OPINION AND ORDER

**JOHN G. KOELTL, District Judge:**

Stewart's Mobile Concepts, Ltd. ("Stewart's"), the defendant-respondent, was a party to an equipment lease agreement (the "Agreement") with Nikki Beach Atlantic City, LLC ("Nikki Beach"). The Agreement provides that the parties will submit any dispute to binding arbitration in New York, and that the Agreement "shall be construed in accordance with New York law." (Mulvany Certification Ex. A.) On or about September 20, 2006, Stewart's commenced an arbitration against Nikki Beach and Penrod Management Group ("Penrod"), the plaintiff-petitioner. The arbitration demand alleged that Nikki Beach damaged the equipment and failed to pay pursuant to the Agreement. At some point prior to October 2006, Nikki Beach was dissolved and Stewart's was notified that Nikki Beach would not be represented at the arbitration.

On or about July 27, 2007, Penrod filed a motion to dismiss with the arbitrator, on the grounds that the arbitrator lacked

jurisdiction over Penrod because Penrod was not a party to the
Agreement.  Stewart's responded by arguing that Penrod was an
alter ego of Nikki Beach.  In its motion to dismiss, Penrod did
not argue that the arbitral panel was not the appropriate body
to decide the alter ego issue.  On August 16, 2007, the
arbitrator issued a written opinion denying the motion to
dismiss without prejudice pending discovery on the alter ego
issue.  (Mulvaney Certification Ex. K.)  Discovery subsequently
proceeded on the alter ego issue and concluded with a
stipulation that all documents on the alter ego issue were
produced.  (Mulvaney Certification Ex. R.)  The arbitrator has
not ruled on the alter ego issue or on the underlying merits of
the dispute.  Penrod now moves for a stay of the arbitration
proceedings pursuant to Rule 65(a) of the Federal Rules of Civil
Procedure.

I.

The general rule is that arbitrability is a matter for the
Court to decide.  See Spear, Leeds & Kellogg v. Cent. Life
Assur. Co., 85 F.3d 21, 25 (2d Cir. 1996).  This rule applies to
the determination of whether a party can be compelled to
arbitrate as an alter ego of a party to an arbitration
agreement.  See Data-Stream AS/RS Techs., LLC v. China Int'l.
Marine Containers, Ltd., No. 02 Civ. 6530, 2003 WL 22519456, at

*3 (S.D.N.Y. Nov. 6, 2003).  Indeed, Stewart's concedes that

this is the correct rule of law to be applied.  However, it is

also well settled that an agreement to arbitrate may be implied

from a party's conduct in arbitration proceedings.  See

Gvozdenovic v. United Air Lines, 933 F.2d 1100, 1105 (2d Cir.

1991).

Stewart's argues that Penrod waived its right to object to

the jurisdiction of the arbitrator to decide if it was bound by

the Agreement by submitting the question of arbitrability to the

arbitrator, attending several case management conferences,

consenting to venue in New York City, producing discovery as

directed by the arbitrator, and serving its pre-hearing witness

and exhibit lists.  Penrod responds that its participation in

the arbitration is insufficient to effectuate a waiver of its

jurisdictional objection.

The Federal Arbitration Act (the "FAA") applies to this

case, because there is diversity jurisdiction and the underlying

contract "evidenc[es] a transaction involving interstate

commerce."  9 U.S.C. § 2; see also Barbier v. Shearson Lehman

Hutton, Inc., 948 F.2d 117, 120 (2d Cir. 1991).  The Agreement

includes a choice of law clause which states that the "Agreement

shall be construed in accordance with New York law."  (Mulvaney

Certification Ex. A.)  In its opposition papers, the plaintiff

appears to argue that the Court should apply the waiver

3

provisions of Section 7503(b) of the New York Civil Practice Law
and Rules ("CPLR") rather than the standards applicable to
waiver under the FAA, which are more difficult to satisfy.

This argument is without merit. Penrod cannot be bound by
the New York choice of law provision in the Agreement without an
initial determination that it is bound by the Agreement.
Whether Penrod is bound by the Agreement as the alter ego of
Nikki Beach will be decided by ordinary contract and agency
principles. See Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64
F.3d 773, 776-78 (2d. Cir. 1995); see also HD Brous & Co. v.
Mrzyglocki, No. 03 Civ. 8385, 2004 WL 376555, at * 6-*7
(S.D.N.Y. Feb. 26, 2004). The central dispute on this motion is
whether that determination should be made in the first instance
by the arbitrator or this Court. It would not be appropriate to
enforce the choice of law provision against Penrod before it has
been determined that Penrod is in fact bound by the Agreement.

In any event, under New York law, the choice of law
provision in the Agreement would apply the waiver standards of
the FAA rather than the waiver standards of Section 7503(b) of
the CPLR to determine whether Penrod had waived its right to
have a Court decide whether it was bound by the arbitration
provision of the Agreement even though it was not a signatory.
The New York Court of Appeals has held that New York arbitration
law applies in cases otherwise governed by the FAA where the

4

choice of law provision "states that New York law shall govern both the agreement and its enforcement." Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp., 826 N.E.2d 802, 806 (N.Y. 2005) (emphasis omitted); see also Smith Barney, Harris Upham & Co. v. Luckie, 647 N.E.2d 1308, 1313 (N.Y. 1995).   However, "[i]n the absence of more critical language concerning enforcement," the New York Court of Appeals has found that the parties did not intend to modify the default rules of the FAA. See Diamond Waterproofing, 826 N.E.2d at 806.   In this case, the choice of law provision states only that the Agreement "shall be construed in accordance with New York law."   (Mulvaney Certification Ex. A.)   This language is insufficient to find that the parties intended Section 7503(b) to govern the issue of waiver.

Therefore, the Court will apply the federal standards applicable to the waiver of a jurisdictional objection rather than the waiver standard under New York law.   See Herman Miller, Inc. v. Worth Capital, Inc., No. 97 Civ. 7878, 1998 WL 193213, at *3 & n.1 (S.D.N.Y. Apr. 21, 1998) (declining to apply Section 7503(b) in a case arising under the FAA), aff'd, 173 F.3d 844 (2d Cir. 1999).

