McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
88 Pine Street
24th Floor
New York, New York 10005
Telephone: (212) 483-9490
Facsimile: (212) 483-9129
Attorneys for Respondent-Defendant,
Stewart's Mobile Concepts, Ltd.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PENROD MANAGEMENT GROUP, INC.,

      Plaintiff-Petitioner,

v.

STEWART'S MOBILE CONCEPTS, LTD.,

      Defendant-Respondent.

Civil Action No.

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION IN LIMINE BY DEFENDANT-RESPONDENT, STEWART'S MOBILE CONCEPTS, LTD., TO BAR THE INTRODUCTION OF CERTAIN EVIDENCE AND TESTIMONY PROFFERED BY PLAINTIFF-PETITIONER, PENROD MANAGEMENT GROUP, INC., IN SUPPORT OF ITS DEFENSE THAT IT AND NIKKI BEACH ATLANTIC CITY, LLC ARE NOT THE ALTER EGOS OF EACH OTHER BECAUSE OF PENROD MANAGEMENT GROUP'S PREVIOUS FAILURE TO PRODUCE OR IDENTIFY DOCUMENTS DURING DISOVERY AND FOR AN ADVERSE INFERENCE INSTRUCTION**

---

Of Counsel and on the Brief

Ryan P. Mulvaney, Esq.

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES...................................................................ii

PRELIMINARY STATEMENT...........................................................1

PROCEDURAL AND FACTUAL BACKGROUND
RELATED TO THIS MOTION.............................................................2

    A.    SMC Files for Arbitration.......................................................2

    B.    SMC Serves Discovery; PMG Refuses to Respond;
        Arbitrator Compels PMG to Provide Discovery Responses.........................3

    C.    Arbitrator Rollings Again Orders PMG to Provide
        Discovery Responses to SMC...................................................4

    D.    PMG's Proposed Exhibit List..................................................6

    E.    The Register Declaration........................................................6

LEGAL ARGUMENT.........................................................................8

    POINT I........................................................................................8

        This Court Should Bar the Introduction of Certain
        Evidence and Testimony Because PMG Failed
        and Refused to Produce that Information During
        Discovery in the Arbitration Proceeding.........................................8

    POINT II......................................................................................16

        SMC is Entitled to an Adverse Inference for PMG's
        Failure to Produce Documents During Discovery in
        the Arbitration Proceeding......................................................16

        1.    PMG Had an Obligation to and Failed to Timely
                Produce Evidence....................................................18

        2.    PMG Had a Culpable State of Mind......................................20

        3.    The Evidence is Relevant..................................................23

CONCLUSION................................................................................25

# TABLE OF AUTHORITIES

## CASES

American Stock Exch., LLC v. Mopex, Inc.,
   215 F.R.D. 87 (S.D.N.Y. 2002) ................................................................9

Cordius Trust v. Kummerfield,
   2008 WL 113664 (S.D.N.Y. Jan 11, 2008) ..........................................17, 20,
                                                                                          23

Ebewo v. Martinez,
   309 F. Supp. 600 (S.D.N.Y. 2004) ...........................................................8

Kronisch v. United States,
   150 F.3d 112 (2d Cir. 1998)....................................................................17

Norbrook Laboratories Ltd.,
   297 F. Supp. at 481 ...............................................................................9

Norbrook Laboratories Ltd. v. G.C. Hanford Manufacturing Co.,
   297 F. Supp. 2d 463 (N.D.N.Y. 2003) ...................................................8, 9

Reilly v. Natwest Markets Group, Inc.,
   181 F.3d 253 (2d Cir. 1999)....................................................................20

Residential Funding Corp. v. Degeorge Financial Corp.,
   306 F.3d 99 (2d Cir. 2002)..................................................................17, 23

Ward v. The National Geo. Society,
   2002 WL 27777 (S.D.N.Y. Jan. 11,  2002) ..............................................8

## STATUTES

Fed. R. Civ. P. 37(c)(1)...............................................................................8

## PRELIMINARY STATEMENT

This brief is submitted on behalf of Defendant-Respondent, Stewart's Mobile Concepts,

Ltd. ("SMC"), in support of its motion in limine[1] to bar the introduction of certain evidence and

testimony proffered by Plaintiff-Petitioner, Penrod Management Group, Inc. ("PMG"), in

support of its defense that it and Nikki Beach Atlantic City, LLC ("NBAC"), a now defunct

entity, are not the alter egos of each other.   This motion is necessitated by PMG's previous

failure to produce or identify during discovery (despite Orders compelling it to do so) documents

specifically related to its defense to SMC's alter ego claim.   Indeed, during discovery, SMC

sought from PMG, through document demands, documents related to the purported separate

corporate structure of PMG and NBAC.   When those documents were not produced, SMC

sought and Arbitrator Cynthia Rollings entered, Orders compelling the production of those

documents.   Notwithstanding its insistence throughout this litigation that there were no

documents responsive to SMC's requests and Arbitrator Rollings' Orders, PMG has proposed an

exhibit list and has relied on documents in the Direct Testimony Declaration of John Michael

Register ("Register Declaration") that it never produced during discovery.[2]

As the parties indicated to the Hon. John G. Koeltl, U.S.D.J., discovery in this matter

related to the alter ego issue was conducted and completed in the arbitration proceeding.   Indeed,

that representation was made because, during a case management conference with Arbitrator

Rollings, PMG represented that it had produced all documents related to its defense to SMC's

alter ego claim.   Now, however, PMG apparently intends to rely on (1) documents that were

---

[1] This motion in limine applies only to certain documents and testimony related to those documents that PMG failed to produce during discovery but not lists on its proposed exhibit list and to which it relies in the Register Declaration.  SMC naturally reserves its right to object to and move to bar the introduction of other testimony set forth in the Direct Testimony Affidavit of John Michael Register offered by PMG at the time and during the course of trial.
[2] Holland + Knight, LLP, PMG's current counsel in this matter, did not serve as counsel for PMG during the arbitration proceedings.

requested by SMC, never produced by PMG during discovery despite having fourteen months in arbitration and at least six months here to do so, yet included in its proposed exhibit list; and (2) testimony regarding other documents that were requested by SMC, never produced or otherwise disclosed by PMG during discovery, not included in PMG's exhibit list, yet now relied on by PMG.

