# EXHIBIT N

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PENROD MANAGEMENT GROUP, INC.

                Plaintiff-Petitioner,

          - against -

STEWART'S MOBILE CONCEPTS, LTD.,

                Defendant-Respondent.

---

Civil Action No.: 07-10649 (JGK/DFE)

**LIST OF PROPOSED EXHIBITS
OF PLAINTIFF-PETITIONER
PENROD MANAGEMENT GROUP**

       Pursuant to the schedule set forth by the Hon. Douglas F. Eaton, U.S.M.J., as amended by agreement of the parties, following is Plaintiff-Petitioner Penrod Management Group's list of exhibits that may be offered in evidence at the hearing commencing on June 9, 2008 before Judge Eaton:

A. Nikki Beach Atlantic City, LLC Petition to the New Jersey Casino Control Commission

B. State of New Jersey, Division of Taxation, Certificate of Authority to collect New Jersey Sales & Use Tax issued to Nikki Beach Atlantic City, LLC

C. State of New Jersey, Department of Treasury/Division of Revenue, Business Registration Certificate issued to Nikki Beach Atlantic City, LLC

D. New Jersey Department of Labor and Workforce Development, Division of Employer Accounts Notice of Subjectivity to New Jersey Unemployment Compensation Law issued to Nikki Beach Atlantic City, LLC

E. E-mail Correspondence and Attachments relating to the Equipment Rental Negotiation between Stewart's Mobile Concepts, Ltd. and Nikki Beach Atlantic City, LLC

F. Equipment Rental Agreement between Stewart's Mobile Concepts, Ltd. and Nikki Beach Atlantic City, LLC

G. Equipment Rental Invoice issued from Stewart's Mobile Concepts, Ltd. to Nikki Beach Atlantic City, LLC

H. State of New Jersey, Casino Control Commission, Casino Hotel Alcoholic Beverage License issued to Nikki Beach Atlantic City, LLC

I. United States Department of Treasury/Internal Revenue Service, Statement of Adjustment and Refund Check issued to Nikki Beach Atlantic City, LLC

J. State of New Jersey, Casino Department of Community Affairs, Division of Fire Safety, Life Hazard Use Certificate of Registration issued to Nikki Beach Atlantic City, LLC

K. New Jersey Division of Revenue Certificate of Cancellation issued to Nikki Beach Atlantic City, LLC

L. Nikki Beach Atlantic City, LLC Statement of Profit & Loss

M. Nikki Beach Atlantic City, LLC Vendor Report for Stewart's Mobile Concepts, Ltd.

N. Nikki Beach Atlantic City, LLC Employee Payroll Records

Dated: New York, New York
      April 21, 2008

                    HOLLAND & KNIGHT LLP
                    Attorneys for Plaintiff-Petitioner Penrod
                    Management Group

                    By: _____
                        Sean C. Sheely
                        Christine Tramontano
                    195 Broadway
                    New York, New York  10007
                    (212) 513-3200

Of Counsel:
L.H. Steven Savola, Esq. (*pro hac vice*)
Savola LLC Law Firm
8770 Sunset Drive, #443
Miami, FL 33173
(305) 279-6406
# 5277013_v1

# EXHIBIT A



PLAINTIFF'S
EXHIBIT

A

Sandson & DeLucry, LLC
17 Gordon's Alley
Atlantic City, New Jersey 08401
609-344-7009

| | |
|---|---|
| IN THE MATTER OF THE JOINT PETITION OF RESORTS INTERNATIONAL HOTEL, INC. AND NIKKI BEACH ATLANTIC CITY, LLC FOR A DECLARATION AND ORDER ESTABLISHING A RELATED FACILITY PURSUANT TO N.J.S.A. 5:12-84 AND EXPANDING THE CHAB PREMISES PURSUANT TO N.J.S.A. 5:12-103 | STATE OF NEW JERSEY CASINO CONTROL COMMISSION<br><br>Petition Reference No.<br><br><br>PETITION |

**To:**  **The Honorable Chair and Commissioners**
**of the New Jersey Casino Control Commission**

The Petitioners Resorts International Hotel, Inc. ("Resorts") and Nikki Beach Atlantic City, LLC ("NBAC") (collectively, the "Petitioners") respectfully petition the New Jersey Casino Control Commission (the "Commission") for a Declaration and Order to establish the beach areas fronting Resorts as a "related facility" pursuant to N.J.S.A. 5:12-84. Petitioners also seek a Declaration and Order to expand Resorts' casino hotel alcoholic beverage licensed premises (the "CHAB Premises") to allow the operation of  NBAC's restaurant and entertainment facilities on the proposed related facility pursuant to N.J.S.A. 5:12-103, and for such ancillary relief as the Commission may determine is needed.  In accordance with the requirements set forth by N.J.A.C. 19:40-3.1 *et seq.*, Petitioners hereby state the following:

**I.    The Petitioners, Facts and Circumstances**

1.    Resorts is a corporation organized and existing under the laws of the State of New Jersey and maintains its principal place of business at 1100 Boardwalk, Atlantic City, NJ 08401.  Resorts is the holder of a plenary Casino License and Operation Certificate.  Resorts was also the successful bidder at Atlantic City's February 17, 2005 auction of four (4) year leases for those certain beachfront lots identified as Beach Lots 32, 33, 34 and 35 on the Map of Beach Lease Lots prepared by the City of Atlantic City (collectively, the "Beach Lots"). The Beach Lots are located generally south of the Boardwalk opposite the Resorts-owned real property fronting the Boardwalk in Blocks 59 and 60 of the Atlantic City Tax Map.

2.    NBAC is a newly-formed limited liability company duly organized under the laws of the State of New Jersey. A copy of NBAC's Certificate of Incorporation is attached as **Exhibit "A"** hereto. NBAC's sole member and owner is Penrod Management Group, Inc. ("Penrod"). NBAC will maintain a business address at the Resorts Casino Hotel complex, 1133 Boardwalk, Atlantic City, New Jersey 08401.

3.    On September 14, 2004, Resorts executed a Lease Agreement (the "Lease") with Penrod; which as amended and restated will be assigned to NBAC.  Pursuant to the Lease,

Resorts will sublet the Beach Lots to NBAC, and also lease NBAC storage space within the Resorts hotel complex. A copy of the Lease is attached hereto, incorporated herein by reference, and marked as Exhibit "B".

4.      More specifically, NBAC seeks to develop, operate, manage, and maintain the Beach Lots as a first-class facility, featuring two uniquely attractive restaurant, bar, and entertainment operations: an upscale restaurant with full service menu, sixty (60) seat bar, and a variety of entertainment options (hereinafter, "Nikki Beach"); and a more casual restaurant establishment, serving a more traditional beach menu and offering a full service bar (hereinafter, "Penrod's Elbo Room" and collectively with Nikki Beach, the "Facility"). Between Nikki Beach and Penrod's Elbo Room will be an open beach area in which NBAC will host a concert series and other larger-scale events. NBAC will operate both components of the Facility.

5.      Attached as **Exhibit "C"** is a reduced-size plan of the Facility. Nikki Beach will feature a creative, global menu featuring cuisine such as fresh sushi, Grilled Angus Sirloin Steak, Mediterranean Chopped Salad, fancy desserts, and a daily Champagne Brunch. Nikki Beach proposes to use fine china, glass, and silverware to complement the upscale, luxury theme and service. Entertainment will include disc jockeys, fashion shows, modeling events, and other interactive entertainment, *i.e.* Nikki dancers and theatrical performers. Nikki Beach's proposed operational hours are 9am – 5am, seven (7) days a week; but it is understood that the City currently limits the hours of operation in accordance with the provisions of its standard beach lot lease.