While courts generally should apply ordinary state-law principles when deciding whether the parties agreed to arbitrate a certain matter, the Supreme Court has "added an important

5

qualification" by holding that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." First Options, 514 U.S. at 944 (alterations in original) (citation omitted). The case law in this Circuit is clear that "to the extent that [a party] participate[s] in the arbitration hearings in order to resolve the question of arbitrability itself, such participation does not constitute waiver." Opals on Ice Lingerie v. Body Lines Inc., 320 F.3d 362, 369 (2d Cir. 2003); see also First Options, 514 U.S. at 946 (1995) ("[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue."). Therefore, Penrod did not waive its objection to arbitrability when it filed its motion to dismiss for lack of jurisdiction with the arbitrator.[1]

Nor does Penrod's other participation in the arbitration constitute a waiver of its jurisdictional objection.  Penrod participated in case management conferences, consented to venue

---

[1] Stewart's relies on Sec. Ins. Co. v. TIG Ins. Co., 360 F.3d 322 (2d Cir. 2004), for the proposition that this Court must apply the New York law relating to waiver.  Stewart's' reliance is misplaced.  TIG involved the application of a California rule relating to the procedural mechanism by which a pending Court proceeding could continue while an arbitration was stayed.  TIG did not concern the issue of who should decide the issue of arbitrability or what constitutes a waiver of the Supreme Court's presumption in First Options that the Court is to decide that question unless the parties had unmistakably indicated an agreement to arbitrate the issue.  Moreover, TIG concerned the construction of a California choice of law provision to which the parties had indisputedly agreed, unlike in this case where it has yet to be determined whether Penrod is bound by the terms of the Agreement.

in New York City, produced discovery on the alter ego issue, and
served its pre-hearing witness and exhibit lists.  In similar
circumstances, courts have found this type of participation to
be insufficient for a finding of waiver.  See Herman Miller,
1998 WL 193213, at *3 (finding no waiver where party
participated in choosing an arbitrator and selecting arbitration
dates); cf. Woodcrest Nursing Home v. Local 144, Hotel, Hosp.,
Nursing Home and Allied Services Union, 788 F.2d 894, 899 (2d
Cir. 1986) (finding no waiver where "participation was minimal,
amounting for the most part to efforts to postpone and delay
arbitration").  The cases cited by Stewart's are distinguishable
because they either involve the application of New York law,
which the parties concede provides a less onerous standard to
find waiver, or involve situations where a party submitted the
merits of the claim to the arbitrator and awaited the
arbitrator's decision prior to seeking a stay.  See, e.g.,
Merrill Lynch & Co. v. Optibase, Ltd., No. 03 Civ. 4191, 2003 WL
21507322, at *3-*5 (S.D.N.Y. June 30, 2003); Walter H. Jones v.
Watts Investment Co, 99 Civ. 10590, 2000 WL 546490, *3-*4
(S.D.N.Y. May 3, 2000); N.Y. Hotel & Motel Trades Council, AFL-
CIO v. Hotel Nikko of New York, Inc., No. 91 Civ. 0795, 1991 WL
168284, at *4-*5 (S.D.N.Y. Aug. 22, 1991); Halley Optical Corp.
v. Jagar Int'l Mktg. Corp., 752 F.Supp. 638, 639 (S.D.N.Y.
1990).  Penrod did not submit the merits of the dispute to the

7

arbitrator prior to seeking a stay and its participation in the arbitration thus far has been minimal.[2]

Therefore, the Court finds that Penrod has not waived its objection to the jurisdiction of the arbitrator.

## II.

The Court now turns to whether Penrod has satisfied the standards for the issuance of a preliminary injunction.

> [A] party seeking a preliminary injunction must demonstrate (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000). Because there is no waiver of Penrod's jurisdictional objection, the motion for an injunction should be granted.

Penrod, a non-signatory to the Agreement, has shown a likelihood of success on the merits of its claim that the arbitration should be stayed pending a decision by this Court on

---

[2] Stewart's also relies on Sands Bros. & Co. v. Zipper, where the court found that the plaintiff had waived his right to object to the arbitration. No. 03 Civ. 7731, 2003 WL 22439789, at *3 (S.D.N.Y. Oct. 27, 2003). However, Sands Bros. is factually distinguishable from this case. In Sands Bros., the Court noted that the plaintiff had "actively participated in [the arbitration] for at least eleven months," the parties had completed discovery on the merits, and the plaintiff had "argued the merits of the matter-the same issues it now raises before this Court-in a motion for summary judgment" submitted to the arbitrator. Id. at *2. Penrod's participation was much less significant than the participation of the plaintiffs in Sands Bros. and Merrill Lynch, 2003 WL 21507322.

whether it is bound to proceed with the arbitration. Stewart's
will bear the burden of proving that Penrod is the alter ego of
Nikki Beach. Furthermore, Penrod would be irreparably harmed if
forced to expend time and resources arbitrating an issue that is
not subject to arbitration. Masefield AG v. Colonial Oil
Indus., Inc., No. 05 Civ. 2231, 2005 WL 911770, at *7 (S.D.N.Y.
Apr. 18, 2005) (citing Md. Cas. Co. v. Realty Advisory Bd. on
Labor Relations, 107 F.3d 979, 985 (2d Cir. 1997)). Penrod
should not be required to proceed with the arbitration until it
is determined by this Court that Penrod was the alter ego of
Nikki Beach.

## CONCLUSION

The foregoing constitutes this Court's findings of fact and
conclusions of law pursuant to Rule 52(a) of the Federal Rules
of Civil Procedure. For the reasons stated above, Penrod's
motion for a stay of the arbitration pending this Court's
decision on the issue of whether Penrod is required to proceed
with the arbitration is **granted**.

SO ORDERED.

Dated:     New York, New York
           February 16, 2008

John G. Koeltl
United States District Judge

9

**EXHIBIT C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

PENROD MANAGEMENT GROUP, INC.

                                     07-CV-10649

                   Plaintiff-Petitioner,

    - against -                 **DIRECT EXAMINATION**
                                    **DECLARATION OF JOHN**
STEWART'S MOBILE CONCEPTS, LTD.,    **MICHAEL REGISTER IN**
                                    **SUPPORT OF PENROD**
            Defendant-Respondent. **MANAGEMENT GROUP, INC.**

_____

       I, John Michael Register, being duly sworn, declare under penalty of perjury,

pursuant to 28 U.S.C. § 1746, as follows:

## A.    Professional Background

       1.    I am an attorney admitted to practice law in the State of Florida since

1984.  Since 2006, I have served as the Vice President of New Properties for Penrod

Management Group, Inc. ("PMG").  In 2005, I served as the General Counsel to

PMG and Nikki Beach Atlantic City LLC ("NBAC").  As such, I am fully familiar

with the facts set forth herein.

## B.    The Nikki Beach™ Brand

       2.    The Nikki Beach brand was established in 1998 and introduced a

beach club concept bringing dining, fashion, music, and entertainment together.

3.    Today, the Nikki Beach trademark is associated with a long line of successful upscale beach clubs at locations throughout the United States and around the world.   Nikki Beach venues include Miami Beach, Coconut Grove, Hollywood, New York, Reno, St. Barth, Cabo San Lucas, Puerto Vallarta, St. Tropez, Marbella, Morocco, and Portugal.