PMG has been given more than an adequate chance to fully comply with its discovery obligations, but instead chose to serve a limited response that was intended to avoid and distance itself from the discovery of the truth. This Court should therefore exercise its wide discretion to require PMG to try this case based solely on the information that it sought fit to produce, and should be precluded from introducing or relying on evidence, and testimony about that evidence, that was not previously produced during discovery. Furthermore, because SMC is now forced to proceed without the requested documents on which PMG now relies in the Register Declaration, it is respectfully submitted that SMC is entitled to a negative inference.

## PROCEDURAL AND FACTUAL BACKGROUND RELATED TO THIS MOTION

A.    SMC Files For Arbitration

On September 20, 2006, SMC filed Demands for Arbitration against NBAC and PMG in the American Arbitration Association ("AAA"). Certification of Ryan P. Mulvaney, Esq. ("Mulvaney Cert."), ¶ 3. On October 11, 2006, Mr. Register, General Counsel of NBAC and PMG, sent a letter to the AAA indicating that NBAC was administratively terminated, and provided the AAA with a copy of NBAC's cancellation certificate. Mulvaney Cert., Exh. A. On October 30, 2006, after receiving Arbitrator Rollings' October 25, 2006, Order, Mr. Register sent another letter to the AAA indicating that no one would be appearing on behalf of NBAC because it was defunct. Mulvaney Cert., Exhs. B, C.

On June 15, 2007, the AAA advised the parties that a telephonic case management conference was scheduled for June 21, 2007. Mulvaney Cert., Exh. D. On June 21, 2007, the AAA conducted the conference and, on July 12, 2007, the AAA issued an Order that memorialized the schedule set forth by Arbitrator Rollings. Mulvaney Cert., Exh. E. Pursuant to the July 12, 2007, Order, SMC was permitted to serve document demands by July 6, 2007. Mulvaney Cert., Exh. E. Pursuant to the July 12, 2007, Order, PMG's responses to SMC's document demands were due by than July 27, 2007. Mulvaney Cert., Exh. E.

B.    SMC Serves Discovery; PMG Refuses to Respond; Arbitrator Compels PMG to Provide Discovery Responses

On July 6, 2007, SMC served Mr. Register with SMC's First Request for the Production of Documents directed to NBAC and PMG. Mulvaney Cert., ¶¶ 12-13, Exh. F. Although the July 12, 2007, Order required discovery responses by July 27, 2007, neither PMG nor NBAC responded, but instead on that date filed a motion to dismiss the arbitration proceeding for lack of jurisdiction.[3] Mulvaney Cert., ¶ 15. SMC filed opposition and a cross-moved to compel PMG to produce the documents in response to SMC's demands. Mulvaney Cert., ¶ 16. After not receiving reply papers from PMG or opposition to SMC's cross-motion, on August 16, 2007, Arbitrator Rollings denied PMG's motion to dismiss, granted SMC's cross-motion, and thereafter scheduled a conference call on August 20, 2007, to resolve PMG's failure to respond to SMC's document demands. Mulvaney Cert., Exh. ¶ 17-19, Exh. G.

On September 10, 2007, the AAA issued an Order that confirmed the August 20, 2007, telephonic case management conference, which required discovery responses to be served by August 24, 2007. Mulvaney Cert., ¶¶ 20-21, Exh. H. On September 10, 2007, counsel for SMC contacted PMG's arbitration counsel regarding PMG's status of responding to SMC's document

---

[3] L.H. Steven Savola, Esq. represented PMG during the arbitration proceedings.

demands. Mulvaney Cert., ¶¶ 22-23, Exh. I. PMG's arbitration counsel indicated that PMG unilaterally selected only six of SMC's thirty-four document demands to which to respond. Id. During the conversation, counsel for SMC indicated that, although SMC would consider reducing the scope of the document demands to eliminate at that time the demands seeking documents regarding SMC's breach of contract claim, PMG's selection of only six document demands to which to respond was unsatisfactory. Id. PMG's arbitration counsel indicated that he would confer with PMG regarding responding to SMC's document demands. Id.

Having not received a response, on October 3, 2007, counsel for SMC again contacted PMG's arbitration counsel regarding the status of PMG's document production and responses. Mulvaney Cert., ¶¶ 24-25, Exh. J. PMG's arbitration counsel indicated that he had not spoken to PMG regarding PMG's discovery responses. Id.

C.    Arbitrator Rollings Again Orders PMG to Provide Discovery Responses to SMC

Despite having already issued two Orders compelling discovery responses, on October 9, 2007, the parties participated in a telephonic case management conference with Arbitrator Rollings to discuss, among other issues, outstanding discovery responses. Mulvaney Cert., ¶ 26. On October 9, 2007, the AAA issued an Order that confirmed the October 9, 2007, telephonic case management conference. Mulvaney Cert., ¶ 26-27, Exh. K. Because PMG failed to respond to SMC's discovery requests, and violated previous Orders to produce documents, Arbitrator Rollings demanded that PMG "serve responsive documents by overnight mail today October 9, 2007." Id.