6.      Penrod's Elbo Room will be located on the beach generally Northward of Nikki Beach. Penrod's Elbo Room will offer a more casual atmosphere, featuring a menu consisting of hamburgers, cheese-steaks, hot dogs, and french-fries. Penrod's Elbo Room proposes to use paper plates and plastic flatware and glasses to complement the casual atmosphere. Entertainment will include live bands and disc jockeys, offering classic rock, top 40's, and other dance music. Weekly events will include pageants and modeling searches. NBAC also proposes to offer a concert series to take place on weekends and holidays. The concert area shall consist of approximately 26,000 square feet. There will be an admission charge for the concerts, during which there will be limited food and cocktail service. Penrod's Elbo Room's proposed operational hours are twenty-four (24) hours a day, seven (7) days a week; subject again to the City's regulation of operational hours pursuant to its standard beach lot lease.

7.      The Facility will have security staff present at all hours of operation, and the perimeter of the Facility will be secured with attractive, temporary fencing. Both Nikki Beach and Penrod's Elbo Room will maintain permanent, locked storage facilities on-site for alcoholic beverages at the Facility, and Nikki Beach and Penrod's Elbo Room will each purchase alcoholic, alcoholic-related, and other goods directly from approved distributors and will dispense such alcoholic beverages in accordance with CHAB standards.

8.      The Commission's Division of Licensing has advised Petitioners to seek a ruling from the Commission concerning the designation and status of the Facility for purposes of licensure. Petitioners now seek a declaration and ruling from the Commission as follows:

> (1) Designating the Facility as a "related facility" or exempt facility for purposes of licensure; and,

> (2) Expanding the CHAB Premises to allow for the operation of the Facility, and establishing terms, conditions, and restrictions to govern the Facility and the CHAB Premises, as expanded.

## II.    The Facility is a "Related Facility" Pursuant to N.J.S.A. 5:12-84.

9.      Effective June 2, 1977, the New Jersey Legislature enacted P.L. 1977, c.110, otherwise known as the Casino Control Act, codified at N.J.S.A. 5:12-1 *et seq.* (the "Act"). To ensure the public's confidence and trust in legalized gambling, the Legislature created, among other things, an expansive administrative process designed to extend strict State regulation to all casino licensees, related service industries, and most employees, officers, and agents thereof. N.J.S.A. 5:12-1(6); N.J.S.A. 5:12-50. By way of the Act, the Legislature vested great authority in the Commission to effectuate and implement the prescriptions and purposes of the Act and to preserve the public's confidence and trust in legalized gambling through a thorough and strict licensure and registration process. N.J.S.A. 5:12-63, 64.

10.     At issue is the status of the Facility for purposes of licensure; more specifically, Petitioners request that the Commission designate the Facility as either a related facility or exempt facility for purposes of licensure.  Because of the non-gaming, purely entertainment and retail nature of Nikki Beach and Penrod's Elbo Room, NBAC's Lease Agreement with Resorts, and the Facility's proximate location to the casino hotel, Petitioners respectfully submit that the Facility is a related facility for purposes of licensure.

11.     The Facility is of course clearly not a casino. N.J.S.A. 5:12-6 defines the word "casino" to mean "[o]ne or more locations or rooms in a casino hotel facility that have been approved by the [C]ommission for the conduct of casino gaming … ."  N.J.S.A. 5:12-22 defines "gaming" to mean "[t]he dealing, operating, carrying on, conducting, maintaining or exposing for pay of any game."  The Facility, as designed, will provide non-gaming entertainment, retail, and food and beverage service. Because the Facility is not a casino, it must fall within one of the following designations for purposes of licensure: an approved hotel or facility; related facility; or exempt facility that is outside of the jurisdiction of the Act and this Commission.

12.     The Facility is not an approved hotel.  N.J.S.A. 5:12-27 defines the phrase "approved hotel" as follows:

> "A single building, or two or more buildings which are physically connected in a manner deemed appropriate by the [C]ommission and which are operated as one casino-hotel facility under the provisions of the "Casino Control Act" … located within the limits of the city of Atlantic City as said limits were defined as of November 2, 1976, and

containing not fewer than the number of sleeping units required by section 83 of P.L.1977, c.110 (C.5:12-83), each of which sleeping units shall: a. be at least 325 square feet measured to the center of perimeter walls, including bathroom and closet space and excluding hallways, balconies and lounges; b. contain private bathroom facilities; and c. be held available and used regularly for the lodging of tourists and convention guests. "

N.J.S.A. 5:12-83 establishes many additional requirements to assist the Commission in determining whether or not a facility is an approved hotel. Suffice to say, the Facility exhibits none of the characteristics of a hotel.

13.    The Facility is not an exempt facility, which falls outside the jurisdiction of the Act and the Commission. The Facility is physically proximate to Resorts' casino hotel and is directly opposite Resorts' Boardwalk Frontage. The Facility is also subleased by NBAC from the casino licensee Resorts, which relationship brings the Facility within the jurisdiction of the Act and Commission. While the Facility does not expect to sell any gaming related goods or services, Nikki Beach and Penrod's Elbo Room do intend to draw business from customers patronizing the nearby casino facilities as well as from visitors to Atlantic City seeking shopping, dining, and non-casino entertainment.

14.    The Facility is most aptly described as a "related facility" for purposes of licensure. Although the Act does not specifically define the phrase "related facility," Petitioners respectfully submit that the Facility is within the jurisdiction of the Act and, therefore, subject to the Commission's authority pursuant to N.J.S.A. 5:12-84. A unique attraction in Atlantic City, the Facility will offer themed dining, entertainment facilities, and distinctive bars, which are categorically non-gaming in nature. Although proximate to a casino hotel and subject to a sublease agreement with a casino licensee, the Facility will be a free-standing improvement that is physically separate from the casino hotel. The Facility will closely resemble an upscale beach restaurant and bar as well as a casual restaurant and bar with the benefit of a venue for beach-side concerts. The Beach Lots are leasehold interests of the casino licensee subleased to a non-gaming casino service industry; and the Facility is categorically non-gaming in nature and structurally independent from the casino hotel. The Facility is properly designated as a related facility and, therefore, subject to the Commission's jurisdiction.

WHEREFORE, Petitioners respectfully request the Commission to issue a Declaration and Order designating the Facility as a related facility for purposes of licensure.

III.    **Petitioners Seek to Expand the CHAB Premises and Operate the Facility, and Petitioners Also Seek a Determination With Respect to the Process, Terms, and Conditions the Commission Shall Require and Expect Concerning The Use, Transportation, Service, Disposal, and Treatment of Alcoholic Beverages to be Dispensed At the Facility Pursuant to N.J.S.A. 5:12-103 and N.J.A.C. 19:50-1.5A.**

15.    N.J.S.A. 5:12-103 provides that the Commission is vested with exclusive jurisdiction and authority to grant any license for alcoholic beverages in, on, or about premises licensed as part of a casino hotel. Additionally, N.J.S.A. 5:12-103 states the following:

"Notwithstanding any provision to the contrary, the Commission may promulgate any regulations and special rulings and findings as may be necessary for the proper enforcement, regulation, and control of alcoholic beverages in casino hotels when the Commission finds that the uniqueness of casino operations and the public interest require that such regulations, rulings, and findings are appropriate."

16. N.J.A.C. 19:50-1.1 through 5.8 are the regulations pertaining to the issuance of CHAB licenses. Specifically, N.J.A.C. 19:50-1.4 classifies locations authorized for purposes of CHAB licensure; N.J.A.C. 19:50-1.5 provides the standards applicable for CHAB licensure; and, N.J.A.C. 19:50-1.5A prescribes the process by which an entity may apply for CHAB licensure.

17. Petitioners respectfully request to expand Resort's CHAB Premises so that the Facility is deemed a part of the CHAB Premises, allowing NBAC to be granted CHAB licensure for the operations described in Paragraphs 4-7 above.