4.    The Nikki Beach concept has expanded into magazines, clothing, music, news, VIP programming, furniture, and special events.  Earlier this year, the first Nikki Beach hotel opened in Turks and Caicos.

5.    Each Nikki Beach venue and business concept has its own separate corporate structure and management (collectively, "the Nikki Beach Entities").  The Nikki Beach Entities are separate and distinct legal entities with independence, autonomy, and management responsibility.

6.    PMG provides oversight with respect to the initial organization and structure of the Nikki Beach Entities.  It also provides accounting and legal services to the Nikki Beach Entities in exchange for a management fee.  PMG plays no role in the day-to-day operations of the Nikki Beach Entities.  The day-to-day operations are controlled by, and business decisions are made by, the officers of each respective Nikki Beach entity.

2

C.    **Formation of Nikki Beach Atlantic City LLC**

7.    As it did for other Nikki Beach Entities, PMG initiated the formation of NBAC in New Jersey.

8.    On March 4, 2005, NBAC was duly formed, registered, and licensed in New Jersey by the law firm of DeLucry and Sandson, in Atlantic City, New Jersey. NBAC had its principal place of business in Atlantic City, New Jersey.

9.    NBAC was formed to operate a beach club, restaurant, and concert venue on the Jersey shore at Resorts International Hotel in Atlantic City, New Jersey. *See* PMG Ex. A.  NBAC was a multi-tiered entertainment complex with an architectural design, style, sophistication, and attitude that was intended to redefine the boardwalk.

D.    **Start Up Operations of Nikki Beach Atlantic City LLC**

10.    NBAC opened on May 27, 2005 and operated through the second week of September 2005.

11.    In order to operate the beach club, it was necessary for NBAC to petition the New Jersey Casino Control Commission to establish the beach areas in front of the Hotel as a "related facility" and expand the casino hotel alcoholic beverage license to the NBAC operation. *See* PMG Ex. A.

12.    A license was subsequently issued to NBAC d/b/a Nikki Beach. PMG Ex. H.

13.    On March 21, 2005, a Federal Tax ID number was issued to NBAC and registered with the New Jersey Division of Revenue. PMG Ex. A.

14.    On March 23, 2005, NBAC received a Certificate of Authority from the State of New Jersey, Division of Taxation. PMG Ex. B.

15.    On March 25, 2005, NBAC received a business registration certificate from the State of New Jersey, Department of Treasury. PMG Ex. C.

16.    The New Jersey Department of Labor officially recognized NBAC as an employer subject to the New Jersey Unemployment Compensation law, with liability beginning on April 1, 2005. PMG Ex. D.

17.    NBAC hired approximately four hundred employees to operate the beach club. *See* PMG Ex. N.

18.    NBAC applied for a Life Hazard Use Certificate of Registration which was issued by the State of New Jersey, Department of Community Affairs, and Division of Fire Safety on April 25, 2005. PMG Ex. J.

E.    **NBAC Financials**

19.    NBAC was open for three and a half months during the summer of 2005. After being well promoted, NBAC failed to draw budgeted numbers.    While NBAC grossed approximately one and a half million dollars, NBAC's expenses far exceeded its revenues.    For the year 2005, NBAC experienced a loss of $1,565,942.78. *See* PMG Ex. L.

4

20.   NBAC prepared financial statements on a routine, periodic, and ongoing basis in accordance with generally accepted accounting principles.   The year end results for 2005 have been pre-marked as PMG Ex. L.

21.   NBAC was capitalized with loans from PMG, which incurred more than a million dollar loss from the operation.

**F.   Contract with Stewart Mobile Concepts, Ltd.**

22.   On or about April 18, 2005, I, on behalf of NBAC, signed a rental agreement with Stewart Mobile Concept ("SMC") for kitchen equipment to be used by NBAC at the Resorts International Hotel in Atlantic City, New Jersey.   SMC Ex. 12.

23.   Under the rental agreement, SMC agreed to lease NBAC ten pieces of kitchen equipment for which NBAC was to make monthly lease payments.

24.   PMG is not a party to the rental agreement and did not execute the agreement. *See* SMC Ex. 12.

25.   SMC (unlike Mr. John, Inc.) never asked PMG to guarantee the contract.

26.   On April 18, 2005 and April 22, 2005, PMG paid SMC the original down payments on behalf of NBAC because NBAC's bank accounts were in the process of being opened.   NBAC directly made the third payment to SMC in July

2005 after its bank account had been established.   NBAC reimbursed PMG for advancing the down payments.

27.    SMC sent all seven of its invoices for outstanding amounts to NBAC, as evidenced by SMC Exs. 9, 21, 25, 29, 30, 31 and 32.   The SMC invoices were <u>not</u> directed to PMG and PMG was <u>not</u> identified anywhere on the invoices.

**G.    Reply to Affidavit of Keith Futerman**

28.    Contrary to SMC's representations concerning SMC Exs. 11, 24, and 26, I never represented myself as the employee of PMG. Rather as specified in the signature stamp on the referenced exhibits, I represented the interests of Nikki Beach.

29.    The emails from Michael Penrod never referenced PMG. *See* SMC Exs. 2, 3, and 8.

30.    Contrary to the statement in Mr. Keith Futerman's affidavit at paragraph 9, the questionnaire filled out by Michael Penrod is void of any reference to PMG. *See* SMC Ex. 2.

31.    SMC sent the invoices to NBAC <u>not</u> to PMG, as suggested by Mr. Keith Futerman (Futerman Aff. ¶ 20).

32.    It must also be noted that SMC states that Bruce Hanrahan and Tim Hughes were employed by PMG. However the emails relied on by at SMC (SMC Exs. 5 & 8) list and refer to them at "Nikki Marina".

33.    The Nikki Beach Entities use One Ocean Drive, Miami Beach, Florida as an address, a premier location and prestigious address on the most fashionable street in Miami, with the central telephone number (305) 538-1111.  However, the telephone is answered "Nikki Beach", not Penrod Management Group as Mr. Keith Futerman suggested in his affidavit at paragraph 9.

## H.    Closure of Nikki Beach Atlantic City

34.    The beach club industry is highly susceptible to economic downturn. Nikki Beach Entities have enjoyed success by promoting international DJ's and inter-active entertainment with a fashion show backdrop.  However, after being well promoted, NBAC failed to draw budgeted numbers and was closed.

35.    In retrospect, a lethal combination of bad summer weather, crippling cost overruns, and a venue that was too large (50,000 square feet) doomed the project.  It was expected that the complex would draw customers from New York City and Philadelphia; however, these expectations failed to materialize.

36.    At the end of the 2005 summer, after the books were closed, the business was evaluated and it was determined that it could not be a success in the existing venue. The decision was made to cease operations.  NBAC did not re-open.