On October 10, 2007, counsel for SMC received PMG's responses to discovery. Mulvaney Cert., ¶¶ 28-29, Exh. L. In response to the alter ego issue, PMG produced only a few documents and, in its cover letter, made reference to an alleged agreement with counsel for SMC

to produce documents in response to only six of the thirty-four requests. Id. There was no agreement. Mulvaney Cert., ¶ 28.

The few documents provided by PMG in response to SMC's document demands included a PMG corporate status report that had been printed from the Florida Division of Corporations website on October 9, 2007; a "Notice of Subjectivity to the N.J. Unemployment Compensation Law;" a notice regarding compulsory workers' compensation insurance from the New Jersey Office of Special Compensation Funds, not addressed to any party and undated; a "Life Hazard Use Certificate of Registration;" a "Business Registration Certificate" issued to NBAC, trading as "Nikki Beach – Penrod's Elbo Room;" an "A/P Aging Summary" as of November 28, 2005; a "Vendor QuickReport" as of August 17, 2005; a "Certificate of Cancellation" of NBAC as a corporate entity, signed by Mr. Register on June 30, 2006, and filed with the New Jersey Division of Revenue on July 11, 2006; and a Receipt from New Jersey Division of Revenue that NBAC was cancelled as a corporate entity. Mulvaney Cert., ¶ 29, Exh. L. PMG also produced copies of the Agreement at issue, and other documents already in SMC's possession, such as invoices that SMC sent to PMG. Id.

After receiving PMG's discovery responses and reference to an agreement, counsel for SMC requested a telephonic case management conference with Arbitrator Rollings, which occurred on October 25, 2007. Mulvaney Cert., ¶¶ 30-31. During the telephonic case management conference, counsel for SMC raised the issue of PMG's limited responses to SMC's document demands, and addressed the alleged agreement referred to by PMG regarding discovery. Mulvaney Cert., ¶ 31. During the conference, PMG agreed to stipulate that it had produced all of the documents that it had in its possession, custody or control related to the alter ego issue, and further agreed to provide a written stipulation to that effect by no later than

November 1, 2007.  Mulvaney Cert., ¶¶ 31, 33, Exh. M.  Also during the conference, PMG represented that it expected to receive additional documents from non-party witnesses by November 8, 2007.  Mulvaney Cert., ¶ 32.  Arbitrator Rollings required PMG to produce those documents to SMC by no later than five business days from November 8, 2007.  Mulvaney Cert., ¶¶ 32-33, Exh. M.  No such production was ever made by PMG.  Mulvaney Cert., ¶ 32.

D.     <u>PMG's Proposed Exhibit List</u>

On April 21, 2008, PMG served its proposed exhibit list.  Mulvaney Cert., ¶¶ 34-35, Exh. N.  A review of PMG proposed Exhibit "A," which purports to be NBAC's Petition to the New Jersey Casino Control Commission and its accompanying exhibits, reveals that PMG, during discovery, produced only Exhibit "A" to the Petition, but not the Petition itself or any of its remaining exhibits.  <u>Compare</u> Mulvaney Cert., Exhs. L to N.  Furthermore, PMG failed to produce its proposed Exhibits "B," "E," the remaining four pages of "J," the first five pages of Exhibit "L," and none of "N" during discovery, but it now intends to introduce those exhibits and Exhibit "A" at trial.  Compare Mulvaney Cert., Exhs. L to N.

E.     <u>The Register Declaration</u>

On May 22, 2008, PMG served the Register Declaration.  In his declaration, Mr. Register – an attorney admitted to practice law in the State of Florida – testifies under oath that PMG provided "accounting and legal services to the Nikki Beach Entities in exchange for a management fee."  Mulvaney Cert., Exh. O (Register Dec., ¶ 6).  SMC's document demands to PMG had specifically requested documents related to the incorporation of NBAC and PMG, documents exchanged between NBAC and PMG regarding the formation and operation of the "Nikki Beach" bar in Atlantic City, and that detailed PMG's duties and responsibilities related to

6

the "Nikki Beach" bar in Atlantic City. Mulvaney Cert., at Exh. F (Demands 9-12, 15-16, 29). PMG, however, failed to provide those documents.

Mr. Register testifies under oath that NBAC hired approximately 400 employees to operate the beach club. Mulvaney Cert., Exh. O (Register Dec., ¶ 17). Mr. Register further testifies under oath that NBAC "had its own management staff working exclusively at the venue." Mulvaney Cert., Exh. O (Register Dec., at ¶ 42). Again, SMC had requested that information from PMG. Mulvaney Cert., at Exh. F (Demands 11-12). PMG, however, failed to provide those documents.

Mr. Register testifies under oath that "NBAC's expenses far exceeded its revenues." Mulvaney Cert., Exh. O (Register Dec., ¶ 20). Mr. Register also testifies under oath that "NBAC prepared financial statements on a routine, periodic, and ongoing basis[.]" Again, SMC had requested that information from PMG. Mulvaney Cert., at Exh. F (Demands 24-25). PMG, however, failed to provide those documents.

Mr. Register also testifies under oath about the opening and maintenance of NBAC's bank accounts. Mulvaney Cert., Exh. O (Register Dec., ¶¶ 26, 41). Again, SMC had requested that information from PMG. Mulvaney Cert., at Exh. F (Demands 22-23). PMG, however, failed to provide those documents.

In Paragraphs 21, 26, 30 and 31 of the Register Declaration, Mr. Register testifies that PMG *loaned* NBAC operating capital, and NBAC subsequently reimbursed PMG. Mulvaney Cert., Exh. O (Register Dec., ¶¶ 21, 26, 30-31). Again, SMC had requested that information from PMG. Mulvaney Cert., at Exh. F (Demands 13-14, 20, 25, 27). PMG, however, failed to provide those documents.