18. Should the Commission accept Petitioners' position and find that the Facility is a related facility for purposes of licensure, Petitioners seek permission to expand Resorts' CHAB Premises to the Facility, and Petitioners request a determination from the Commission with regard to the process, terms, and conditions respecting CHAB licensure for NBAC. Petitioners ask the Commission to find that NBAC may seek CHAB licensure upon the filing of a completed application for a non-gaming casino service industry license.

WHEREFORE, Petitioners respectfully request the Commission to issue a Declaration and Order expanding the CHAB Premises to the Facility; and detailing the terms, conditions, and other CHAB licensure requirements respecting NBAC's right to apply in its own right for CHAB licensure to operate the Facility.

Respectfully submitted,

For Petitioner Resorts International Hotel, Inc.:

Dated: March 11 2005.

Nicholas R. Amato
Sr. Vice President &
General Counsel

For Petitioner Nikki Beach Atlantic City, LLC:

Dated: March 21 2005

Mark H. Sandson, Esquire
Sandson & DeLucry, LLC

# EXHIBIT "A"

DIVISION OF REVENUE    Fax:609-984-6700    Mar  7 2005  11:38    P. 07
Mar  4 2005    16



*New Jersey Department of Treasury*
*Division of Commercial Recording*
*Certificate of Formation, Limited Liability Company*

L-100 NJSA 42 (2/94)

---

This form may be used to record the formation of a Limited Liability Company under and by virtue of New Jersey State law. Applicants must insure strict compliance with NJSA 42, the New Jersey Limited Liability Company Act, and insure that all applicable filing requirements are met. Applicants are advised to seek out private legal assistance before submitting filings to the Secretary's office.

---

1. Name of Limited Liability Company:  **Nikki Beach Atlantic City, LLC**

2. The purpose for which this Limited Liability Company is organized is:  **All uses permitted by law.**

3. Date of formation:    **Upon Filing**

4. Registered Agent Name & Address (must be in NJ):

   Mark Sandson
   17 Gordon's Alley
   Atlantic City, NJ 08401

5. Dissolution date:  **Perpetual**

6. Other provisions (list below or attach to certificate):

   Managed by members:

   Penrod Management Group, Inc.
   Ocean One Drive
   Miami Beach, FL 33139

*LLC*

```
FILED
MAR  4 2005
STATE TREASURER
```

---

The undersigned represent(s) that this Limited Liability Company has one or more members, and that this filing complies with requirements detailed in NJSA 42. The undersigned hereby attest(s) that they are authorized to sign this certificate on behalf of the Limited Liability Company.

_Bruce E. Hubbard_    March 4, 2005

Name                    Date
Bruce Hubbard - Authorized Person        S1523792
President - Hubbard, Inc.                 J2883492        0600229369
D/B/A  Hubco Incorporation Services

Issued EIN                                                                                    Page 1 of 1



# Internal Revenue Service
### DEPARTMENT OF THE TREASURY

The Digital Daily

---

| | |

---

## Federal Tax ID / EIN

This is your provisional Employer Identification Number:

**20-2529399**

Today's Date is: March 21, 2005 GMT

You will receive a confirmation letter in U.S. mail within fifteen days.

The letter will also contain useful tax information for your business or organization.

If you have input any of the information on your application in error, please wait seven days and contact the EIN Toll Free area at 1-800-829-4933, Monday - Friday, 7:30am - 5:30pm. If you do not want to call, please make corrections on the letter you receive confirming your EIN and return it to the IRS.

If you are going to complete other on-line applications that require your Employer Identification Number(EIN) you can copy it by performing the following steps:

1)  Use your mouse to highlight your EIN (blue number on top of page) by moving your pointer on top of the number.
2)  Press the Ctrl key at the same time pressing the C key.

Once you copy your EIN you can paste it in the appropriate place by pressing the Ctrl key at the same time pressing the V key.

You may click on the buttons below for different print options or to fill out another Form SS-4.

Review and Print Form SS-4          Fill Out Another Form SS-4

---

Click here to return to the Internet Employer Identification Number landing (start) page.

---

https://sa.www4.irs.gov/sa_vign/issueEIN.do                                          3/21/2005

New Jersey Division of Revenue<br>Online Business Registration Service                    Page 1 of 2

# New Jersey Division of Revenue
# Online Business Registration Service

---

Congratulations!  You have completed the registration process.
Please note your Filer ID and confirmation number for your records and future use.

**FILER ID: 202529399     Confirmation #: CN313245627 for Corp Number: 060022936**

Your information will be posted to our production system within twenty-four hours.
Thank you for using our Business Filing and Registration Service.  Best wishes for your
business endeavor.

---

You indicated you would be collecting  NJ Sales Tax.  Below is your Sales Tax Temporary Certi
Please use your PRINT key to make a copy.

### New Jersey Division of Taxation
### Sales Tax Temporary Certificate of Authority

---

The person, partnership, or corporation named below is hereby temporarily authorized to collect sales
pursuant to the New Jersey Sales and Use Tax Act.

This authorization is good ONLY for the named business at the location specified herein, and only for

Business ID: 202529399
**Business Name:** NIKKI_BEACH_ATLANTIC_CITY,_LLC
**Trade Name:** NIKKI_BEACH_PENROD_S_ELBO_ROOM
**Business Location: Street:** 1133_BOARDWALK
City: ATLANTIC_CITY                    **State: NJ Zip:** 08401 - 0000

Valid through date: 4/4/2005

## Other Services and Information
As a new registrant you may be interested in learning about other services New Jersey offers to
the business community. Review the list of service programs below and click on the selections
that interest you. We will send you an e-mail with information about and hyperlinks to the
service programs. Where applicable, we will attached program-related forms and instructions.

☐ **Small Business Registration** - Vendors can use the Small Business Vendor
Registration Form to be added to the State listing of vendors eligible to participate in New
Jersey Set-Aside Program.

# EXHIBIT "B"

Lease is circulating for signing and will be provided as a supplement when fully executed.

# EXHIBIT "C"



# EXHIBIT B

# STATE OF NEW JERSEY
## DEPARTMENT OF THE TREASURY
## DIVISION OF TAXATION
## SALES TAX COLLECTION SCHEDULE
### RATE: 6%    EFFECTIVE JULY 1, 1992

| Amount of Sale | Tax to be Collected | Amount of Sale | Tax to be Collected |
|---|---|---|---|
| $0.01 to $0.10 | None | $6.11 to $6.22 | $0.37 |
| 0.11 to 0.22 | $0.01 | 6.23 to 6.38 | .38 |
| 0.23 to 0.38 | .02 | 6.39 to 6.56 | .39 |
| 0.39 to 0.56 | .03 | 6.57 to 6.72 | .40 |
| 0.57 to 0.72 | .04 | 6.73 to 6.88 | .41 |
| 0.73 to 0.88 | .05 | 6.89 to 7.10 | .42 |
| 0.89 to 1.10 | .06 | 7.11 to 7.22 | .43 |
| 1.11 to 1.22 | .07 | 7.23 to 7.38 | .44 |
| 1.23 to 1.38 | .08 | 7.39 to 7.56 | .45 |
| 1.39 to 1.56 | .09 | 7.57 to 7.72 | .46 |
| 1.57 to 1.72 | .10 | 7.73 to 7.88 | .47 |
| 1.73 to 1.88 | .11 | 7.89 to 8.10 | .48 |
| 1.89 to 2.10 | .12 | 8.11 to 8.22 | .49 |
| 2.11 to 2.22 | .13 | 8.23 to 8.38 | .50 |
| 2.23 to 2.38 | .14 | 8.39 to 8.56 | .51 |
| 2.39 to 2.56 | .15 | 8.57 to 8.72 | .52 |
| 2.57 to 2.72 | .16 | 8.73 to 8.88 | .53 |
| 2.73 to 2.88 | .17 | 8.89 to 9.10 | .54 |
| 2.89 to 3.10 | .18 | 9.11 to 9.22 | .55 |
| 3.11 to 3.22 | .19 | 9.23 to 9.38 | .56 |
| 3.23 to 3.38 | .20 | 9.39 to 9.56 | .57 |
| 3.39 to 3.56 | .21 | 9.57 to 9.72 | .58 |
| 3.57 to 3.72 | .22 | 9.73 to 9.88 | .59 |
| 3.73 to 3.88 | .23 | 9.89 to 10.10 | .60 |
| 3.89 to 4.10 | .24 | Over $10 | .60* |
| 4.11 to 4.22 | .25 | Over $20 | 1.20* |
| 4.23 to 4.38 | .26 | Over $30 | 1.80* |
| 4.39 to 4.56 | .27 | Over $40 | 2.40* |
| 4.57 to 4.72 | .28 | Over $50 | 3.00* |
| 4.73 to 4.88 | .29 | Over $60 | 3.60* |
| 4.89 to 5.10 | .30 | Over $70 | 4.20* |
| 5.11 to 5.22 | .31 | Over $80 | 4.80* |
| 5.23 to 5.38 | .33 | Over $90 | 5.40* |
| 5.39 to 5.56 | .33 | Over $100 | 6.00* |
| 5.57 to 5.72 | .34 | Over $200 | 12.00* |
| 5.73 to 5.88 | .35 | Over $300 | 18.00* |
| 5.89 to 6.10 | .36 | Over $400 | 24.00* |