37.    The entire income of NBAC and capitalization contributed by PMG was used to pay as much of the debt as possible.

38.    SMC is recognized as a creditor under the NBAC A/P Aging Summary and outstandings were recorded in the Vendor Quick Report within the NBAC accounting system. See PMG Ex. M.

39.    NBAC filed a 2005 Federal Tax Return and received a net adjustment credit of $393.61. See PMG Ex. I.

40.    Thereafter NBAC filed a certificate of cancellation with the State of New Jersey, Department of Revenue.  PMG Ex. K.

## I.    Penrod Management Group is not the alter ego of Nikki Beach Atlantic City LLC

41.    NBAC was an operating company with its own source of income.  It maintained its own bank accounts.  NBAC was not a mere instrumentality of PMG. The funds of NBAC were not co-mingled with PMG's funds.  PMG did not use NBAC to perpetrate a fraud or to circumvent the law.

42.    NBAC had its own officers who were responsible for the daily management of the corporation.  Michael Penrod was in charge of the NBAC operation, lived in New Jersey, and had no position with PMG. NBAC had its own management staff working exclusively at the venue.

43.    PMG received no management fees from NBAC because of NBAC's unexpected lack of profit. In fact, other than the reimbursement for the original two down payments advanced to SMC on the rental agreement, PMG received no funds from NBAC.

44.    NBAC maintained its own financial records and other corporate files necessary to the operation of the entity. Bookkeeping was maintained in the Atlantic City office of NBAC on a daily basis by employees of NBAC. When the company ceased operations, all records were placed and retained in a storage facility by Resorts International Hotel Inc.

45.    NBAC had separate financials, followed statutory formalities and had a distinct division of authority within the Nikki Beach Entities.

I declare under penalty of perjury that the foregoing statements are true and accurate to the best of my knowledge, information and belief.

Dated: May 19, 2008                    By: _____

John Michael Register

# 5345911_v5

**EXHIBIT D**

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
88 Pine Street
24th Floor
New York, New York
Telephone: (212) 483-9490
Facsimile: (212) 483-9129
Attorneys for Defendant-Respondent,
Stewart's Mobile Concepts, Ltd.

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PENROD MANAGEMENT GROUP, INC., | : Civil Action No. 07-10649 <br> : (JGK/DFE) <br> : |
| Plaintiff-Petitioner, | : |
| v. | : **DIRECT EXAMINATION AFFIDAVIT** <br> : **OF BOB HISS IN SUPPORT OF** <br> : **DEFENDANT-RESPONDENT, STEWART'S** |
| STEWART'S MOBILE CONCEPTS, LTD., | : **MOBILE CONCEPTS, LTD.** <br> : |
| Defendant-Respondent. | : <br> : |

STATE OF NEW JERSEY      )
                         ) ss
COUNTY OF MIDDLESEX      )

I, Bob Hiss, being duly sworn, deposes and says:

1.    I am the Accounts Receivable Manager for Mr. John, Inc. ("Mr. John") and, as such, I have personal knowledge of the facts set forth herein.    I provide this affidavit in lieu of direct testimony in support of Defendant-Respondent Stewart's Mobile Concepts, Ltd.

A.    <u>Professional Background and Responsibilities</u>

2.    I am the Accounts Receivable Manager for Mr. John and, as of May 2008, will have served in that capacity for four years.

3.    My responsibilities include overseeing Mr. John's accounts receivable department, interacting and corresponding with customers, reviewing and preparing invoices for Mr. John's services, and addressing and resolving outstanding balances owed to Mr. John by its customers.

B.    <u>Mr. John Billing Practices</u>

4.    Mr. John typically bills its customers on a monthly basis by sending invoices for services rendered directly to the customer for payment.

5.    If a new customer inquires about and requests Mr. John's products and services, we first provide the potential new customer with a credit application to be completed and returned to Mr. John.

6.    Mr. John requires a credit application from potential new customers to determine the potential new customer's credit worthiness and ability to pay for Mr. John's products and services.

7.    Mr. John's credit application is a two-paged document that requires the applicant to abide by Mr. John's standard terms and conditions as to any presently outstanding or future

2

account balances.   The credit application also requests the applicant to provide its full corporate name; proper billing address; current telephone and facsimile numbers; whether the applicant is listed and rated with Dunn & Bradstreet; trade references, and their contact information; bank references and account numbers.   By signing the credit application, the applicant authorizes the release of any and all credit information to Mr. John from the listed trade references.   The General Terms and Conditions, which appear on the second page of the credit application, provide that the applicant, among other things, agrees to certain delineated payment terms.

4.   If, after receiving a completed credit application from a potential new customer, a credit check revealed a poor credit rating, then Mr. John would not enter a contract with that potential new customer.

C.   The Credit Application with Penrod Management and Resulting Contract

5.   In or about April 2005, Mr. John sent Penrod Management Group, Inc. ("Penrod Management") a credit application (the "Credit Application") because Penrod Management, as a potential new customer, had inquired about Mr. John's products and services.   Mr. John sent the Credit Application to Penrod Management so that Mr. John could perform a credit check on, and establish credit for, Penrod Management

3

pending it had a good credit rating. Defendant-Respondent's
Exhibit 14 is the credit application that Mr. John sent to
Penrod Management.

6.    On April 21, 2005, Danielle Houser, on behalf of
Penrod Management, completed and submitted the Credit
Application to Mr. John.  In response to the Credit Application,
Ms. Houser provided Penrod Management's address; telephone and
facsimile numbers; credit references; bank references and
account number; and indicated whether Penrod Management was
listed and rated with Dunn & Bradstreet.  Defendant-Respondent's
Exhibit 14 is the Credit Application that was submitted to Mr.
John by Penrod Management.

D.    The Wire Transfer from Penrod Management and Subsequent
      Invoices from Mr. John

11.   On April 26, 2005, Mr. John received a wire transfer
from Penrod Management's Bank of America account in the amount
of $17,700, which represented the initial deposit for the April
25, 2005, Agreement.  Defendant-Respondent's Exhibit 16 is the
confirmation of Mr. John's receipt of the $17,700 wire transfer
from Penrod Management's bank account.

12.   On May 27, 2005, in accordance with the information
provided by Ms. Houser on the Credit Application on behalf of
Penrod Management, Mr. John mailed Invoice # 312744 to Penrod
Management in the amount of $26,085.71.  The invoice was sent to

4

Penrod Management's address at 1 Ocean Drive, Miami Beach, Florida 33139. Defendant-Respondent's Exhibit 51 is the May 27, 2005, invoice that Mr. John sent to Penrod Management.