In Paragraph 39 of the Register Declaration, Mr. Register testifies that "NBAC filed a 2005 Federal Tax Return." Mulvaney Cert., Exh. O (Register Dec., ¶ 39). Again, SMC had requested that information from PMG. Mulvaney Cert., at Exh. F (Demands 30-31). PMG, however, failed to provide those documents.

## LEGAL ARGUMENT

## POINT I

### THIS COURT SHOULD BAR THE INTRODUCTION OF CERTAIN EVIDENCE AND TESTIMONY BECAUSE PMG FAILED AND REFUSED TO PRODUCE THAT INFORMATION DURING DISCOVERY IN THE ARBITRATION PROCEEDING

It is axiomatic that a party is required to fully disclose all evidentiary material during discovery that it intends to introduce at trial. For a party's failure to produce documents during discovery, Rule 37 provides a remedy. Rule 37(c)(1) provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorneys' fees, caused by the failure, these sanctions may include any of the sanctions authorized under Rule 37(b)(2)(A), (B) and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. P. 37(c)(1). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." Ebewo v. Martinez, 309 F. Supp. 600, 607 (S.D.N.Y. 2004). Although the imposition of Rule 37 sanctions has been described as discretionary, Norbrook Laboratories Ltd. v. G.C. Hanford Manufacturing Co., 297 F. Supp. 2d 463, 481 n.14 (N.D.N.Y. 2003) (citing Ward v. The Nat'l Geo. Soc'y, 2002 WL 27777 at *2 (S.D.N.Y. Jan. 11,

2002)), the "preclusory sanctions is 'automatic' absent a determination of either 'substantial harm' or 'harmlessness.'" Id. (quoting American Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002)). "The burden to prove substantial justification or harmlessness rests with the party who failed to comply with Rule 26." Norbrook Laboratories Ltd., 297 F. Supp. at 481.

In Ebewo, this Court barred the use of a treating physician's affidavit that the plaintiff submitted in opposition to the defendant's motion for summary judgment because the plaintiff failed to disclose the existence of the physician before the expiration of discovery and before the defendant filed its motion. 309 F. Supp. 2d at 607. This Court found that the plaintiff was not substantially justified by failing to obtain and disclose the report earlier. Id. at 607. "Waiting until after a motion for summary judgment was filed and then attempting to pass an expert off as a treating physician was in fact flagrant bad faith and a callous disregard for the rules." Id. The Court further found that "[t]he plaintiff had it within his power to collect all the evidence required to prevail on his claim ... but failed to do so." Id. The Court held that the plaintiff's "delay prejudiced the defendant, because the defendant made his motion based on what he believed was the strength of the plaintiff's case at the close of discovery." That, according to the Court, [was] the type of 'sandbagging' of adversaries that Rule 37(c)(1) was designed to prevent[.]" Id. The Court therefore barred the plaintiff from introducing or otherwise relying on the affidavit in opposition to the defendant's dispositive motion. Id.

Likewise, in Norbrook Laboratories Ltd., the Northern District of New York barred the introduction of documents that the plaintiff requested from the defendant. 297 F. Supp. 2d at 481. The court noted that, during discovery, the plaintiff requested "[a]ll documents concerning any market studies, projected sales volume, product development, competitive advantage and

profitability forecasts concerning … Hanford's Amended Process [the in situ method] or Hanford's PGP injections." Id. The court found that the defendant did not produce those documents, and instead responded only that the documents were not in the possession, custody or control." Id. The court held that the failure to produce the documents was not substantially justified because the plaintiff had plainly requested the information that the defendant possessed but failed to produce. Id. The court also held that the failure to produce prohibited the plaintiff's effective cross-examination.

Indeed here, SMC demanded relevant information and evidence regarding PMG's defense that it and NBAC were not the alter egos of each other. Mulvaney Cert., Exh. F. Although Arbitrator Rollings entered three Orders compelling discovery responses, PMG failed to respond until October 10, 2007, when it finally produced a limited amount of documents, one of which it printed from an internet website a day earlier. In response to SMC's document demands, PMG produced the following:

> 1.    Corporate status report for Penrod Management Group, Inc., printed from the website of the Florida Division of Corporations on October 9, 2007;

> 2.    "Notice of Subjectivity to the N.J. Unemployment Compensation Law;"

> 3.    Notice regarding compulsory workers' compensation insurance from the New Jersey Office of Special Compensation Funds;[4]

> 4.    "Life Hazard Use Certificate of Registration;"

> 5.    "Business Registration Certificate" issued to NBAC, trading as "Nikki Beach – Penrod's Elbo Room;"

> 6.    "A/P Aging Summary" as of November 28, 2005;

> 7.    "Vendor QuickReport" as of August 17, 2005;

---

[4] This document was not addressed to any party and undated.

8. "Certificate of Cancellation" of NBAC as a corporate entity, signed by Michael Register on June 30, 2006, and filed with the New Jersey Division of Revenue on July 11, 2006; and

9. Receipt from New Jersey Division of Revenue that NBAC was cancelled as a corporate entity.

Mulvaney Cert., Exhs. G, H, K, L. PMG also produced a copy of the Agreement at issue and other documents, such as invoices, sent to it by SMC. Mulvaney Cert., Exh. L.