*On amounts above $10.00, the tax shall be $0.06 on each full dollar of the amount of sale, plus the tax on each part of a dollar in excess of a full dollar in accordance with the above formula.

ST-75 (11-97)

---

**NOTICE:** The enclosed N.J. State Sales Tax Certificate of Authority (CA-1) is a permit to:
- Collect N.J. State Sales Tax
- Issue N.J. Resale Certificates (ST-3)
- Issue N.J. Exempt Use Certificates (ST-4)

You **must** have a valid N.J. Sales Tax Certificate to collect Sales Tax or issue certificates.
If you are **not** subject to collect N.J. Sales Tax but need to issue Resale or Exempt Use Certificates, you can request to be placed on a "Non-reporting Basis". Call or write the Division to obtain the proper forms (ST-6205) at.
State of New Jersey  Division of Taxation  P O Box 252  Trenton, N.J. 08646-0252  (609) 292-1730.
This Certificate of Authority (CA-1) must be displayed at your place of business.

---

# STATE OF NEW JERSEY
## Certificate of Authority

DIVISION OF TAXATION
TRENTON, N J 08695

The person, partnership or corporation named below is hereby authorized to collect
**NEW JERSEY SALES & USE TAX**

pursuant to **N.J.S.A. 54:32B-1 ET SEQ.**

*Robert K. Thompson*
Director, Division of Taxation

This authorization is good ONLY for the named person at the location specified herein.
This authorization is null and void if any change of ownership or address is effected

NIKKI BEACH ATLANTIC CITY, LLC
NIKKI BEACH-PENROD'S ELBO ROOM
1133 BOARDWALK
ATLANTIC CITY NJ  08401

Tax Registration No : **202-529-399/000**
Tax Effective Date : **05-01-05**
Document Locator No. : **I0000214917**
Date Issued : **03-23-05**

This Certificate is NOT assignable or transferable. It must be conspicuously displayed at above address.

PLAINTIFF'S EXHIBIT B
ALL-STATE LEGAL®

# EXHIBIT C

Taxpayer Identification# 202-529-399/000                 03/23/05

Dear Business Representative:

Congratulations! You are now registered with the New Jersey Division of Revenue.

Use the Taxpayer Identification Number listed above on all correspondence with the Divisions of Revenue and Taxation, as well as with the Department of Labor (if the business is subject to unemployment withholdings). Your tax returns and payments will be filed under this number, and you will be able to access information about your account by referencing it.

Additionally, please note that State law requires all contractors and subcontractors with Public agencies to provide proof of their registration with the Division of Revenue. The law also amended Section 92 of the Casino Control Act, which deals with the casino service industry.

We have attached a Proof of Registration Certificate for your use. To comply with the law, if you are currently under contract or entering into a contract with a State agency, you must provide a copy of the certificate to the contracting agency.

If you have any questions or require more information, feel free to call our Registration Hotline at (609)292-1730.

I wish you continued success in your business endeavors.

Sincerely,

*John E. Tully, CPA*
John E. Tully, CPA
Director

## STATE OF NEW JERSEY
## BUSINESS REGISTRATION CERTIFICATE

DEPARTMENT OF TREASURY/
DIVISION OF REVENUE
PO BOX 252
TRENTON, NJ 08646-0252

TAXPAYER NAME:

NIKKI BEACH ATLANTIC CITY, LLC

ADDRESS:

1133 BOARDWALK
ATLANTIC CITY NJ 08401

EFFECTIVE DATE:

03/04/05

TRADE NAME:

NIKKI BEACH-PENROD'S ELBO ROOM

SEQUENCE NUMBER:

1136875

ISSUANCE DATE:

03/23/05

*John E. Tully*

FORM-BPC(08-01)          Director
This Certificate is NOT assignable or transferable. It must be conspicuously displayed at above address

PLAINTIFF'S
EXHIBIT

C

ALL-STATE LEGAL®

# EXHIBIT D



New Jersey Department of Labor
and Workforce Development
Division of Employer Accounts
PO Box 397
Trenton, New Jersey 08625-0397

09/02/2005

## NOTICE OF SUBJECTIVITY TO THE N.J. UNEMPLOYMENT COMPENSATION LAW

YOUR PERMANENT EMPLOYER ID. NO.   0-202-529-399/000-00

NIKKI BEACH ATLANTIC CITY, LLC
NIKKI BEACH-PENROD'S ELBO ROOM
17 GORDON'S ALLEY
ATLANTIC CITY, NJ 08401

| FINANCING METHOD | Contributory |
| --- | --- |
| DISABILITY PLAN | State Plan |
| DATE EMPL. LIAB. BEGINS | 04/01/2005 |
| SUBJECT STATUS ATTAINED DATE | 06/01/2005 |
| DATE WORKER LIABILITY BEGINS | 06/02/2005 |
| EMPLOYER U.C. RATE | 2.4825 |
| EMPLOYER WORKFORCE RATE | 0.1175 |
| EMPLOYER HEALTH CARE RATE | 0.200 |
| EMPLOYER T.D. RATE | 0.500 |
| WORKER U.C. RATE | 0.3825 |
| WORKER WORKFORCE RATE | 0.0425 |
| WORKER HEALTH CARE RATE | 0.000 |
| WORKER T.D. RATE | 0.500 |

Based on available information, we have  determined  that you are an employer subject to the N.J. Unemployment Compensation Law  Under Section  19 (h) 1.

Your permanent Employer ID number is shown above and should be used on all correspondence with this office.

You are responsible for remitting worker contributions beginning with the date as shown above.  Failure to make proper deductions from payments to employees does not relieve you, the employer, of this liability. Contributions/Wage Reporting Reports will be mailed to you in the near future.  Submit with remittance on or before the due dates shown on the report(s).

This determination is final 15 days after the date of this notice as prescribed in New Jersey Administrative Code 12 16-22.  If you disagree with this determination, you must file a written request for a hearing within 15 days after the date of this notice. directed to the Chief Auditor, sent to the attention of the Hearer of Contested Cases.

Under separate cover  we are forwarding additional informational materials, including information on employer and worker contributions to the Workforce Development Fund and Health Care Fund.