13. On June 24, 2005, in accordance with the information provided by Ms. Houser on the Credit Application on behalf of Penrod Management, Mr. John mailed Invoice # 398618 to Penrod Management in the amount of $21,201. The invoice was sent to Penrod Management's address at 1 Ocean Drive, Miami Beach, Florida 33139. Defendant-Respondent's Exhibit 51 is the June 24, 2005, invoice that Mr. John sent to Penrod Management.

14. On July 22, 2005, in accordance with the information provided by Ms. Houser on the Credit Application on behalf of Penrod Management, Mr. John mailed Invoice # 475833 to Penrod Management in the amount of $21,012. The invoice was sent to Penrod Management's address at 1 Ocean Drive, Miami Beach, Florida 33139. Defendant-Respondent's Exhibit 51 is the July 22, 2005, invoice that Mr. John sent to Penrod Management.

15. On August 19, 2005, in accordance with the information provided by Ms. Houser on the Credit Application on behalf of Penrod Management, Mr. John mailed Invoice # 561886 to Penrod Management in the amount of $21,754. The invoice was sent to Penrod Management's address at 1 Ocean Drive, Miami Beach, Florida 33139. Defendant-Respondent's Exhibit 51 is the August 19, 2005, invoice that Mr. John sent to Penrod Management.

16.  On  September  16,  2005,  in  accordance  with  the
information provided by Ms. Houser on the Credit Application on
behalf of Penrod Management, Mr. John mailed Invoice # 631700 to
Penrod Management in the amount of $20,400.   The invoice was
sent  to  Penrod  Management's  address  at  1  Ocean  Drive,  Miami
Beach,  Florida  33139.   Defendant-Respondent's  Exhibit  51  is  the
September  16,  2005,  invoice  that  Mr.  John  sent  to  Penrod
Management.

17.  On  September  21,  2005,  in  accordance  with  the
information provided by Ms. Houser on the Credit Application on
behalf of Penrod Management, I wrote to Mr. Register of Penrod
Management  and  indicated  that  the  aforementioned  invoices  were
past  due  and  requested  payment.    I  sent  my  letter  to  Mr.
Register's attention at Penrod Management's address at 1 Ocean
Drive,  Miami  Beach,  Florida  33139.    Defendant-Respondent's
Exhibit 51 is my September 21, 2005, letter to Mr. Register.

18.  At no time did Mr. Register or anyone else from Penrod
Management contact me or otherwise inform me that I was sending
Mr.  John's  invoices  and  my  September  21,  2005,  letter  to  the
wrong entity and address.

19.  I sent Mr. John's invoices and the September 21, 2005,
letter to Penrod Management's address at 1 Ocean Drive, Miami
Beach,  Florida  33139  because,  pursuant  to  the  Credit

Application, Penrod Management was the applicant, customer and entity responsible for the outstanding balance.

20. All of my communications regarding Mr. John's invoices, and Penrod Management's outstanding balance with Mr. John were with employees, agents or representatives of Penrod Management.

21. At no time did Mr. Register or anyone else from Penrod Management contact me or otherwise inform me that Penrod Management was not responsible for the outstanding balance owed to Mr. John.

7

I declare under penalty of perjury that the foregoing statements are true and accurate to the best of my knowledge, information and belief.

Dated: May 5, 2008        By:        Bob Hiss
                                     _____
                                     Bob Hiss


Notary Public

            CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC
                    INHEY
STATE OF NEW YORK            )
                            )  ss
COUNTY OF MIDDLESEX          )

On        5-5-08                                                    ,
before   me,                                                 ,    a
notary public, personally appeared Bob Hiss, a representative of
Mr. John, Inc., and that Mr. Hiss is duly authorized to make
this affidavit on behalf of the corporate Respondent-Defendant
herein.

WITNESS my hand and official seal.

                                    JACQUELINE K. FORMAN
                                   NOTARY PUBLIC OF NEW JERSEY
                                MY COMMISSION EXPIRES FEBRUARY 11, 2012

Signature   Jacqueline K. Forman


8

**EXHIBIT E**

**SMC Exhibit 14**

**mr.john**

the complete source for
temporary restrooms

MJP Use Only

Service Scheduled For:

Salesperson:

Value of Service:

## CREDIT APPLICATION

### PLEASE TYPE OR PRINT ALL INFORMATION

The undersigned hereby applies for credit with Mr. John and agrees to abide by its standard terms and conditions
as printed below as to any presently outstanding or future account balances.

| DATE 4/21/05 | FEDERAL ID: 65-1151495 | DATE STARTED: |
|---|---|---|

| FIRM'S LEGAL NAME: Penrod Management Group, Inc | DBA: |
|---|---|

**BILLING ADDRESS:** 1 Ocean Drive

**CITY/STATE/ZIP:** Miami Beach, FL 33139

**OFFICE ADDRESS (IF DIFFERENT FROM ABOVE):**

**CITY/STATE/ZIP:**

| PHONE NUMBER: 305-538-1111 | FAX NUMBER: 305-534-7253 | RATED IN D&B? ☒ NO ☐ YES | RATING (IF KNOWN): |
|---|---|---|---|

| AMOUNT OF CREDIT REQUIRED: | PURCHASE ORDER REQUIRED? ☐ NO ☐ YES |
|---|---|

**DESCRIPTION OF BUSINESS:** ☐ 1. SOLE PROPRIETORSHIP   ☐ 2. GENERAL PARTNERSHIP   ☑ 3. CORPORATION   ☐ NON PROFIT ORGANIZATION (ATTACH TAX EXEMPT CERTIFICATE)

**NOTE: If numbers 1 or 2 are checked above, please fill in the following information:**

| NAME OF PRINCIPALS | RESIDENTIAL STREET ADDRESS – CITY/STATE/ZIP | SS# | DATE OF BIRTH |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |

### TRADE REFERENCES

| | NAME | CONTACT | ADDRESS | PHONE | FAX |
|---|---|---|---|---|---|
| 1 | Sysco Foods | John Hussey | PO Box 64000-A Miami, FL 33164 | 1-800-877-4166 | |
| 2 | Henry Lee | Joe Knafo | 3301 NW 125th St Miami, FL | 305-685-585 | |
| 3 | Kitchens of the Ocean | John | P.O. Box 276003 Boca Raton, FL 33427 | 1-800-327-0132 | |
| 4 | Southern Wine & Spirits | | 1600 NW 163rd St Miami, FL 33169 | 305-625-4171 | |
| 5 | Premier Beverage | Michael Staruk | PO Box 5500 Miramar, FL 33083 | 305-756-8973 | |