After receiving PMG's less-than-forthcoming responses, and especially having noted that one of the documents had been literally printed from the website of the State of Florida's Division of Corporations a mere day before PMG sent its "responses," SMC immediately requested a telephonic case management conference with Arbitrator Rollings. Mulvaney Cert., ¶¶ 29-30, Exh. L (first two documents). On October 25, 2007, the parties telephonically appeared for a management conference with Arbitrator Rollings during which PMG agreed to stipulate that it had produced all of the documents related to the alter ego theory. Mulvaney Cert., ¶ 31. Arbitrator Rollings' October 25, 2007, Order confirmed and memorialized PMG's representation and agreement that it had produced all of the documents related to its defense. Mulvaney Cert., ¶¶ 33, Exh. M.

Now, despite having been requested by SMC and ordered by Arbitrator Rollings to produce documents such as financial statements, tax returns, bank account statements, payroll information, and other indicia of corporate independence, PMG, by and through the Register Declaration, refers to and relies on numerous documents that were previously requested by SMC. For example, PMG testifies through the Register Declaration that "NBAC prepared financial statements on a routine, periodic, and ongoing basis in accordance with generally accepted accounting principles[,]"Mulvaney Cert., Exh. O (Register Dec., at ¶ 20), that "NBAC maintained its own financial records[,]"Mulvaney Cert., Exh. O (Register Dec., at ¶ 44), and that

"NBAC had separate financials[.]"  Mulvaney Cert., Exh. O (Register Dec., at ¶ 45).  Indeed, PMG, through the Register Declaration, takes great effort to reference the so-called "separate financials" that NBAC apparently "maintained."  In its document demands, SMC specifically requested the production of that information:

> 24.    Produce any and all documents that refer, reflect, or relate to the financial condition of Nikki Beach Atlantic City, LLC from its formation to present, including but not limited to, communication with and reports prepared by accountants, profit and loss statements, trial balances, sales reports, and financial statements and reports.

Mulvaney Cert., Exh. F (Demand 24).  The very same information as it related to PMG was also requested.  Mulvaney Cert., Exh. F (Demand 25).  PMG, however, failed to produce financial statements and other information requested by SMC.

In addition, PMG testifies through the Register Declaration that "PMG paid SMC the original down payments on behalf of NBAC because NBAC's bank accounts were in the process of being opened" and further references a payment from NBAC to SMC in July 2005.  Mulvaney Cert., Exh. O (Register Dec., at ¶¶ 24, 41).  In its document demands, SMC had specifically requested the production of that information:

> 22.    Produce any and all of Nikki Beach Atlantic City, LLC's banking statements including, but not limited to, documents reflecting the opening of the account(s), withdrawal and deposit tickets for [] any and [all] bank accounts, or any other accounts of similar character held in Nikki Beach Atlantic City, LLC's name from its formation to present.

Mulvaney Cert., at Exh. F (Demand 22).  The very same information as it related to PMG was also requested.  Mulvaney Cert., at Exh. F (Demand 23).  PMG, however, failed to produce the information requested by SMC.

PMG further testifies through the Register Declaration that it provided "accounting and legal services to the Nikki Beach Entities in exchange for a management fee." Mulvaney Cert., Exh. O (Register Dec., at ¶ 6). In its document demands, SMC had specifically requested the production of that information:

> 29.    Produce any and all documents that refer, reflect or relate to Defendants' duties, obligations and/or responsibilities related to operating or otherwise managing the "Nikki Beach" bar in Atlantic City, New Jersey.

Mulvaney Cert., Exh. F (Demand 29). PMG, however, failed to produce the information requested by SMC.

PMG further testifies through the Register Declaration that "NBAC filed a 2005 Federal Tax Return[,]" Mulvaney Cert., Exh. O (Register Dec., at ¶ 39), yet no such documents were produced. In its document demands, SMC had specifically requested the production of that information:

> 30.    Produce any and all federal and state income tax returns filed by Nikki Beach Atlantic City, LLC from its formation to present.

Mulvaney Cert., Exh. F (Demand 30). The very same information as it related to PMG was also requested. Mulvaney Cert., Exh. F (Demand 31). PMG, however, failed to produce the information requested by SMC.

Finally, for the very first time, PMG now contends that the wire transfers that it made directly to SMC were nothing more than *"loans"* to NBAC for which PMG was reimbursed by NBAC. Mulvaney Cert., Exh. O (Register Dec., ¶¶ 21, 26, 43). Aside from the fact that fourteen months of arbitration and six months here have proceeded without PMG or NBAC ever once proffering that defense, and aside from the fact that there is now a material issue as to whether PMG's payments constituted loans or actually constituted capital contributions for which tax

13

consequences are implicated, PMG's unsupported representation highlights not only the importance of the documents requested by SMC, but also the justification to bar the introduction of that and other testimony. Like other documents, SMC had requested information that would have captured Mr. Register's previously undisclosed contention:

> 27. Produce any and all documents that refer, reflect or relate to any capital contributions, acquisitions, purchases, investments, financing and/or funding received by Nikki Beach Atlantic City, LLC from Penrod Management or any other entity or individual.

Mulvaney Cert., at Exh. F (Demand 27; see also Demands 22-25, 30-31 (requesting documents that, if produced, would have revealed how NBAC and PMG booked, for tax purposes, alleged "loan" to NBAC for tax purposes)).

At this stage of the litigation, which began almost two years ago in the AAA and proceeded there for approximately fourteen months through discovery, with trial pending less than three weeks away, PMG had an obligation to produce documents on which it relies in its exhibit list, and to which it now refers and presumably seeks to introduce through the Register Declaration. Not only was PMG obligated to produce all of its documents pursuant to Arbitrator Rollings' Orders, but it also represented that it had, and here represented that discovery has been completed.