The Supervisor of
Status Determinations

Ph: 609-633-6400
Ext. 2206



PLAINTIFF'S
EXHIBIT

D

# The New Jersey Department of Labor and Workforce Development

## (To be posted in a conspicuous place)

# Your employer is subject to the New Jersey Unemployment Compensation and Temporary Disability Benefits Laws.

## Unemployment Insurance

Benefits are payable to workers who lose their jobs or who are working less than full time because of a lack of full-time work and who meet the eligibility requirements of the law.

If you become totally or partially unemployed, file a claim for unemployment insurance benefits as soon as possible. You may file your claim by telephoning a Reemployment Call Center, or if you meet certain requirements, via the Internet at **www.njuifile.net**. There are three Reemployment Call Centers that serve areas of the state based on residential ZIP codes. Before you call, please have available your Social Security number and the complete name and address of each employer that you worked for during the past 18 months.

| | | |
|---|---|---|
| Union City Call Center | *(serves northeast NJ)* | (201) 601-4100 |
| Freehold Call Center | *(serves northwest & central NJ)* | (732) 761-2020 |
| Cumberland Call Center | *(serves southern NJ)* | (856) 507-2340 |

## Disability Insurance

Benefits are payable to eligible workers for disabilities (including pregnancy) not compensable under the Workers' Compensation Law, from either an employer-provided private plan or the New Jersey State Plan.

## Private Plan*

An employer may provide disability insurance coverage under a Private Plan, but the consent of a majority of the workers is required, if the workers are to share in its cost. If you become disabled, request your employer to supply you with the proper form to be used in claiming benefits under the Private Plan.

## New Jersey State Plan*

If you are covered under the New Jersey State Plan and become disabled, obtain Form DS-1, "Claim for Disability Benefits," from your employer, any One-Stop Career Center, or by contacting the Division of Temporary Disability Insurance, PO Box 387, Trenton, New Jersey 08625-0387 (telephone 609-292-7060). Or you can obtain a form through our website at **www.nj.gov/labor**. Go to Benefits, Temporary Disability.

**Important:** Complete and mail all forms promptly. You may lose some or all of your benefits if you file your claim more than 30 days after the start of your disability.

*If you no longer have a job with your last employer upon recovery from a period of disability, you should file for unemployment benefits. You may be entitled to an unemployment insurance claim based on wages earned before your disability began.*

## Financing of Programs

These programs are financed by a payroll tax paid by employers and workers. Your employer is authorized to deduct the worker contributions (tax) from your wages. These deductions must be noted on your pay envelope, paycheck or on some other form of notice. The amount of taxable wages changes from year to year.

The deduction may be allocated at varying rates to the Unemployment Insurance Trust Fund, the Health Care Subsidy Fund, and the Workforce Development / Supplemental Workforce Funds. Workers covered by the State Plan for disability insurance contribute to the Temporary Disability Benefits Trust Fund. If an approved Private Plan is non-contributory, no contributions can be deducted from workers' wages for disability insurance.

Your employer also pays contributions which are based in part on their employment experience.

Enforced by:
New Jersey
Department of Labor and Workforce Development
Unemployment & Disability Insurance
PO Box 058
Trenton, New Jersey 08625-0058



Additional copies of this poster or any other required posters may be obtained by contacting the New Jersey Department of Labor and Workforce Development, Office of Constituent Relations, PO Box 110, Trenton, New Jersey 08625-0110, (609) 777-3200.

New Jersey Department of Labor and Workforce Development is an equal opportunity employer with equal opportunity programs. Auxiliary aids and services are available upon request to individuals with disabilities.

If you need this document in braille or large print, call (609) 292-7162. TTY users can contact this department through New Jersey Relay: 7-1-1.

# EXHIBIT E

Michael Register

From:       keith@stewartsmobile.com
Sent:       Friday, April 08, 2005 1:57 AM
To:         tmh@nikkimarina.com; michael@penrods.com; Mike Penrod
Subject:    Office/Green Room and Dry storage Trailers Quote and Floor Plans
Attachments: Lease Quote-NikkiBeach2.pdf; 36x10moboffice.pdf; 32x8moboffice.pdf; 24x8moboffice.pdf

Tim, Mike, and Michael,

Please review/print/save the attached 4 PDF docs.  Please call with any questions

Keith


Keith Futerman
Stewart's Mobile Concepts, Ltd.
945 East Jericho Turnpike
H untington Station, NY 11746
Toll Free 800-919-9261
P 631-261-6030
F 631-261-1787
Cell 516-551-8865
Email: keith@stewartsmobile.com
"MOBILE KITCHEN RENTALS AND SUPPORT SERVICES FROM COAST TO COAST"
Website: http://www.stewartsmobile.com



PLAINTIFF'S
EXHIBIT
E



# EXHIBIT F

# Stewart's Mobile Concepts, Ltd.
## EQUIPMENT RENTAL AGREEMENT

## LESSEE

FULL LEGAL NAME OF LESSEE:     Nikki Beach Atlantic City, LLC

BILLING ADDRESS:     1 Ocean Drive
Miami Beach, FL 33139

EQUIPMENT DELIVERY LOCATION: Resorts International Hotel & Casino
1133 Boardwalk
Atlantic City, NJ 08401

PHONE: (305) 538-1111     FAX: (305) 534-8937

## LESSOR

STEWART'S MOBILE CONCEPTS, Ltd.
844 East Jericho Turnpike
Huntington Station, NY  11746
Phone: (631) 351-6030   Fax: (631) 351-1587

In Consideration of the covenants and conditions contained herein, Stewart's Mobile Concepts, Ltd. ("Lessor") and Nikki Beach Atlantic City, LLC ("Lessee") agree as follows:

1.     **Leased Equipment:** Lessor agrees to lease and Lessee agrees to accept the following leased equipment; hereafter collectively referred to as the "Leased Equipment" or the "Equipment".

| QUANTITY | EQUIPMENT DESCRIPTION |
|---|---|
| 1 | 48 FT. Kentucky Model Mobile Kitchen |
| 1 | 48 FT. K-283 Model Mobile Kitchen |
| 1 | 20' x 24' Compact Kitchen |
| 1 | 40 FT. Dishwashing Trailer |
| 1 | 8' x 20' Combination Walk-in Cooler/Freezer |
| 1 | 8' x 20' Walk-in Cooler |
| 1 | 36' x 10' Office/Greenroom Trailer |
| 2 | Ramp & Staircase Systems for (2) kitchen trailers (Not ADA Compliant) |

2.     **Term:** 5 month minimum, commencing upon delivery of the 48 FT. Kentucky Model Mobile Kitchen on or about May 2, 2005, the 48 FT. K-283 Model Mobile Kitchen on or

Page 1 of 5

PLAINTIFF'S EXHIBIT
F
ALL-STATE LEGAL®

about May 6, 2005, the 20' x 24' Compact Kitchen on or about May 2, 2005, the 40 FT. Dishwashing Trailer, 36' x 10' Office/Greenroom Trailer, 8' x 20' Combination Walk-in Cooler/Freezer, and 8' x 20' Walk-in Cooler on or about April 28, 2005 to the Location indicated above. The lease will expire September 30, 2005.

     3.     **Rent:** Rent shall be **$45,345.00** per month for 5 months (plus applicable state and local taxes). The total estimated amount of rent to be charged for the use of the Leased Equipment based on the term specified in paragraph 2 shall be **$226,725.00** (plus applicable state and local taxes).

     4.     **Security/Cleaning Deposit:** Upon the signing of this Agreement, Lessee shall pay to Lessor a Security/Cleaning Deposit of **$30,000.00**. Lessor shall retain the Security/Cleaning Deposit as security for the performance by Lessee of all obligations imposed by this Agreement. Lessor may, at its option, apply all or any portion of the Security Deposit with respect to any violation of this Agreement by Lessee, including cleaning and repair of equipment upon its return or pick up by Lessor. Any portion of the Security Deposit that has not been appropriated by the Lessor in accordance with the provisions of this Agreement must be returned to Lessee within thirty (30) days after the expiration of the term of this Agreement.