CYQ 2050

### BANK REFERENCE

| NAME | CONTACT | ADDRESS | PHONE |
|---|---|---|---|
| Bank of America | Paula Campos | 701 Brickell Ave Miami, FL 33131 | 305-350-7035 |

| ACCOUNT NUMBER: 0054 8400 7077 | TYPE OF ACCOUNT: Checking |
|---|---|

*I hereby authorize the release of any and all credit information to Mr. John from the above listed references.*

| AUTHORIZED SIGNATURE: Danielle M Houser | TITLE: Accountant |
|---|---|
| PRINT NAME: Danielle Houser | DATE: 4/21/05 |

Penrod 000030

DEFENDANT'S
EXHIBIT
14
Blumberg No. 5114

*Please fax or mail credit application along with the tax exempt certificate, if applicable.*
**Terms: NET 10 days**

200 Smith Street ▫ PO Box 130 ▫ Keasbey, NJ 08832 ▫ 800-628-8955 ▫ Fax: 732-417-0367 ▫ www.mrjohn.com



Russell Reid / Mr. John ■ 200 Smith Street ■ Keasbey, NJ 08832
www.russellreid.com 800.356.4468  www.mrjohn.com 800.628.8955

Wastewater Management  |  Temporary Restrooms  |  Solid Waste Services

## GENERAL TERMS AND CONDITIONS

1. The Rental/Lessee hereinafter referred to as The Customer acknowledges that it has the care, custody and management of the equipment owned by Mr. John Portable Sanitation Units, Inc. (The Company) and accepts responsibility for the equipment and its contents except when it is being physically handled by employees of The Company. The Customer agrees to indemnify and hold harmless the Company from and against any and all claims for losses or damages to property or life (specifically including but not limited to any claims for damages due to personal injury) resulting from the use or possession of The Company=s equipment.

2. The Company shall not be liable for loss or damage due to delay in delivery or service resulting from any cause beyond The Company=s control including but not limited to compliance with any regulations, orders or instructions of any federal, state, or municipal government nor any department or any agency thereof, acts of God, acts or omissions of The Customer, acts of civil or military authority, fires, strikes, factory shutdowns, or alterations, embargoes, war, riots, delays in transportation, or inability due to causes beyond The Company=s reasonable control to obtain necessary labor, manufacturing facilities, or materials.

3. It is expressly understood and agreed this is an agreement of rental/lease only and The Customer does not acquire title to the equipment.

4. To initiate all orders The Customer must agree to the following payment terms. Confirmation of the Customer=s acceptance of these payment terms will be established by signing below and faxing to The Company at 732-417-0367. No orders will be final until a signed copy of this document is received by The Company. Payment Terms:

5. 50% deposit for all orders placed more than six (6) weeks prior to delivery date. Full payment for all orders placed within six (6) weeks of the delivery date. Full payment for all orders 30 days prior to the delivery date. All orders not paid in full 30 days prior to the delivery date will lose their equipment and service reservation. If The Customer fails to pay in full and cancels the order the 50% deposit will be forfeited as outlined below. All COD payments via check at the time of delivery must be secured by a credit card.

6. The Customer may cancel this order, reduce quantities, revise specifications or extend schedules only by mutual agreements and agrees to pay proper cancellation charges which shall take into account expenses already incurred and commitments made by The Company and shall indemnify The Company against any loss, such loss may or shall not to exceed total contract price.

| Canceled Before Event | % of Deposit Returned |
|---|---|
| 120 days | 75% |
| 90 days | 50% |
| 60 days | 25% |
| 30 days | none |

7. The Customer agrees to properly protect the equipment hereby leased against damage or loss to same or any part thereof from any cause whatsoever and further agrees to return same to The Company in as good condition as received, excluding reasonable wear and tear. All orders including the Premier or Trailer product require a Certificate of Insurance naming Mr. John, Inc. as additional insured in the amount stated on the temporary restroom service agreement. Mr. John will not release delivery of any Premier or Trailer prior to receiving a faxed copy of the Certificate of Insurance to 732-417-0367.

8. In the event that this agreement is not properly executed by or on behalf of The Customer, the acceptance of the leased equipment by customer when delivered by The Company pursuant to order of The Customer, shall be subject to all the terms and conditions of this agreement.

**SMC Exhibit 16**



Wire Transfer Archive          COMMERCE BK MARLTN    Value Date: 04-26-2005 to 04-26-2005          Page:

RCP    DIR    MID                    AMOUNT      CREATE DATE & TIME    VAL DATE    TYPE    BANK    DEPT    BRANCH    VER    TEMPLATE    MSG STATUS
PRD    I    05042609837PL00        17,700.00    04-26-2005 09:48:37    04-26-2005    1000    136    741B9999    FEZ    0    ADVICE    AGED

DEBIT ACCOUNT:                    BANK    ACCT TYPE & NUMBER    CUST CODE          CUSTOMER NAME                                            0.00
CREDIT ACCOUNT: 136              DDA 21095107                    013621095107      RUSSELL REID WASTE HAULING DIS                          0.00

SENDER: 026009593 BK AMER NYC                                                     RECEIVER: 031201360 CORN BK MARLTON
ORIGINATOR: AC 005680070T7                                                        BENEFICIARY: AC 0021095147
            PENROD MANAGEMENT GROUP, INC.                                                      MR JOHN/RUSSELL REID CO
            1 OCEAN DR
            MIAMI BEACH, FL          33139-7321

ORIGINATING BANK:                                                                 BENEFICIARY BANK:

INSTRUCTING BANK:                                                                 INTERMEDIARY BANK:

                                        REFERENCE FOR BENEFICIARY:
SENDER REFERENCE: 2005042600628072      AS OF DMII & REASON: 12-31-1969
PRODUCT CODE: CTR                       REFERENCE INFO:
        IMAD: 20050426S6B7HU4S000520    DISPOSITION:
        OMAD: 20050426C1B7HU1C000556042609G5FT01

OBI: DEPOSIT ON TOLBITS

BBI:

NON-ACCOUNT INFORMATION:
    NAME :
    ADDR1:
    ADDR2:                                              PHONE:
    CITY :
    DRIVER'S LICENSE:    STATE:          ZIP:
    SSN OR EIN:          TAXPAYER ID:    STATE OF ISSUE:    EXPIRATION DATE: 12-31-1969
                                                           COMMENTS:

DEFENDANT'S
EXHIBIT
16

TOTAL P.002

.../09/2008 11:48 FIP  MR JOHN/RUSSELL REID    * Operations    056 633 6625
  FEB-09-2006  10:47  COMMERCE CASH MANAGEMENT

**SMC Exhibit 51**

September 21, 2005

Michael Register
Penrod Management Group, Inc
1 Ocean Drive
Miami Beach, FL 33139

Dear Michael Register:                                          Customer ID:   036599

As of September 21, we have not received your past due payment. Please check your records. Our
records indicate that the following invoices and amounts are past due:

| Invoice Date | Invoice # | Balance Remaining |
|---|---|---|
| 09/16/2005 | 0000631700 | $20,400.00 |
| 08/19/2005 | 0000561886 | $21,754.00 |
| 07/22/2005 | 0000475833 | $21,012.00 |
| 06/24/2005 | 0000398618 | $21,201.00 |
| 05/27/2005 | 0000312744 | $26,085.71 |
| | Total Balance | $110,452.71 |

If you have already sent your payment, please disregard this notice and accept our thanks for
your payment. Please contact me at (732) 692-2474 with any questions.