Furthermore, that PMG reveals for the first time that there are additional documents at the Resorts Atlantic City does not alleviate it of its obligations to disclose the existence and whereabouts of that information when it was initially requested by SMC, and is just another attempt to skirt its obligations. First, SMC served discovery on Mr. Register, the General Counsel of both NBAC and PMG. Second, Mr. Register's revelation that documents apparently exist at Resorts makes it clear that PMG, when it responded to SMC's discovery requests in October 2007, knew about those documents and failed to disclose them. Third, the instructions

set forth in SMC's document demands to Mr. Register, as an attorney and in-house counsel to both NBAC and PMG, contained a request for the whereabouts of documents if they were not in the possession of the responding party:

> B.    If you do not have all the documents responsive to any request to produce, please so state and identify each person who you know or believe may have such documents.

> D.    If any requested document was, but is no longer, in your possession or subject to your control, state what disposition was made of it.

Mulvaney Cert., Exh. F.    Furthermore, SMC's document demands contained a provision indicating that the responding party must expeditiously amend its responses if it later discovers additional information:

> C.    Each request for production of documents herein shall be deemed continuing so as to require prompt supplemental responses if you obtain or discover further documents between the time of responding to this request for the production of documents and the time of trial.

Mulvaney Cert., Exh. F.    No such amendments were ever made by PMG to either add the documents now contained in its exhibit list, or to disclose the existence and whereabouts of the documents referred to and relied on in the Register Declaration.    Mr. Register's silence throughout the fourteen-month arbitration and approximate six months here is deafening; surely the in-house counsel for both parties to the arbitration is undoubtedly aware of a party's obligations during discovery.

PMG has provided only vague references to the existence of documents allegedly evidencing and supporting its defense, namely the separateness and distinctness of NBAC from it.    Despite SMC's repeated efforts and requests to obtain those documents, and Arbitrator Rollings' Orders compelling the production of those documents, which are the sole basis of

PMG's defense to SMC's claims, PMG has refused and failed to produce the very documents on which it relies in the Register Declaration.

In normal circumstances, a party would naturally produce any records that rebut or disprove another party's claim if such documentary evidence <u>did</u> exist. PMG's strategy during the arbitration and here, however, is now clear; lay low, provide nothing by skirting its discovery obligations, and then rely on documents that it refused to produce in an attempt to distance itself from NBAC so it cannot possibly be found liable for NBAC's failure to pay SMC and dozens of other <u>bona</u> <u>fide</u> creditors. By withholding documents and then relying on and referring to them in support of its defense, PMG attempts to gain an advantage in this litigation by flouting its discovery obligations. Indeed, PMG's failure to produce the documents on which it now relies constitutes a violation of discovery practices that is specifically intended to stifle SMC's efforts to prove its alter ego claims.

PMG's conduct and refusal to comply with SMC's document demands and Arbitrator Rollings' Orders mandates preclusion of any documents and testimony regarding those documents. Preclusion is an appropriate remedy because the unnecessarily belated production, and intentional withholding of other documents and their whereabouts, would be unduly prejudicial to SMC because PMG's lack of disclosure was intended to prevent SMC from obtaining the very evidence needed to prosecute its claim and cross-examine Mr. Register.

**POINT II**

**SMC IS ENTITLED TO AN ADVERSE INFERENCE FOR
PMG'S FAILURE TO PRODUCE DOCUMENTS DURING
<u>DISCOVERY IN THE ARBITRATION PROCEEDING</u>**

An adverse inference, "insofar as possible, restor[es] the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence," or failure to

produce evidence, by the opposing party.  Kronisch v. United States, 150 F.3d 112, 126 (2d Cir.

1998).  The Second Circuit cogently articulated the purpose of the inference:

> [it] provides the necessary mechanism for restoring the evidentiary balance.  The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.

Residential Funding Corp. v. Degeorge Financial Corp., 306 F.3d 99, 107 (2d Cir. 2002).  An

adverse inference, which is equally appropriate where evidence has not been timely produced or

not produced at all, is proper when the party seeking it shows:

> (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had "a culpable state of mind;" and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Cordius Trust v. Kummerfield, 2008 WL 113664 at *3 (S.D.N.Y. Jan 11, 2008) (citing

Residential Funding Corp., 306 F.3d at 108).

This Court's unpublished decision in Cordius Trust is particularly instructive.  In that

veil-piercing case, this Court granted the plaintiff's motion for an adverse inference instruction

because of the defendant's failure to produce requested discovery.  Cordius Trust, 2008 WL

113664 at *6.  The plaintiff served the individual and corporate defendants with discovery

requests regarding the corporate defendant's finances to which the defendants stalled and balked,

which "resulted in a lack of evidence regarding [the corporate defendant's finances" during the

critical year in which an alleged loan from the individual defendant to the corporate defendant

occurred.  Id. at *2.  This Court found that the individual defendant, against whom the plaintiff

sought to attach judgment, exercised control over the company at the time that the plaintiff's

claims arose, and over the company's finances and financial information.  Id. at *3.  In addition,

this Court held that the defendants wrongfully withheld the requested information without offering any explanation for their failure. Id. at *4. Finally, this Court held that the requested information was relevant and that it was "precisely the usual means by which plaintiffs prove that one who is found to dominate a corporation has used his domination to cause the plaintiff's injury." Id. Accordingly, the Court concluded that the defendants' "long-term and purposeful evasion" warranted the imposition of an adverse inference. Id.

Indeed, PMG agreed to stipulate that it had produced all of the documents that it had related to its defense of SMC's alter ego claim. Mulvaney Cert., ¶¶ 31, 33, Exh. M. PMG's strategic decision to refuse to produce documents and fail to disclose withhold the whereabouts of other documents – yet now produce and otherwise rely on them – warrants the imposition of an adverse inference. Naturally, the failure of a party to produce proof, which would serve to elucidate the facts in issue – here, whether PMG and NBAC are the alter egos of each other – raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to it.