     5.     **Payments:**
A.  Upon signing of this agreement, Lessee shall make the following payments:

| | | |
|---|---|---|
| 1. | Security/Cleaning Deposit | $30,000.00 |
| 2. | First Month's Rent for: | |
| | 48 FT. Kentucky Model Mobile Kitchen | |
| | 48 FT. K-283 Model Mobile Kitchen | |
| | 20' x 24' Compact Kitchen | |
| | 40 FT. Dishwashing Trailer | |
| | 36' x 10' Office/Greenroom Trailer | |
| | (2) OSHA Approved Aluminum Steps | $42,345.00 (plus any applicable sales tax) |
| 3. | First and Last Month's Rent for: | |
| | 8' x 20' Combination Walk-in Cooler/Freezer | |
| | 8' x 20' Walk-in Cooler | $6,000.00 (plus any applicable sales tax) |
| 4. | Additional Charges: | |
| | a. Round Trip Delivery/Return | $11,084.00 (plus any applicable sales tax) |
| | b. Technical Support | $2,500.00 (plus any applicable sales tax) |
| | c. (6) Anchor Installation for 36'x10' | $510.00 (plus any applicable sales tax) |
| | d. (6) Anchor Removal for 36'x10' | $210.00 (plus any applicable sales tax) |
| | e. Ins. Liability waiver for 36'x10' | $15.00 (plus any applicable sales tax) |
| | f. Ins. Property waiver for 36'x10' | $40.00 (plus any applicable sales tax) |
| | g. Block, Level, and Knockdown for the 36' x 10' Office/Green Room | $690.00 (plus any applicable sales tax) |

     B.  **Monthly Payments:** All monthly rental payments shall be made in advance of that month's rental usage, on the twenty-fifth (25th) day of each month. If a payment is made anytime after invoice due date, in addition to the monthly rent a late fee of four percent (4%) shall be imposed.

     6.     **Cancellation:** In the Event Lessee decides not to accept delivery of the Leased Equipment and notifies Lessor in writing, then Lessee shall receive a refund of its security deposit less any expenses incurred by Lessor. In addition Lessor shall be entitled to retain 2 month's rent as liquidated damages.

     7.     **Lessee's Option to Extend:** Lessee shall be entitled to extend the term of this lease pursuant to paragraph 2, for a period of up to 18 months, upon the following terms:

A. Lessee must notify Lessor in writing no later than 60 days prior to the expiration prior to the term of the lease. The monthly rental shall be $46,345.00 per month in the event that Lessee renews for a period of 3 months or less. The monthly rent shall be $45,345.00 per month in the event that Lessee renews for a period of more than 3 months.

8.    **Use/Maintenance:** During the term of this Agreement, Lessee agrees to use the Leased Equipment for the ordinary and usual purpose for which it was designed, comply with and conform to all national, state, municipal laws and regulations, pay for permits, taxes, fees, fuel and utilities related to the operation of the Leased Equipment, keep the Leased Equipment in good condition, repair and working order, and not remove the Leased Equipment from the location delivered to by Lessor, without prior written consent of Lessor. Lessor agrees to reasonably make changes or modifications to only the mobile kitchens, compact kitchen, and dishwashing trailer collectively, not to exceed (four thousand) $4,000.00 in order to meet Atlantic City Board of Health requirements. Lessee agrees to pay for any changes or modifications in excess of (four thousand $4,000.00). Lessor agrees to perform the changes or modifications within a reasonable amount of time upon receipt of written notice from Lessee.

9.    **Return of Leased Equipment:** At the expiration of the term of this Agreement, the Lessee must allow Lessor to pick-up the Leased Equipment at the place of original delivery. Lessee must surrender the Leased Equipment in the same condition as received, clean, ordinary wear and tear alone excepted. In the event the equipment is not returned clean, Lessor, may, at its option, apply all or any portion of the Security/Cleaning Deposit with respect to cleaning and repair of equipment.

10.    **Indemnity:** Lessee agrees to indemnify and hold harmless of, from and against any and all loss, claims, damages, attorneys fees, expenses and liabilities arising out of the use of the Leased Equipment by Lessee or any agents, employees, invitees or any other individual or entity authorized by Lessee to use the Leased Equipment, not caused by the negligence of Lessor.

11.    **Insurance:** Before taking possession of the Leased Equipment, Lessee must procure and pay for (a) insurance against loss, theft or damage to the Leased Equipment, for its full replacement value, and (b) public liability and property damage insurance. Public liability and property damage insurance shall be in the minimum amount of $1,000,000. Lessee shall be responsible for the payment of any deductibles and expenses associated with the insurance policies and coverage. All insurance shall be in a form and amount and with companies satisfactory to Lessor and shall contain an endorsement requiring 10 days notice to Lessor prior to cancellation. Lessee shall deliver the polices or copies of the polices or certificates of insurance to Lessor within 30 days of the delivery of the Equipment.

12.    **Loss or Damage:** Lessee assumes and shall bear the entire risk of loss, theft, fire, destruction, or damage of or any part of Leased Equipment from any cause whatsoever excluding lessor negligence, normal wear and tear excluded, whether or not covered by insurance, and no such loss shall release Lessee of its obligations under this Agreement.

13.    **Force Majeure:** If Lessor's ability to perform its obligations hereunder is limited, or prevented in whole or in part by any reason what so ever not within the control of Lessor including, without limitation, Acts of God, war invasion, acts of foreign enemy, hostilities (whether war be declared or not), strikes, and/or industrial dispute, delay on part of its suppliers, transportation delays, or by any law, regulation, order or other action by any public authority, shall be excused, discharged and released from performance to the extent such performance is so limited, delayed or prevented.

14.    **Prohibition on Transfer of Lessee's Interest:** Lessee shall not permit any lien to attach to the Leased Equipment, nor sublease, rent, assign, grant a security interest or otherwise transfer Lessee's interest in the Leased Equipment or this Agreement without the prior, express written consent of the Lessor.

Page 3 of 5

15. **Title/Personal Property:** The Leased Equipment is, and shall remain at all times, the property of Lessor, and Lessee shall have no right, title or interest in the Leased Equipment except as expressly set forth in this Agreement. All additions or improvements to the Leased Equipment of any kind or nature must have the written approval of Lessor before being made by Lessee and shall become component parts of the Leased Equipment and title shall immediately vest in Lessor and be governed by the terms of this Agreement.

16. **Condition of Leased Equipment:** Lessor does not warrant the fitness, merchantability, design, condition, capacity, suitability or performance of the Leased Equipment. Lessor rents the Leased Equipment to Lessee "as is" with all faults. Lessor represents that the equipment will be delivered in working order and will make any necessary repairs within a reasonable period of time, excluding "Miscellaneous Items", during the term of the lease, provided same are not caused by the negligence of the lessee. In the event that repairs are deemed to be needed during the term of the lease, Lessee must immediately notify Lessor for the consent of any repairs (via phone, fax or in writing) and Lessor shall make all the necessary arrangements for the repair of the Leased Equipment. Lessee shall not make any arrangements for any repairs or alterations to the leased equipment without the prior consent of Lessor. Lessor may elect to make necessary repairs caused by the negligence of the lessee at lessee's expense. Lessor will not pay for the repair of "Miscellaneous Items". "Miscellaneous Items" include: leaking faucets, clogged drain lines, clogged waste pipes, clogged burners, light bulbs, and hvac filters. Lessor represents that the "Miscellaneous Items" will be in proper working order upon delivery. Lessor shall not be liable for any loss or damage. Lessee does hereby expressly waive any and all claims and demands for loss, loss of profits or other alleged consequential damages against Lessor and Lessee does further agree to save and hold harmless Lessor against any and all such claims and demands.