Sincerely,


Robert Hiss
Accounts Receivable Manager
bhiss@russellreid.com



DEFENDANT'S
EXHIBIT
51



PLEASE MAIL PAYMENT TO:

Mr. John Inc.
PO Box 130
Keasbey, NJ 08832

REMITTANCE COPY-DETACH AND RETURN WITH PAYMENT

| CUSTOMER CODE | INVOICE # | AMOUNT PAID |
|---|---|---|
| 036599 | 0000312744 | |

| CHARGE MY: | ☐ Visa | ☐ MasterCard | ☐ AMEX | ☐ Discover |
|---|---|---|---|---|
| Cardholder Name | | | | |

| Cardholder Address, City State & Zip Code |
|---|

| Card # |
|---|

| Amount Paid | Exp. Date |
|---|---|

| Signature |
|---|

Penrod Management Group, Inc
1 Ocean Drive
Miami Beach, FL 33139

$25.00 Returned Check Fee | Terms: Net 10 Days | Make Checks Payable to Mr. John Inc.



Mr. John Inc.
PO Box 130
Keasbey, NJ 08832
Phone: (732) 225-2233
Fax: (732) 417-0367

| | |
|---|---|
| Customer Number | 036599 |
| Invoice Date | 5/27/2005 |
| Invoice Number | 0000312744 |
| Page | Page 1 of 1 |

Penrod Management Group, Inc
1 Ocean Drive
Miami Beach, FL 33139

| Date/Period | Qty | N/C Qty | Description | Rate | Amount |
|---|---|---|---|---|---|
| Site 036599-001 - Nikki Beach Bar - 1133 Boardwalk, Atlantic City, NJ | | | | | |
| Account Executive: Lauren Gommel | | | | | |
| 5/3/2005 | WO# 0000071937 | | | | |
| | 1.00 | 0.00 | Delivery Charge Restroom Trailers 7215GP, 7204GP | 450.00000 | 450.00 |
| 5/3/2005 | WO# 0000071939 | | | | |
| | 2.00 | 0.00 | Delivery Charge Units | 1,000.00000 | 2,000.00 |
| 05/12/05 - 06/23/05 | 4.00 | 0.00 | Standard Temporary Restroom w/City Main Connection | 950.00000 | 5,835.71 |
| 5/12/2005 | WO# 0000078539 | | | | |
| | 1.00 | 0.00 | Delivery Charge Units | 1,200.00000 | 1,200.00 |
| 05/27/05 - 06/23/05 | 2.00 | 0.00 | Ambassador 2 ADA | 2,300.00000 | 4,600.00 |
| 05/27/05 - 06/23/05 | 2.00 | 0.00 | Gold Plus Restroom Trailer 7215GP, 7204GP | 6,000.00000 | 12,000.00 |
| | | | | Site Total | 26,085.71 |
| | | | | Total Invoice Amount | 26,085.71 |

The continuing escalation in diesel fuel prices requires that we immediately assess a 4.75% Fuel Surcharge for the rental and service of individual units. Thank you for your continued patronage.



PLEASE MAIL PAYMENT TO:

Mr. John Inc.
PO Box 130
Keasbey, NJ 08832

Penrod Management Group, Inc
1 Ocean Drive
Miami Beach, FL 33139

REMITTANCE COPY-DETACH AND RETURN WITH PAYMENT

| CUSTOMER CODE | INVOICE # | AMOUNT PAID |
|---|---|---|
| 036599 | 0000398618 | |

| CHARGE MY: ☐Visa ☐MasterCard ☐AMEX ☐Discover |
|---|
| Cardholder Name |
| Cardholder Address, City State & Zip Code |
| |
| Card # |
| Amount Paid          Exp. Date |
| Signature |

$25.00 Returned Check Fee | Terms: Net 10 Days | Make Checks Payable to Mr. John Inc.



Mr. John Inc.
PO Box 130
Keasbey, NJ 08832
Phone: (732) 225-2233
Fax: (732) 417-0367

| | |
|---|---|
| Customer Number | 036599 |
| Invoice Date | 6/24/2005 |
| Invoice Number | 0000398618 |
| Page | Page 1 of 1 |

Penrod Management Group, Inc
1 Ocean Drive
Miami Beach, FL 33139

| Date/Period | Qty | N/C Qty | Description | Rate | Amount |
|---|---|---|---|---|---|
| Site 036599-001 - Nikki Beach Bar - 1133 Boardwalk, Atlantic City, NJ | | | | | |
| Account Executive: Lauren Gommel | | | | | |
| 6/2/2005 | WO# 0000088843 | | | | |
| | 1.00 | 0.00 | Service Surcharge- Sunday/Double Time 7215GP, 7204GP | 250.00000 | 250.00 |
| 6/15/2005 | WO# 0000094617 | | | | |
| | 4.00 | 0.00 | Repair Charge 7215GP, 7204GP | 28.00000 | 112.00 |
| | 1.00 | 0.00 | Labor Charge - Regular 7215GP, 7204GP | 400.00000 | 400.00 |
| | Note: | | Replacing 4 Peddals | | |
| 06/24/05 - 07/21/05 | 2.00 | 0.00 | Ambassador 2 ADA | 2,300.00000 | 4,600.00 |
| 06/24/05 - 07/21/05 | 2.00 | 0.00 | Gold Plus Restroom Trailer 7215GP, 7204GP | 6,000.00000 | 12,000.00 |
| 06/24/05 - 07/21/05 | 4.00 | 0.00 | Standard Temporary Restroom w/City Main Connection | 950.00000 | 3,800.00 |
| | | | New Jersey Sales Tax | | 39.00 |
| | | | | Site Total | 21,201.00 |
| | | | | Total Invoice Amount | 21,201.00 |



**PLEASE MAIL PAYMENT TO:**

Mr. John Inc.
PO Box 130
Keasbey, NJ 08832

REMITTANCE COPY-DETACH AND RETURN WITH PAYMENT

| CUSTOMER CODE | INVOICE # | AMOUNT PAID |
|---|---|---|
| 036599 | 0000475833 | |

| CHARGE MY: | Visa | MasterCard | AMEX | Discover |
|---|---|---|---|---|

Cardholder Name

Cardholder Address, City State & Zip Code

Card #

Amount Paid                    Exp. Date

Signature

Penrod Management Group, Inc
1 Ocean Drive
Miami Beach, FL 33139

$25.00 Returned Check Fee | Terms: Net 10 Days | Make Checks Payable to Mr. John Inc.