1.    PMG Had an Obligation to and Failed to Timely Produce Evidence

This case is no different than Cordius Trust. As to the documents that are now included in PMG's proposed exhibit list, PMG clearly had control over yet inexplicably failed to produce those documents during discovery. PMG's proposed Exhibit "A," which purports to be NBAC's Petition to the New Jersey Casino Control Commission and its accompanying exhibits, reveals that PMG, during discovery, produced only Exhibit "a" to the Petition, but not the Petition itself or any of its remaining exhibits. Compare Mulvaney Cert., Exhs. L to N. Furthermore, PMG failed to produce Exhibits "B," "E," the remaining four pages of "J," the first five pages of Exhibit "L," and none of "N" during discovery, but it now intends to introduce those exhibits and

Exhibit "A," all of which PMG had in its possession in October 2007 when it responded to SMC's discovery requests.  <u>Compare</u> Mulvaney Cert., Exhs. L to M.  Indeed, PMG was untruthful when it represented to SMC and to Arbitrator Rollings that it had produced all of the documents in its possession related to its defense to the alter ego claim.

As to the documents to which PMG refers and on which it relies in the Register Declaration, it cannot be disputed that PMG had control over the documents or at least their whereabouts.  First, it is undisputed that PMG and NBAC shared officers and directors.  Indeed, Mr. Register admits that he served as in-house counsel to NBAC and PMG during 2005. Mulvaney Cert., Exh. O (Register Dec., ¶ 1).  Although Mr. Register denies that Mr. Penrod had any position with PMG, Mulvaney Cert., Exh. O (Register Dec., 42), that testimony is directly contradicted by Mr. Register's interrogatory responses on behalf of PMG and Mr. Penrod's deposition testimony in another case.  It has also been conceded that PMG maintained control over NBAC's accounting, legal and management; PMG initiated and oversaw the formation of NBAC, provided legal and accounting services to NBAC, provided operating capital to NBAC, and requested that all documents regarding its closure be sent to PMG.  Mulvaney Cert., Exh. O (Register Dec., ¶¶ 6-7, 21, 37, 26).  It is further undisputed that Jack Penrod is the sole shareholder of PMG and the entities operating under the "Nikki Beach" trade name.  SMC Exhibit List, Exhs. 20, 37-40, 42, 45-49.  In addition, NBAC's Certificate of Incorporation provides that its managing member was PMG.  PMG Exhibit List, Exh. A(a).  Aside from the fact that Mr. Register and PMG had an obligation to disclose either the documents or their existence and whereabouts on behalf of NBAC in their capacity as its in-house counsel and managing member, he and PMG likewise had that obligation <u>because they obviously knew all along where the documents were allegedly maintained</u>.  Clearly, NBAC's general counsel and

managing member – Mr. Register and PMG – would have in their possession or at least know the location of critical documents. That PMG would have only a few incorporation documents and a one-paged year-end spreadsheet and nothing else like, for example, the substance of the year-end spreadsheet, the 2005 tax return to which Mr. Register now refers, or the financial statements to which Mr. Register now refers is surprising especially because of the control and involvement PMG exercised over NBAC.

2.      PMG Had A Culpable State of Mind

The Second Circuit has adopted a "'case-by-case approach to the failure produce relevant evidence[.]'" Cordius Trust, 2008 WL 113664 at *4 (quoting Reilly v. Natwest Markets Group, Inc., 181 F.3d 253, 267 (2d Cir. 1999). "'[I]t makes little sense to confine promotion of [the adverse inference's] remedial purpose to cases involving only outrageous culpability, where the party victimized by the spoliation is prejudiced irrespective of whether the spoliator acted with intent or gross negligence.'" Id. It is submitted that the long and contentious arbitration proceedings regarding discovery in this matter speak volumes of PMG's intent.

Beyond the misrepresentations that it had produced all of the documents it had in its possession, PMG, like the defendants in Cordius Trust, withheld not only documents now contained in its exhibit list despite SMC requesting them, but also intentionally and strategically failed to disclose the existence and whereabouts of apparent additional documents on which PMG now relies in the Register Declaration. Despite having been requested by SMC and ordered by Arbitrator Rollings to produce documents such as financial statements, tax returns, bank account statements, payroll information, and other indicia of corporate independence, PMG refers to and relies on numerous documents that were previously requested by SMC. For example, Mr. Register testifies that "NBAC prepared financial statements on a routine, periodic,

and ongoing basis in accordance with generally accepted accounting principles[,]"Mulvaney Cert., Exh. O (Register Dec., at ¶ 20), that "NBAC maintained its own financial records[,]" Mulvaney Cert., Exh. O (Register Dec., at ¶ 44), and that "NBAC had separate financials[.]" Mulvaney Cert., Exh. O (Register Dec., at ¶ 45). Indeed, Mr. Register often refers to the alleged "separate financials" that NBAC apparently "maintained." In its document demands, SMC had specifically requested the production of that information:

> 24.    Produce any and all documents that refer, reflect, or relate to the financial condition of Nikki Beach Atlantic City, LLC from its formation to present, including but not limited to, communication with and reports prepared by accountants, profit and loss statements, trial balances, sales reports, and financial statements and reports.

Mulvaney Cert., Exh. F (Demand 24). The very same information as it related to PMG was also requested. Mulvaney Cert., Exh. F (Demand 25). PMG, however, failed to produce financial statements and other information requested by SMC.