17. **Default:** Lessee shall be in default under this Agreement if Lessee:

   (a)  Fails to make any payments under this Agreement within ten (10) days after the payment becomes due and payable, and written notice has also been given to Lessee.

   (b)  Fails to perform or observe any of the material terms and conditions of this Agreement.

   (c)  Becomes insolvent (however defined), ceases business, makes an assignment for the benefit of creditors or causes or suffers a petition for receiver or in bankruptcy to be filed by or against Lessee.

   (d)  Commits or fails to commit any act that results in jeopardizing the material rights of Lessor or causes Lessor to reasonably deem itself insecure in its rights.

18. **Remedies:** If Lessee is in default under this Agreement, Lessor shall have the right to exercise the following remedies provided however, that lessee shall be given ten (10) days notice by certified mail return receipt requested to cure the default:

   (a)  Elect that the rental payments due be accelerated and the entire amount of rent become immediately due.

   (b)  Terminate this Agreement.

   (c)  Go on Lessee's property and retake the Leased Equipment without notice or legal process. Lessee waives all claims for damages and losses caused by the retaking by Lessor. Lessee agrees to pay all costs and expenses incurred by Lessor in retaking the Leased Equipment.

19.    **Business Purpose:**  Lessee applies to Lessor for rent of the Leased Equipment for commercial purposes and agrees that this Agreement is not to be construed as a consumer contract.

20.    **Filing:**  Lessee, upon request, agrees to execute any instrument necessary to the filing and recording of this agreement.

21.    **Entire Agreement:**  This Agreement contains the entire agreement between the parties relating to the Lessee's rental of the Leased Equipment.  Any changes to the terms of this Agreement shall be in writing and signed by the Lessee and Lessor.

22.    **Arbitration:**  In the event that any dispute between the parties to this Agreement cannot be settled, the matter shall be submitted to binding arbitration. The arbitration shall be conducted in accordance with the rules of the American Arbitration Association, with the prevailing party to be awarded all costs of arbitration and reasonable attorneys fees.  The arbitration shall be held in Suffolk County, New York. Any judgment upon an award may be entered in the State(s) and Count(ies) where the lessor and lessee do business.

23.    **Jurisdiction/Venue:** This Agreement shall be construed in accordance with New York law.

24.    **Notices:**  Notices under this Lease shall be in writing and shall be sent to each party at its address or fax number set forth above or, in the event of a change in any address or fax number, then to such other address or fax number as to which notice of the change is given. Notices to Lessor shall be sent to the attention of Keith Futerman or to such other person as to whom notice is given. Notices to Lessee shall be sent to the attention of Michael Register or to such other person as to whom notice is given. Notice shall be deemed given on receipt.

25.    **Miscellaneous:**   Any failure of Lessor to require strict performance of the terms of this Agreement or any waiver by Lessor of any provision of this Agreement shall not be construed as a consent or waiver of any other breach of the same or any other provision. If any portion of this Agreement is deemed invalid, it shall not affect the rest of this Agreement.  Lessee certifies that all credit information given to Lessor is true and correct and authorizes Lessor to investigate the credit worthiness of Lessee.

26.    **Binding Effect:**  This Agreement shall be binding upon Lessor only after an officer or authorized representative of Lessor signs it.  A facsimile signature shall be as binding as an original signature.

In witness whereof, each party has caused this Agreement to be executed on the date indicated below:

LESSEE:

Nikki Beach Atlantic City, LLC

By: _Michael Register_

Its: _General Counsel_

Date:_4/18/05_

LESSOR:

Stewart's Mobile Concepts, Ltd.

By: _____

Its: _____

Date:_____

Page 5 of 5

19.    **Business Purpose:** Lessee applies to Lessor for rent of the Leased Equipment for commercial purposes and agrees that this Agreement is not to be construed as a consumer contract.

20.    **Filing:** Lessee, upon request, agrees to execute any instrument necessary to the filing and recording of this agreement.

21.    **Entire Agreement:** This Agreement contains the entire agreement between the parties relating to the Lessee's rental of the Leased Equipment. Any changes to the terms of this Agreement shall be in writing and signed by the Lessee and Lessor.

22.    **Arbitration:** In the event that any dispute between the parties to this Agreement cannot be settled, the matter shall be submitted to binding arbitration. The arbitration shall be conducted in accordance with the rules of the American Arbitration Association, with the prevailing party to be awarded all costs of arbitration and reasonable attorneys fees. The arbitration shall be held in Suffolk County, New York. Any judgment upon an award may be entered in the State(s) and Count(ies) where the lessor and lessee do business.

23.    **Jurisdiction/Venue:** This Agreement shall be construed in accordance with New York law.

24.    **Notices:** Notices under this Lease shall be in writing and shall be sent to each party at its address or fax number set forth above or, in the event of a change in any address or fax number, then to such other address or fax number as to which notice of the change is given. Notices to Lessor shall be sent to the attention of Keith Futerman or to such other person as to whom notice is given. Notices to Lessee shall be sent to the attention of Michael Register or to such other person as to whom notice is given. Notice shall be deemed given on receipt.

25.    **Miscellaneous:** Any failure of Lessor to require strict performance of the terms of this Agreement or any waiver by Lessor of any provision of this Agreement shall not be construed as a consent or waiver of any other breach of the same or any other provision. If any portion of this Agreement is deemed invalid, it shall not affect the rest of this Agreement. Lessee certifies that all credit information given to Lessor is true and correct and authorizes Lessor to investigate the credit worthiness of Lessee.

26.    **Binding Effect:** This Agreement shall be binding upon Lessor only after an officer or authorized representative of Lessor signs it. A facsimile signature shall be as binding as an original signature.

In witness whereof, each party has caused this Agreement to be executed on the date indicated below.

LESSEE:
Hollywood Beach Atlantic City, LLC
By: _____    Date: 4/18/05
Its: General Counsel

LESSOR:
Stewart's Mobile Concepts, Ltd.
By: _____    Date: 4/18/05
Its: Director of Sales

# EXHIBIT G

# Fax Cover Sheet

## Stewart's Mobile Concepts, Ltd.
645 East Jericho Turnpike
Huntington Station, NY  11746
Phone (631) 351-6030 Fax (631) 351-1587
Web: www.stewartsmoblie.com

To: _Michael Register_

From: _Keith Futerman_

Fax #: _305 - 534 - 7253_

# of Pages _3_ including this page.

Special Notes:

_2nd Lease Invoice attached_



PLAINTIFF'S
EXHIBIT

G

ALL-STATE LEGAL®

**Stewart's Mobile Concepts, Ltd.**
843 East Jericho Turnpike
Huntington Station, NY 11746
P (631) 351-6030
F (631) 351-1587

Invoice to:
Nikki Beach Atlantic City, LLC
1 Ocean Drive
Miami Beach, FL 33139

Contact: Danielle Houser
Telephone #: (305) 538-1111
Fax #: (305) 534-8937

| | | |
|---|---|---|
| **Lease Invoice** | | |
| Invoice #: | 702-05 |
| Date: | 5/12/05 |
| Job #: | 702-05 |
| Purchase Order #: | |

Deliver to:  Resorts International
Hotel & Casino
1133 Boardwalk
Atlantic City, NJ 08401

Delivery Date:  approx. May 1, 2005
Pick-up Date:  Sept 30, 2005
Deliver Via:  Transporter