Mr. John Inc.
PO Box 130
Keasbey, NJ 08832
Phone: (732) 225-2233
Fax: (732) 417-0367

| | |
|---|---|
| Customer Number | 036599 |
| Invoice Date | 7/22/2005 |
| Invoice Number | 0000475833 |
| Page | Page 1 of 1 |

Penrod Management Group, Inc
1 Ocean Drive
Miami Beach, FL 33139

| Date/Period | Qty | N/C Qty | Description | Rate | Amount |
|---|---|---|---|---|---|
| Site 036599-001 - Nikki Beach Bar - 1133 Boardwalk, Atlantic City, NJ | | | | | |
| Account Executive: Lauren Gommel | | | | | |
| 7/3/2005 | WO# 0000106067 | | | | |
| | 1.00 | 0.00 | Repair Charge 7215GP, 7204GP | 400.00000 | 400.00 |
| | 1.00 | 0.00 | Emergency Service Surcharge-Sunday/Double Time 7215GP, 7204GP | 200.00000 | 200.00 |
| 07/22/05 - 08/18/05 | 2.00 | 0.00 | Ambassador 2 ADA | 2,300.00000 | 4,600.00 |
| 07/22/05 - 08/18/05 | 2.00 | 0.00 | Gold Plus Restroom Trailer 7215GP, 7204GP | 6,000.00000 | 12,000.00 |
| 07/22/05 - 08/18/05 | 4.00 | 0.00 | Standard Temporary Restroom w/City Main Connection | 950.00000 | 3,800.00 |
| | | | New Jersey Sales Tax | | 12.00 |
| | | | | Site Total | 21,012.00 |
| | | | | Total Invoice Amount | 21,012.00 |



PLEASE MAIL PAYMENT TO:

Mr. John Inc.
PO Box 130
Keasbey, NJ 08832

| REMITTANCE COPY-DETACH AND RETURN WITH PAYMENT | | |
|---|---|---|
| CUSTOMER CODE | INVOICE # | AMOUNT PAID |
| 036599 | 0000561886 | |

CHARGE MY: ☐ Visa  ☐ MasterCard  ☐ AMEX  ☐ Discover

Cardholder Name

Cardholder Address, City State & Zip Code

Card #

Amount Paid                    Exp. Date

Signature

Penrod Management Group, Inc
1 Ocean Drive
Miami Beach, FL 33139

$25.00 Returned Check Fee | Terms: Net 10 Days | Make Checks Payable to Mr. John Inc.



Mr. John Inc.
PO Box 130
Keasbey, NJ 08832
Phone: (732) 225-2233
Fax: (732) 417-0367

| | |
|---|---|
| Customer Number | 036599 |
| Invoice Date | 8/19/2005 |
| Invoice Number | 0000561886 |
| Page | Page 1 of 1 |

Penrod Management Group, Inc
1 Ocean Drive
Miami Beach, FL 33139

| Date/Period | Qty | N/C Qty | Description | Rate | Amount |
|---|---|---|---|---|---|
| Site 036599-001 - Nikki Beach Bar - 1133 Boardwalk, Atlantic City, NJ | | | | | |
| Account Executive: Lauren Gommel | | | | | |
| 7/21/2005 | WO# 0000110638 | | | | |
| | 1.00 | 0.00 | Service Surcharge- Sunday/Double Time 7215GP, 7204GP | 400.00000 | 400.00 |
| 7/26/2005 | WO# 0000114336 | | | | |
| | 1.00 | 0.00 | Service Surcharge- Sunday/Double Time 7215GP, 7204GP | 500.00000 | 500.00 |
| 7/29/2005 | WO# 0000116999 | | | | |
| | 1.00 | 0.00 | Repair Charge | 400.00000 | 400.00 |
| 08/19/05 - 09/15/05 | 2.00 | 0.00 | Ambassador 2 ADA | 2,300.00000 | 4,800.00 |
| 08/19/05 - 09/15/05 | 2.00 | 0.00 | Gold Plus Restroom Trailer 7215GP, 7204GP | 6,000.00000 | 12,000.00 |
| 08/19/05 - 09/15/05 | 4.00 | 0.00 | Standard Temporary Restroom w/City Main Connection | 950.00000 | 3,800.00 |
| | | | New Jersey Sales Tax | | 54.00 |
| | | | | Site Total | 21,754.00 |

Total Invoice Amount    21,754.00



PLEASE MAIL PAYMENT TO:

Mr. John Inc.
PO Box 130
Keasbey, NJ 08832

REMITTANCE COPY-DETACH AND RETURN WITH PAYMENT

| CUSTOMER CODE | INVOICE # | AMOUNT PAID |
|---|---|---|
| 036599 | 0000631700 | |

CHARGE MY: ☐ Visa ☐ MasterCard ☐ AMEX ☐ Discover

Cardholder Name

Cardholder Address, City State & Zip Code

Card #

Amount Paid                    Exp. Date

Signature

Penrod Management Group, Inc
1 Ocean Drive
Miami Beach, FL 33139

$25.00 Returned Check Fee | Terms: Net 10 Days | Make Checks Payable to Mr. John Inc.



Mr. John Inc.
PO Box 130
Keasbey, NJ 08832
Phone: (732) 225-2233
Fax: (732) 417-0367

| | |
|---|---|
| Customer Number | 036599 |
| Invoice Date | 9/16/2005 |
| Invoice Number | 0000631700 |
| Page | Page 1 of 1 |

Penrod Management Group, Inc
1 Ocean Drive
Miami Beach, FL 33139

| Date/Period | Qty | N/C Qty | Description | Rate | Amount |
|---|---|---|---|---|---|
| Site 036599-001 - Nikki Beach Bar - 1133 Boardwalk, Atlantic City, NJ | | | | | |
| Account Executive: Lauren Gommel | | | | | |
| 09/16/05 - 10/13/05 | 2.00 | 0.00 | Ambassador 2 ADA | 2,300.00000 | 4,600.00 |
| 09/16/05 - 10/13/05 | 2.00 | 0.00 | Gold Plus Restroom Trailer 7215GP, 7204GP | 6,000.00000 | 12,000.00 |
| 09/16/05 - 10/13/05 | 4.00 | 0.00 | Standard Temporary Restroom w/City Main Connection | 950.00000 | 3,800.00 |
| | | | | Site Total | 20,400.00 |
| | | | | Total Invoice Amount | 20,400.00 |

The continuing escalation in diesel fuel prices requires that we immediately adjust our fuel surcharge to 6% for the rental and service of individual units. Thank you for your continued patronage.