In addition, Mr. Register testifies that "PMG paid SMC the original down payments on behalf of NBAC because NBAC's bank accounts were in the process of being opened" and further references a payment from NBAC to SMC in July 2005. Mulvaney Cert., Exh. O (Register Dec., at ¶¶ 24, 41). In its document demands, SMC had specifically requested the production of that information:

> 22.    Produce any and all of Nikki Beach Atlantic City, LLC's banking statements including, but not limited to, documents reflecting the opening of the account(s), withdrawal and deposit tickets for [] any and [all] bank accounts, or any other accounts of similar character held in Nikki Beach Atlantic City, LLC's name from its formation to present.

Mulvaney Cert., at Exh. F (Demand 22).  The very same information as it related to PMG was also requested.  Mulvaney Cert., at Exh. F (Demand 23).  PMG, however, failed to produce the information requested by SMC.

Mr. Register continues his testimony by noting that PMG provided "accounting and legal services to the Nikki Beach Entities in exchange for a management fee."  Mulvaney Cert., Exh. O ( Register Dec., at ¶ 6).  In its document demands, SMC had specifically requested the production of that information:

> 29.    Produce any and all documents that refer, reflect or relate to Defendants' duties, obligations and/or responsibilities related to operating or otherwise managing the "Nikki Beach" bar in Atlantic City, New Jersey.

Mulvaney Cert., Exh. F (Demand 29).  PMG, however, failed to produce the information requested by SMC.  Certainly, a management agreement would have been produced if one had even existed.

Mr. Register further testifies that "NBAC filed a 2005 Federal Tax Return[,]" Mulvaney Cert., Exh. O (Register Dec., at ¶ 39), yet no such documents were produced.  In its document demands, SMC had specifically requested the production of that information:

> 30.    Produce any and all federal and state income tax returns filed by Nikki Beach Atlantic City, LLC from its formation to present.

Mulvaney Cert., Exh. F (Demand 30).  The very same information as it related to PMG was also requested.  Mulvaney Cert., Exh. F (Demand 31).  PMG, however, failed to produce the information requested by SMC.

Finally, for the very first time, PMG now contends that the wire transfers that it made directly to SMC were nothing more than *"loans"* to NBAC for which PMG was reimbursed by NBAC.  Mulvaney Cert., Exh. O (Register Dec., ¶¶ 21, 26, 43).  Almost two years have passed

before PMG or NBAC ever once proffered that defense.  Mr. Register's unsubstantiated

testimony illustrates not only the importance of the documents requested by SMC, but also

provides this Court with amply justification to bar the introduction of this and other testimony.

Like other documents, SMC requested information that would have captured Mr. Register's

previously undisclosed contention:

> 27.    Produce any and all documents that refer, reflect or relate
> to any capital contributions, acquisitions, purchases, investments,
> financing and/or funding received by Nikki Beach Atlantic City,
> LLC from Penrod Management or any other entity or individual.

Mulvaney Cert., Exh. F (Demand 27; see also Demands 22-25, 30-31 (requesting documents

that, if produced, would have revealed how NBAC and PMG booked, for tax purposes, alleged

"loan" to NBAC for tax purposes)).

SMC commenced arbitration against PMG and NBAC in September 2006.  It is now June

2008.  Almost two years have passed since the commencement of the arbitration and at least six

months since the parties represented to this Court that discovery had been completed.  Like the

defendants in Cordius Trust, PMG is simply unable to provide any valid reason for its failure to

disclose the documents contained in its exhibit list, or the documents to which it now seeks to

rely in the Register Declaration.  Cordius Trust, 2008 WL 113664 at *4.

3.    The Evidence is Relevant

"[T]he party seeking an adverse inference must 'adduce sufficient evidence from which a

reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been

of the nature alleged by the party affected by its destruction." Id. (quoting Residential Funding

Corp., 306 F.3d at 109).  As previously demonstrated, SMC requested relevant information

related to its claim of and PMG's defense to the alter ego issue such as financial statements, tax

returns, bank account statements, payroll information, and other indicia of corporate

independence, which this Court has already found to be relevant and "precisely the usual means by which plaintiffs prove that one who is found to dominate a corporation has used his domination to cause the plaintiff's injury." Id. at *5, n.2. Furthermore, SMC surely would not have agreed that discovery had been completed during the arbitration proceeding had it known of the apparent existence and whereabouts of additional documents. PMG's well-chronicled game of "hide-and-seek" discovery practices must not be countenanced in the face of substantial prejudice to its victim. Like the defendants in Cordius Trust, PMG's twenty-one month evasion of discovery requests and disregard for Arbitrator Rollings' Orders not only gives rise that the evidence sought either does not actually exist or, if it does, would be unfavorable to PMG, but also provides this Court with a sufficient basis on which to impose an adverse inference.

## CONCLUSION

For the reasons set forth herein, it is respectfully submitted that SMC's motion in limine to bar PMG from introducing any document, writing or other tangible item of evidence, including oral testimony about such document, writing or other tangible item of evidence, which has not been properly produced during discovery in response to SMC's document demands and pursuant to the August 16, 2007, September 10, 2007, and October 9, 2007, Orders compelling PMG to produce documents related to its defense to SMC's alter ego claim.  It is additionally respectfully submitted that SMC's request for the imposition of an adverse inference against PMG should be granted.

McELROY,    DEUTSCH,    MULVANEY    &
CARPENTER LLP
Attorneys for Respondent-Defendant,
Stewart's Mobile Concepts, Ltd.

Date: June 3, 2007          By:    _____
                                   Richard S. Mills
                                   Ryan P. Mulvaney
                                   88 Pine Street
                                   24th Floor
                                   New York, New York 10005
                                   Telephone: (212) 483-9490
                                   Facsimile: (212) 483-9129