Terms: Payment Due 5/25/05

| ITEM # | DESCRIPTION | Amount |
|---|---|---|
| 1. | Mobile Kitchen 48' x 8' (K-283 Model) | |
| 2. | Mobile Kitchen 48' x 8' (Kentucky Model) | |
| 3. | Dishwashing Trailer 40' x 8' | |
| | Ramp and Staircase systems for (2) kitchen trailers (Not ADA Compliant) | |
| | - 2nd month lease payment Dates: 6/1/05 – 6/30/05 | $22,700.00 |
| 4. | 8' x 20' Combination Walk-in Cooler/Freezer | |
| 5. | 8' x 20' Walk-in Cooler | |
| | - 2nd month's lease payment Dates: 5/21/05 – 6/20/05 | $3,000.00 |
| 6. | 20' x 24' Compact Kitchen | |
| | - 2nd month lease payment Dates: 6/1/05 – 6/30/05 | $19,000.00 |
| 7. | 55' x 10' Office/Greenroom Trailer (32 x 10 box size) | |
| | - 2nd month's lease payment Dates: 5/21/05 – 6/20/05 | $600.00 |
| | (2) OSHA Approved Aluminum Steps | $90.00 |
| | Ins. Liability waiver (standard) | $15.00 |
| | Ins. Property waiver (9 & 10 wide) | $40.00 |

| | |
|---|---|
| Sub Total | $45,445.00 |
| 6% (Atlantic City, NJ) Tax | $2,726.70 |
| **Balance Due** | **$48,171.70** |

Duration of Usage: 5 Month minimum lease.

*Client responsible for all permits, licenses and fees.*

Payment not received by the 30th day after invoice date will accrue interest of 1.5% per month.

Page 1 of 2

# EXHIBIT H

PLAINTIFF'S
EXHIBIT

H



# State of New Jersey

## CASINO CONTROL COMMISSION

### NIKKI BEACH ATLANTIC CITY, LLC
d/b/a Nikki Beach

### ID NO. 3333-01-052-001

on this 23rd day of May 2005, having established the qualifications set forth in the Casino Control Act, N.J.S.A. 5:12-1 et seq. and the regulations of this Commission, N.J.A.C. 19:40-1 et seq. is hereby issued a

## CASINO HOTEL ALCOHOLIC BEVERAGE LICENSE

for its approved location or Beach Lots 33 and 34 in front of Resorts Atlantic City and its alcoholic beverage storage location within Resorts Atlantic City authorizing the serving, sale, dispensing, consumption and/or storage of alcoholic beverages within the location(s) and for the specific activities set forth on the attached page, pursuant to N.J.S.A. 5:12-103(g) and N.J.A.C. 19:50-1 et seq.

_CHRISTOPHER D. STORCELLA, DIRECTOR_
_DIVISION OF LICENSING_

This license expires on May 31, 2006

N° 812    CHABC

## NIKKI BEACH ATLANTIC CITY, LLC
### d/b/a Nikki Beach

### CASINO HOTEL ALCOHOLIC BEVERAGE LICENSE
May 23, 2005 TO May 31, 2009

*Areas Authorized to Serve, Sell, Dispense, Consume and/or Store*
*Alcoholic Beverages Pursuant to N.J.S.A. 5:12-103(g)*

Beach Lots 33 and 34

NIKKI BEACH CLUB                                        II

TLBO ROOM                                              II

CONCERT VENUE                                          II

Resorts Atlantic City
STORAGE AREA                                           V


AUTHORIZED TO SERVE, SELL AND STORE ALCOHOLIC
BEVERAGES FOR ON-PREMISES CONSUMPTION.

# EXHIBIT I

02/25/2005   CP-31   26876              2223
31/32         031288              08401     IRS USE ONLY

17154-659-15748-5    A-61-743
SI

Department of the Treasury
Internal Revenue Service
CINCINNATI, OH 45999-0038

For assistance, call:
1-800-829-0115

**Notice Number:** CP210
**Date:** October 10, 2005

016743.204628.0027.001 1 AT 0.292 702

**Taxpayer Identification Number:**
20-2529399
**Tax Form:** 941
**Tax Period:** June 30, 2005

NIKKI BEACH ATLANTIC CITY LLC
% PENROD MANAGEMENT GROUP INC
17 GORDONS ALY
ATLANTIC CITY   NJ   08401-7406172

| Amount of Refund |
|---|
| $393.61 |

38135-200-32665-5

Statement of Adjustment to Your Account

Balance Due on Account Before Adjustment                    $.00
                          Adjustment Computation

Tax - Decrease                                    $391.80

Interest Allowed                                  $1.81
   Net Adjustment Credit                                    $393.61

   Overpayment                                             **$393.61**

Interest allowed must be reported as income on your next income tax return.

**Status of Your Account - Refund**

We'll refund your overpayment (plus interest when applicable), if you owe no other taxes or have no other debts the law requires us to collect.

**Status of Your Account (Exam)**

This notice isn't the result of an examination of your return.  We notify a taxpayer when we select his/her return for examination.

For tax forms, instructions and information visit **www.irs.gov** . (Access to this site will not provide you with your specific taxpayer account information.)



**United States Treasury**     A 389,284,059

Check No.

10 11 05  93     AUSTIN, TEXAS          2307 15158900
2307 15158900 20091700 I01 2NIKK CNCNATIF-941 REF

Pay to
the order of
NIKKI BEACH ATLANTIC CITY LLC        06/05
% PENROD MANAGEMENT GROUP INC        00
17 GORDONS ALY                       $****393*61
ATLANTIC CITY NJ  08401-7406

VOID AFTER ONE YEAR
001





1.81  INTEREST

⑆23078⑆   ⑆000000518⑆ ⑈151589009⑈ 051005

# EXHIBIT J



**STATE OF NEW JERSEY
DEPARTMENT OF COMMUNITY AFFAIRS
DIVISION OF FIRE SAFETY**



PLAINTIFF'S
EXHIBIT
J

### LIFE HAZARD USE CERTIFICATE OF REGISTRATION

ISSUED:    04/25/06

OWNER NO:    F-202529399

REGISTRATION NO:    0102-41554-034-01

NIKKI BEACH ATLANTIC CITY LLC
137 S CHALFONTE
ATLANTIC CITY NJ 08401

RENDEZVOUS TOWER HOTEL ROOMS
1133 BOARDWALK
ATLANTIC CITY NJ

BUILDING HEIGHT:                          NUMBER OF STORIES:

USE TYPE CODE:    RH02    DESCRIPTION:    HOTELS, MOTELS AND RETREAT LODGING
FACILITIES WHICH EXCEED FIVE STOR-
IES, AND WHICH HAVE 100 ROOMS OR
MORE, WITH ANY INTERIOR EXIT-WAYS.

LHA   0102001

THE LAW REQUIRES THAT THIS CERTIFICATE OF REGISTRATION BE POSTED IN A CONSPICUOUS LOCATION IN THE REGISTERED PREMISES BUT ONLY UPON SUBSEQUENT RECEIPT OF A CERTIFICATE OF INSPECTION.

THIS CERTIFICATE IS NOT TRANSFERRABLE. IN THE CASE OF ANY TRANSFER OF TITLE, IT SHALL BE THE DUTY OF THE NEW OWNER(S) TO FILE WITH THE COMMISSIONER WITHIN THIRTY DAYS OF SUCH TRANSFER AN APPLICATION FOR A NEW CERTIFICATE OF REGISTRATION. IN THE CASE OF ANY CHANGE IN INFORMATION PROVIDED ON THE REGISTRATION APPLICATION FORM, IT SHALL BE THE DUTY OF THE OWNER TO NOTIFY THE DEPARTMENT OF COMMUNITY AFFAIRS WITHIN THIRTY DAYS OF SUCH CHANGE.

FAILURE TO COMPLY WITH THESE REQUIREMENTS CONSTITUTES A VIOLATION OF P.L. 1983, c.383 OF THE LAWS OF NEW JERSEY AND SUBJECTS THE PARTY SO VIOLATING TO THE PENALTIES THEREIN.

COMMISSIONER OF COMMUNITY AFFAIRS
SUSAN BASS LEVIN