McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
88 Pine Street
24th Floor
New York, New York 10005
Telephone: (212) 483-9490
Facsimile: (212) 483-9129
Attorneys for Defendant-Respondent,
Stewart's Mobile Concepts, Ltd.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PENROD MANAGEMENT GROUP, INC., :<br><br>   Plaintiff-Petitioner, :<br><br>v. :<br><br>STEWART'S MOBILE CONCEPTS, LTD., :<br><br>   Defendant-Respondent. : | Civil Action No. 07-10649<br><br><br><br>**CERTIFICATION OF COUNSEL** |

I, RYAN P. MULVANEY, hereby certify as follows:

1. I am an attorney at law of the State of New Jersey, am admitted pro hac vice in this Court for purposes of this matter, and am associated with the Newark and Morristown, New Jersey offices of the law firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP. I am one of the attorneys responsible for handling this matter on behalf of Defendant-Respondent, Stewart's Mobile Concepts, Ltd. ("SMC"). As such, I have personal knowledge of the facts set forth herein.

2. I submit this certification to provide two unpublished decisions that are cited in SMC's trial brief.

3. Attached hereto as Exhibit "A" is a true and accurate copy of Network

Enterprises, Inc. v. APBA Offshore Productions, Inc., 2002 WL 31050846 (S.D.N.Y. Sept. 12, 2002).

    4.      Attached hereto as Exhibit "B" is a true and accurate copy of Sahu v. Union Carbide Corp., 2006 WL 3377577 (S.D.N.Y. Nov. 20, 2006).

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

By: _____
    Ryan P. Mulvaney

Dated: June 3, 2008

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                                                       Page 2
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.))**

⊳Network Enterprises, Inc. v. APBA Offshore
Productions, Inc.
S.D.N.Y.,2002.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
NETWORK ENTERPRISES, INC, Plaintiff,
v.
APBA OFFSHORE PRODUCTIONS, INC.
Defendant.
**No. 01 Civ. 11765(CSH).**

Sept. 12, 2002.

**Background:** Cable television network sued
corporation promoting power boat races, seeking
damages for repudiation of obligation to pay for
television programs. After discovering that
corporation lacked assets, network sought leave to
amend complaint to cover owner and limited liability
company to which assets of corporation were
allegedly transferred.

**Holdings:** The District Court, Haight, Senior Judge,
held that:
(1) network stated claim that owner was alter ego of
corporation;
(2) claim was not required to be pleaded with degree
of particularity mandated for fraud claims;
(3) fraudulent conveyance claim was pleaded with
sufficient particularity;
(4) fraudulent conveyance claim was not mere
impermissible restatement of contract claim; and
(5) interference with contractual relations and
fraudulent conveyance claims were not stated against
alleged transferee company.

Motion granted in part.

West Headnotes

[1] Corporations 101 🔑1.7(1)

101 Corporations
    101I Incorporation and Organization
        101k1.7 Pleading and Procedure in
Determining Corporate Entity
            101k1.7(1) k. In General. Most Cited Cases

Under New York law, cable television network stated
claim that chief executive officer of corporation
promoting power boat races was corporation's alter
ego, allowing network to seek recovery of $400,000 as
damages for corporation's breach of contract calling
for televising of races; officer also controlled another
company engaged in same business, wrote letter
repudiating contract on other company's letterhead
and otherwise failed to observe separateness of
companies, and caused corporation to become
undercapitalized.

[2] Federal Civil Procedure 170A 🔑636

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and
Particularity
                170Ak636 k. Fraud, Mistake and
Condition of Mind. Most Cited Cases
Claim that liability of officer, under New York law,
for contract of his corporation, must be pleaded with
degree of particularity required by federal procedure
rule, did not apply to claim of alter ego liability, when
fraud was not involved. Fed.Rules Civ.Proc.Rule 9(b),
28 U.S.C.A.

[3] Federal Civil Procedure 170A 🔑636

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and
Particularity
                170Ak636 k. Fraud, Mistake and
Condition of Mind. Most Cited Cases
Cable television network pleaded claim of fraudulent
conveyance, under New York law, with degree of
particularity mandated by federal procedure rule, by
averring that corporation had sufficient assets to pay
$350,000 for airing of television programs and had no
assets year and one half later, and that owner of
company used sham corporate form and disregarded
separateness of companies he controlled; more precise
pleading was neither possible nor required, as details
would be exclusively within knowledge of owner.
Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.))

[4] Corporations 101 🔑547(4)

101 Corporations
    101XII Insolvency and Receivers
        101k547 Remedies of Creditors in General
            101k547(4) k. As to Fraudulent or
Preferential Transfers. Most Cited Cases
Cable television network stated claim under New
York law that owner fraudulently transferred money
out of corporation to avoid payment of charges for
airing of television program, despite contention that
fraud claim was simply impermissible restatement of
breach of contract claim; allegedly fraudulent
movement of funds was issue apart from any
involving contract.

[5] Limited Liability Companies 241E 🔑31

241E Limited Liability Companies
    241Ek31 k. Rights of Creditors. Most Cited Cases
    (Formerly 101k547(4))

Torts 379 🔑242

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)2 Particular Cases
                379k242 k. Contracts in General. Most
Cited Cases
    (Formerly 379k12)
Cable television network failed to state claim of
interference with contractual relations or fraudulent
conveyance, against limited liability company,
through allegation that owner of company transferred
to it funds from corporation he owned, to avoid paying
damages arising from corporation's repudiation of
contractual promise to pay for television program;
more was required for liability than company's mere
status as passive transferee.

MEMORANDUM OPINION AND ORDER

HAIGHT, Senior J.
*1 In this diversity action, plaintiff Network
Enterprises, Inc. ("Network") alleges that defendant
APBA Offshore Productions ("Offshore") breached a
contract (the "Time Buy Agreement") which required
Productions to purchase blocks of television

programming time from the TNN network to air
programs involving a series of power boat races that
Offshore conducted and/or promoted.

Having been recently informed by Offshore's counsel
that Offshore has no assets, plaintiff moves pursuant
to Rules 15(a) and 21 of the Federal Rules of Civil
Procedure for leave to file an amended complaint
adding two new defendants, APBA-Offshore Power
Boat Racing LLC ("LLC") and Michael D. Allweiss,
Esq., the sole officer/director of both LLC and
Offshore, and to assert an alter ego claim against
Allweiss, a tortious interference with contract claim
against LLC, and a fraudulent conveyance claim
against both LLC and Allweiss. This opinion resolves
that motion.

*FACTS*

According to the allegations in the complaint,
Network and Offshore entered into the Time Buy
Agreement on August 21, 2000. The agreement was
signed on behalf of Offshore by Michael Allweiss, its
Chairman and President. Pursuant to the agreement,
Offshore was to purchase ten half-hour spots on TNN,
which is operated by plaintiff, between September 30
and December 2, 2000 for a total fee of $350,000.
TNN aired these 10 episodes and received the contract
price from Offshore. The Time Buy Agreement
contained a renewal option which allowed Offshore to
purchase up to 13 additional episodes of programming
from October 1, 2001 through December 31, 2001 at a
fee of $40,000 per episode. According to the
complaint, Offshore exercised this renewal option in a
letter from Allweiss dated March 1, 2001 and then
reneged on the deal through another letter from
Allweiss dated September 21, 2001. The proposed
Amended Complaint avers that the letter which
constituted the breach was written on LLC, not
Offshore, letterhead. The Time Buy Agreement
contains a forum selection provision requiring all
claims with respect to it to be brought in this
jurisdiction. Plaintiff filed the instant complaint on
December 21, 2001 seeking to recover more than
$400,000 in damages from Offshore's alleged breach
of contract and breach of its implied duty of good faith
and fair dealing.

*DISCUSSION*

Fed.R.Civ.P. 21 provides that parties may be added

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.))

"by order of the court on motion of any party ... on such terms as are just."In deciding whether joinder is appropriate under Rule 21, courts are guided by "the same standard of liberality afforded to motions to amend pleadings under Rule 15."*Momentum Luggage & Leisure Bags v. Jansport, Inc.,* No. 00 Civ. 7909(DLC), 2001 WL 58000, *1 (S.D.N.Y. Jan.23, 2001)(internal quotations omitted).Rule 15(a) of the Federal Rules of Civil Procedure instructs that leave to amend "shall be freely given when justice so requires."But a district court's permission to amend a pleading is not automatic. "Although leave to amend shall be freely granted when justice requires, valid reasons for denying leave to amend include undue delay, bad faith, or futility of the amendment."*Mackensworth v. S.S. American Merchant,* 28 F.3d 246, 251 (2d Cir.1994) (citation omitted). Courts will not allow an amendment "when the proposed amendment is legally insufficient and it would be futile to grant leave to amend." 3 Moore's Federal Practice (3d ed.1997) § 15.15[3] at 15-48.

*2 In the case at bar, Offshore opposes the proposed amendment on futility grounds. An amendment is futile if it would not withstand a motion to dismiss.*Daugherty v. Town of North Hempstead Board of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002). Offshore maintains that plaintiff will not be able to establish personal jurisdiction over Allweiss, a Florida domiciliary, and LLC, a Florida corporation, in this Court. Offshore argues that the forum selection clause in the Time Buy Agreement does not confer jurisdiction over them because they were not parties to that contract, and that neither has transacted business in New York sufficient to impose long-arm jurisdiction. Moreover, Offshore contends that the alter ego claim is meritless and the fraudulent conveyance and tortious interference with contract claims are not separately viable because they merely restate the breach of contract claim.

A. *Alter Ego Claim Against Allweiss*

[1] Regardless of whether Allweiss has engaged in repeated contacts with New York sufficient to confer long-arm jurisdiction, as plaintiff argues, Allweiss is unquestionably subject to personal jurisdiction in this Court if he can be considered Offshore's "alter ego." When allegations are sufficient to disregard a corporation's identity and hold its control person liable for its actions, the control person is amenable to

personal jurisdiction by imputation of the corporation's contacts with the forum. This precept is illustrated by *Eagle Transport Ltd., Inc. v. O'Connor,* 449 F.Supp. 58, 59-60 (S.D.N.Y.1978). The *Eagle* court denied the defendants' motion to dismiss based on lack of personal jurisdiction. In the court's view, the complaint's allegations laid a sufficient basis for a finding that the corporation which signed the charterparty at issue, negotiated in New York, was the defendant's alter ego. In that circumstance, the corporation's "contractual activities in New York" were "attributable to the defendants," because:

"the consequence of applying the alter ego doctrine is that the corporation and those who have controlled it without regard to its separate entity are treated as but one entity, and at least in the area of contracts, the acts of one are the acts of all."

*Id.* at 60 (quoting *Fisser v. International Bank,* 282 F.2d 231, 282 (2d Cir.1960)). The court concluded that, "[h]aving transacted business in New York through their alleged alter ego, the defendants are amenable to suit here on claims arising from the transaction."*Id. See also Toshiba International Corp. v. Fritz,* 993 F.Supp. 571, 574 (S.D.Tex.1998)(resolution as to whether defendant was the alter ego of a company over whom jurisdiction was proper would determine whether the court also had jurisdiction over the defendant; "If alter ego status is found, EICS's contacts are also Fritz's contacts, and as there is no dispute regarding personal jurisdiction of EICS, there can be no dispute that the Court also has personal jurisdiction over Fritz.").

*3 In this case the existence of a viable alter ego claim necessarily determines a jurisdictional basis for suit over Allweiss. If Allweiss is the alter ego of Offshore, then all of Offshore's activities are imputed to him and he is bound by the forum selection clause in the Time Buy Agreement and all other aspects of it. Thus, if the alter ego theory survives dismissal, a jurisdictional basis for suit against Allweiss exists.

Because this is a diversity action the Court must apply the choice of law rules of the forum state. *Tri-State Employment Services v. Montbatten Surety Co., Inc.,* 295 F.3d 256, 260 (2d Cir.2002). In New York, the determination of whether to pierce the corporate veil is governed by the law of the company's state of incorporation. *See Fletcher v. Atex, Inc.,* 68 F.3d 1451,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.))

1456 (2d Cir.1995). In this case, because Offshore is a Florida corporation New York would apply Florida law to the alter ego analysis in the event of a conflict. However, as defendant concedes, the laws of New York and Florida governing the analysis are substantially the same. Defendants' Brief at 4. Since the consideration would be the same under either New York or Florida law, there is no true conflict and New York law will accordingly apply.

In order to pierce the corporate veil under New York law, a party must demonstrate that "(1) [the owner] ha[s] exercised such control that the [corporation] has become a mere instrumentality of the [owner], which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff."*Freeman v. Complex Computing Co., Inc.,* 119 F.3d 1044, 1052 (2d Cir.1997)(alterations in original; internal quotation omitted). In addition, New York law provides for piercing the veil "when the corporation as been so dominated by an individual ... and its separate entity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego."*William Wrigley Jr. Company v. Waters,* 890 F.2d 594, 600 (2d Cir.1989) (internal quotation omitted). Factors to be considered in the determination of control or domination sufficient to pierce the veil include: "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence ... (2) inadequate capitalization, ... (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, [and] (7) whether the related corporations deal with the dominated corporation at arms length...."*Passalacqua Builders, Inc. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir.1991). Given the breadth of factors that inform the decision, the Second Circuit has emphasized that the determination of whether to pierce the corporate veil is a " 'fact specific' inquiry." *MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC,* 268 F.3d 58, 63 (2d Cir.2001). The court of appeals has cautioned that applying these factors "to the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that differs with the circumstances of each case."*Passalacqua,* 933 F.3d at 139 (internal quotation omitted).

*4 The proposed Amended Complaint in the case at bar alleges that LLC and Offshore share the same address and telephone number as Allweiss and that Allweiss, who is the Chairman of both companies, "exercises complete domination over both LLC and Offshore, and over Offshore with respect to the transaction at issue."Proposed Amended Complaint at ¶¶ 52-54. It further alleges that Offshore, which in late 2000 had sufficient assets to pay plaintiff $350,000 under the Time Buy Agreement and committed to pay $400,000 under the renewal option, is suddenly bereft of assets. *Id.* at ¶¶ 55, 57.It also avers that Allweiss sent the letter reneging on the renewal option under LLC letterhead.*Id.* at ¶ 56.

These facts, if proved, may very well be sufficient to hold Allweiss liable under an alter ego theory for the wrongs committed by Offshore.[FN1]The allegations show that Allweiss owned LLC and Offshore and shared the same office space with them, and that Allweiss failed to observe the corporate separateness of the two companies by using *LLC* letterhead in a letter regarding *Offshore's* contract. The allegations also indicate that Offshore is undercapitalized and that plaintiff has been harmed by Allweiss's control of Offshore in his refusal to allow Offshore to honor the renewal agreement and in his diminishment of Offshore's assets. Although the factual allegations are not detailed, they are sufficient under Fed.R.Civ.P. 8(a)'s liberal pleading standard (a claim for relief "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief") to show the domination or control necessary to pierce the corporate veil and to afford Offshore and Allweiss notice of the basis for liability. Considering the fact intensive nature of this inquiry, these allegations are sufficient at this pre-discovery stage to withstand dismissal of the alter ego claim.

> FN1. Contrary to plaintiff's argument, Allweiss is not a party to the Time Buy Agreement merely because he signed it. Allweiss signed it *on behalf of* Offshore, not in his individual capacity. Plaintiff cites no authority for the highly dubious proposition that a corporate officer who signs a contract in his corporate capacity can, absent veil-piercing or alter ego liability, be held personally beholden under the contract.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 6
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.))

Other courts in this circuit have taken a generous view of claims based on the corporate veil piercing doctrine and have refused to dismiss claims that were supported with a similar level of detail as plaintiff's here. For example, in *Farley v. Davis*, No. 91 Civ. 5530(PKL), 1992 WL 110753 (S.D.N.Y. May 8, 1992), the plaintiff had alleged that the defendant purchased the subject company in a leveraged buyout and then stripped it of its assets and operating cash flow, that the defendant used the company as a "front or conduit for one or more of his several business enterprises,'" and that had used the company as his "'alter ego.'" *Id.* at *5. Judge Leisure noted that these basic allegations stated a claim for relief against the defendant under an alter ego theory. The court reasoned that Rule 8(a) leaves "development of [the] facts to the discovery phase of the litigation," and concluded that the allegations that the defendant stripped the company's assets and used the corporate form as a conduit for his business enterprises "surely are sufficient to put [the defendant] on notice of the claims against which he must defend." *Id. See also Accordia Northeast, Inc. v. Thesseus Intl. Asset Fund, N.V.*, 205 F.Supp.2d 176, 182 (S.D.N.Y.2002) (allegations that companies who shared principal address, had no assets and no employees or directors other than the alleged alter ego, were represented solely by alleged alter ego who negotiated and executed the agreements at issue and promised the companies would pay premiums, were adequate to justify veil piercing); *Campo v. 1st Nationwide Bank,* 857 F.Supp. 264, 271 (E.D.N.Y.1994) (a sufficient factual basis for alter ego liability stated by allegations that corporation was in common ownership with and shared same management as other defendants, created subsidiaries in order to escape federal regulation, held itself to be only viable corporate entity in dealing with plaintiff, and commingled funds with other defendants).

*5[2] Offshore argues that because an alter ego theory must be pleaded with the particularity required of a fraud allegation under Fed.R.Civ.P. 9(b), the proposed claims against Allweiss should be disallowed for failure to adhere to this more particularized standard. This argument is unfounded. Because the predicate for application of corporate veil piercing is the commission of a fraud *or* wrong, not every claim based on the theory must meet the more exacting standards of Rule 9(b). As one court in this circuit

recently explained:

[T]he heightened pleading standard in Fed.R.Civ.P. 9(b) need not be met in every case in which a claimant seeks to lift the corporate veil under New York law, since "New York courts will disregard the veil ...*either* when there is fraud *or* when the corporation has been used as an alter ego," and under the alter ego theory of liability, a veil-piercing claimant may prevail by "identify[ing] some non-fraudulent 'wrong' attributable to the defendant's complete domination" of the corporation in question. Thus, a claimant must satisfy the heightened pleading standard of Fed.R.Civ.P. 9(b) to the extent that its veil-piercing claim rests on allegations of fraud.

*United Feature Syndicate v. Miller Features Syndicate, Inc.*, No. 01 Civ. 2491(GEL), 2002 WL 389155, *19 (S.D.N.Y. March 11, 2002) (emphasis in original) (quoting *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F.Supp. 117, 121-22 (S.D.N.Y.1996) (citations omitted)).

In addition, the Second Circuit's unpublished opinion in *American Cash Card Corp. v. AT & T Corp.*, 210 F.3d 354, 2000 WL 357670 (2d Cir. April 6, 2000), is instructive. While I am aware that reference to such an opinion is disallowed under circuit rules, the opinion makes an invaluable contribution to this discussion because it is, as far as this Court's research has uncovered, the only Second Circuit decision addressing the intersection between the elements of fraud and New York veil-piercing claims. Because the case provides useful guidance in addressing Offshore's argument, it bears mentioning although I am not bound by the court of appeals' ruling. In *American Cash Card*, the court of appeals rejected the appellants' argument that the district court's veil-piercing was not justified because the defendant/counter-plaintiff did not plead the elements of fraud. The Second Circuit noted that the New York veil-piercing standard "does not require that a party demonstrate the perpetration of a fraud in the technical sense of that term. Instead, that party need only establish that the corporate form 'was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of [the] plaintiff's legal rights." ' 2000 WL 357670, ----4 (quoting *Electronic Switching Indus. v. Frardyne Elecs. Corp.*, 833 F.2d 418, 424 (2d Cir.1987) (alteration in original).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 7
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.))

Given that the elements of fraud need not undergird the veil-piercing claim, it necessarily follows that Rule 9(b) does not come into play where fraud is not a part of it. In the present case, plaintiff alleges that Allweiss used his control of Offshore to both breach the contract and fraudulently convey assets rendering Offshore insolvent. To the extent it is based on the former non-fraudulent wrong, Rule 9(b) has no office to perform in assessing the sufficiency of the alter ego claim. Even to the extent that it is founded upon fraudulent conveyance, Rule 9(b) applies only to the *fraud* component of the claim. Offshore seems to suggest that the domination and control elements of an alter ego claim are also subject to heightened pleading, but there exists no foundation in Rule 9(b) or precedent in the caselaw for such a conclusion. Accordingly, even if the fraudulent conveyance part of plaintiff's alter ego claim did not meet Rule 9(b) standards, a subject I discuss below, the proposed Amended Complaint nonetheless alleges sufficient facts to justify piercing the corporate veil based on the non-fraudulent wrong alleged.

B. *Fraudulent Conveyance*

**\*6**[3] Offshore argues that the proposed fraudulent conveyance claim is defective because it merely restates the breach of contract claim and because it is not pleaded with the specificity required by Rule 9(b). With respect to this claim, the proposed Amended Complaint alleges in relevant part that:

61. On information and belief, Offshore conveyed its assets to LLC or another entity controlled by Allweiss.

62. Offshore's conveyance was made without fair consideration and in bad faith to avoid its obligation to Network.

63. As a result of Offshore's fraudulent conveyance, Network has been damaged in the amount of $400,000 plus interest, attorneys' fees and costs of collection.

A fraudulent conveyance claim in New York requires a plaintiff to show the "status of plaintiff as creditor of transferors; the existence of a 'debt' antecedent to the transfer; [ ] a conveyance; [ ] that the conveyance was made at a time of insolvency on the part of the transferors; [ ] the absence of fair consideration for the

transfer; and intent to defraud...."*Loblaw, Inc. v. Wylie, 50 A.D.2d 4, 375 N.Y.S.2d 706, 709* (App. Div. 4[th] Dep't 1975) (citations omitted). Under Rule 9(b) a plaintiff must state "the circumstances constituting fraud ... with particularity."While "[m]alice, intent, knowledge, and other condition of mind ... may be averred generally,""[t]he plaintiff still must allege facts giving rise to a 'strong inference of fraudulent intent.' ' *United Feature Syndicate, 2002 WL 389155, \*19* (quoting *Shields v. Citytrust Bancorp, 25 F.3d 1124, 1128 (2d Cir.1994)*). Allegations of fraud typically cannot be based upon information and belief, except for "matters peculiarly within the opposing party's knowledge." *Luce v. Edelstein, 802 F.2d 49, 54 n. 1 (2d Cir.1986)* (internal quotation omitted). Even in that circumstance, information and belief pleadings must be accompanied by "a statement of the facts upon which the belief is founded." *Id.* "While a plaintiff need not demonstrate in his complaint that what he believes to be true is in fact true, he must present facts that show that his belief is not without foundation, that it is belief rather than irresponsible speculation." *Cargo Partner AG v. Albatrans Inc., 207 F.Supp.2d 86, 116 (S.D.N.Y.2002)* (internal quotation omitted).

Plaintiff's fraudulent conveyance allegations are wholly based upon information and belief. However, the existence of an intent to defraud and conveyances made between closely held corporations without adequate consideration are undoubtedly matters exclusively within the knowledge of Allweiss, Offshore and/or LLC. Plaintiff's "belief" is based on the facts, interpreted favorably to plaintiff, that in the year 2000 Offshore had sufficient assets to pay plaintiff $350,000 under the Time Buy Agreement but a year and a half later no longer has assets, ¶¶ 55, 57, and that Allweiss, in an effort to avoid Offshore's obligations, used a sham corporate form and disregarded the separateness of corporations he controlled. See ¶ 49. Although plaintiff concededly does not furnish important details such as the amount and precise timing of the alleged transactions, those are the kind of facts which need not be pleaded because the "defendant, as a corporate insider, has 'the particulars of the fraud claims ... peculiarly within [his] knowledge."*Bulkmatic Transport Company, Inc. v. Pappas, No. 99 Civ. 12070(RMB)(JCF), 2001 WL 882039, \* 11 (S.D.N.Y. May 11, 2001)* (alterations and omission in original) (internal quotation omitted). The facts pleaded in the proposed Amended Complaint portray circumstances which give rise to a

Not Reported in F.Supp.2d                                                                                                  Page 8
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.))

permissible inference of fraudulent intent on the part of Allweiss and LLC.

*7[4] Even if, as I conclude, plaintiff's fraudulent conveyance claim passes Rule 9(b) muster, Offshore also contends that the fraudulent conveyance claim is defective because it constitutes an impermissible restatement of the breach of contract claim. In New York, where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie."*McKernin v. Fanny Farmer Candy Shops, Inc., 176 A.D.2d 233, 574 N.Y.S.2d 58, 59 (App. Div.2d Dep't 1991).*"To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 20 (2d Cir.1996) (citations omitted).

It is clear from the proposed Amended Complaint's allegations that the fraud claim is sufficiently distinct from the contract action to allow it to go forward. The fraud alleged is the transfer of Offshore's assets by Allweiss and LLC in order to render Offshore unable to pay the contract damages. The actions constituting the fraud are incontrovertibly extraneous to the contract. Plaintiff's claim not resemble the sort of fraud claim which courts have commonly disallowed, such as where the alleged fraud involved false promises to perform under a contract, *see, e.g., Bridgestone/Firestone, id.,* or consisted of misrepresentations causing the actual breach. *See, e.g., RNB Garments Philippines, Inc. v. Lau,* No. 98 Civ 4561(DLC), 1999 WL 223153, * 5 (S.D.N.Y. April 16, 1999). In such cases the fraud allegations are virtually indistinguishable from the actions consisting of the breach of contract and the fraud claim is therefore nothing more than a prohibited repackaging of the breach of contract claim. In this case, by contrast, the alleged breach of contract was Offshore's failure to fulfill its obligation to purchase additional programming time, whereas the alleged fraud was LLC's and Allweiss's draining Offshore of its assets so that its creditors would have nothing to recover.

Because the fraud is not intertwined with the breach of contract, the fraud claim may be asserted.

C. *Claims Against LLC*

[5] The Proposed Amended Complaint interposes two claims against LLC: tortious interference with Offshore's contract and fraudulent conveyance. These claims would not survive a dismissal motion because the proposed Amended Complaint alleges no facts which establish personal jurisdiction over LLC. Because LLC was not a party to the Time Buy Agreement it may be subject to suit in this jurisdiction under the forum selection clause only if it can be held responsible for Offshore's actions. Unlike with respect to Allweiss, however, the proposed Amended Complaint does not allege that LLC is the alter ego of Offshore. In its brief, plaintiff argues without elaboration that LLC should be held liable as the "successor" to Offshore. But, argument in a brief is not the equivalent of a pleading. The imposition of successor liability, as with corporate veil-piercing, requires the allegation and proof of specific facts, none of which have been alleged in the proposed Amended Complaint. Under both New York and Florida law, an alleged successor corporation is liable for the acts of its predecessor if: "1) [it] expressly or impliedly assumes the obligations of the predecessor, 2) the transaction is a *de facto* merger, 3) the successor corporation is a mere continuation of the predecessor, or 4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor."*Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.,* No. 96-8532, 1999 WL 181412, * 19 (S.D.Fla. Jan.20, 1999) (Florida law) (internal quotation omitted), *aff'd*235 F.3d 1344 (11th Cir.2000).*See also Case v. Paul Troester Maschinenfabrik,* 139 F.Supp.2d 428, 430 (W.D.N.Y.2001) (substantially the same standard under New York law). The proposed Amended Complaint simply alleges that Offshore fraudulently transferred its assets to LLC. But that fact is totally insufficient to demonstrate successor liability. Because there are no allegations in the Amended Complaint to show that LLC became vested in the rights of Offshore or assumed any of Offshore's liabilities, successor liability has not been pleaded.

*8 Without the benefit of successor or alter ego liability which would make the LLC subject to the forum selection clause, the only possibility of establishing personal jurisdiction over LLC is through

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 9
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.))**

the vehicle of New York's long-arm jurisdiction statute. On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), it is the plaintiff's burden to establish the existence of jurisdiction. *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir.2001). To withstand such a motion, plaintiff need only make, through the complaint's allegations and affidavits, a *prima facie* showing of personal jurisdiction. *Id.* In this case, plaintiff argues that long-arm jurisdiction exists because LLC has purposefully availed itself of jurisdiction in this court through Allweiss's repeated contacts with New York as Chairman of LLC in connection with the Time Buy Agreement. These repeated contacts are merely suggested in the plaintiff's reply brief and an attached letter exhibit. They are not alleged in the proposed Amended Complaint. Because the allegations contained in the proposed Amended Complaint do not establish a *prima facie* case for long-arm jurisdiction or otherwise suggest a basis for personal jurisdiction over LLC, the claims against LLC in the proposed Amended Complaint cannot be allowed.[FN2]

> FN2. Because I have determined that the proposed Amended Complaint does not establish personal jurisdiction over LLC, I need not address Offshore's argument that the tortious interference claim against LLC would be dismissed because it is not sufficiently distinct from the breach of contract claim.

*CONCLUSION*

Plaintiff's motion to file an Amended Complaint is granted in part. For the reasons discussed above, plaintiff may file an Amended Complaint asserting an alter ego claim and a fraudulent conveyance claim in the form submitted against Michael D. Allweiss, Esq. Plaintiff is directed to file and serve an amended complaint consistent with this Opinion on or before September 30, 2002. The defendants named therein are directed to respond to the amended complaint within the time specified by the Federal Rules of Civil Procedure.

Given the insufficiencies of the allegations contained in the proposed amended complaint, I deny plaintiff leave to assert fraudulent conveyance or tortious interference claims against APBAOffshore Power Boat Racing LLC. Plaintiff may, if so advised, move

for leave further to amend its complaint to assert such claims against LLC if it can allege, consistent with its obligations under Fed.R.Civ.P. 11, facts that make a *prima facie* showing of personal jurisdiction over LLC, through corporate veil-piercing, corporate successorship or long-arm jurisdiction. Any such motion must be filed and served on or before September 30, 2002. Papers in opposition must be filed on or before October 14, 2002, and papers in reply on or before October 21, 2002.

It is SO ORDERED.

S.D.N.Y.,2002.
Network Enterprises, Inc. v. APBA Offshore Productions, Inc.
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Slip Copy                                                                                                    Page 2
Slip Copy, 2006 WL 3377577 (S.D.N.Y.)
**(Cite as: 2006 WL 3377577 (S.D.N.Y.))**

**H**Sahu v. Union Carbide Corp.
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Janki Bai SAHU, et al., Plaintiff,
v.
UNION CARBIDE CORP. and Warren Anderson,
Defendants.
**No. 04 Civ. 8825(JFK).**

Nov. 20, 2006.

Richard S. Lewis, Washington, DC, H. Rajan Sharma,
Edison, NJ, Curtis V. Trinko, New York, NY, Richard
Herz, EarthRights International, Washington, DC, for
Plaintiffs Janki Bai Sahu, et al.
William A. Krohley, William C. Heck, Kelley Drye &
Warren, LLP, New York, NY, for Defendants Union
Carbide Corp. and Warren Anderson.

*OPINION & ORDER*

KEENAN, J.
**\*1** The defendants' motion for summary judgment
dismissing plaintiffs' remaining cause of action [FN1] for
corporate veil piercing is granted.

> FN1.“[P]iercing the corporate veil ... is not,
> in and of itself, an independent cause of
> action but a procedural device through which
> a plaintiff may assert facts and circumstances
> to persuade the court to impose” a
> subsidiary's obligation on the parent.
> *Securities Investor Protection Corp. v.
> Stratton Oakmont, Inc.,* 234 B.R. 293, 321
> (Bankr.S.D.N.Y.1999). For the sake of
> clarity, the Court may refer to veil piercing as
> a cause of action or a claim throughout this
> decision.

*I. Factual Background*

Plaintiffs seek to pierce the corporate veil of defendant
Union Carbide Corporation's (“UCC”) former
subsidiary Union Carbide India Limited (“UCIL”), to
hold UCC liable for injuries allegedly caused by
pollution from UCIL's pesticide formulation plant in

Bhopal, India.

The UCIL plant began its operations in the mid-1960s,
on land leased from the Indian state of Madhya
Pradesh. (Compl.¶ 70.) UCIL was incorporated under
Indian law in 1934. 50.9% of UCIL's stock was owned
by its parent corporation UCC. (Compl. ¶¶ 62, 63 .)

The UCIL plant was back-integrated in 1979-1980 to
manufacture pesticides. (Compl.¶ 70.) During the
manufacture of pesticides, hazardous wastes were
generated and dumped within the plant's premises.
After a gas leak in 1984, the plant was closed by the
Indian government and never resumed normal
operations. (Compl.94.) Thereafter, all activity at the
plant site was monitored closely by the Indian Central
Bureau of Investigation, the Indian courts, and the
Madhya Pradesh Pollution Control Board.

In 1994, Union Carbide sold all of its remaining UCIL
shares (Compl.¶ 117), and built a hospital in Bhopal
with proceeds from the sale, *Bano v. Union Carbide
Corp.,* No 99 Civ. 11329, 2003 WL 1344884
(S.D.N.Y. Mar. 18, 2003). UCIL has since changed its
name to Eveready Industries India Limited (“EIIL”).
(Compl.¶ 117.) In 1998, EIIL terminated its lease of
the Bhopal plant site upon consent from the state
government of Madhya Pradesh. (Compl. ¶ 124 .)

*II. Procedural History*

A. *Litigation for Pollution Arising out of the Gas Leak*

The procedural history of this case stretches back over
twenty years to a set of related cases filed in the wake
of the 1984 gas leak at the UCIL plant in Bhopal. The
cases sought recovery for injuries sustained as a result
of pollution stemming directly from the gas leak. The
Multi-District Litigation Panel consolidated the
actions before this Court.

The consolidated action was dismissed on June 10,
1986 based on *forumnonconveniens.*See*In re Union
Carbide Corp .Gas Plant Disaster at Bhopal, India in
December, 1984,* 634 F.Supp. 842 (S.D.N.Y.1986),
*aff'dasmodified,*809 F.2d 195 (2d Cir.1987),
*cert.denied,*484 U.S. 871 (1987). The Court held,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                 Page 3
Slip Copy, 2006 WL 3377577 (S.D.N.Y.)
(Cite as: 2006 WL 3377577 (S.D.N.Y.))

relying on the United States Supreme Court's decisions in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), that the Indian legal system would be better able to mete out justice and fix liability for the tragic event based on: the presence of claimants, evidence, and witnesses in India; the Indian government's interest in the outcome of the litigation; and the administrative burden such litigation would tax on an American tribunal. *Id.*

*2 The case proceeded in the Indian judicial system and was settled in 1989. Under the settlement order, UCC agreed to pay $470 million to a compensation fund. *Bano v. Union Carbide Corp.*, No. 99 Civ. 11329, 2000 WL 1225789, at *2 (S.D.N.Y. Aug. 28, 2000) (summarizing the settlement terms).

B. *Litigation for Pollution Arising out of Normal Plant Operations*

1. *The Bano Action*

After settlement of the action for injuries arising specifically out of the gas disaster, residents of Bhopal and several organizations representing the residents of Bhopal filed a class action complaint before this Court asserting claims for personal injury and property damage caused by pollution from the normal operations of the UCIL plant, as distinct from pollution caused by the 1984 gas leak. This Court dismissed the *Bano* plaintiffs' personal injury claims as untimely because they were discovered more than three years before the action was commenced. *Bano v. Union Carbide Corp.*, No 99 Civ. 11329, 2003 WL 1344884 (S.D.N.Y. Mar. 18, 2003). The entire case was eventually dismissed on summary judgment. *Bano v. Union Carbide Corp.*, No. 99 Civ. 11329, 2005 WL 2464589 (S.D.N.Y. Oct. 05, 2005), *aff'd*,2006 WL 2336428 (2d Cir. Aug. 8, 2006).

2. *The Instant Action*

Plaintiffs were originally members of a putative class in the *Bano* action. The present class action suit, filed on November 8, 2004, is comprised of plaintiffs whose personal injury claims are not time-barred as they were discovered within the three-year statute of limitations period. (Compl.¶¶ 4-47.)

As in *Bano,* pollution arising out of the normal operations of the UCIL plant is the subject of the litigation. The plaintiffs claim that contamination of the soil and drinking water supply of sixteen communities in the vicinity of the former UCIL plant caused injuries to the communities' residents. (Compl.¶ 1.) The plaintiffs assert three theories of liability against UCC: (1) that UCC "was a direct participant and joint tortfeasor in the activities that resulted in the environmental pollution"; (2) that UCC "worked in concert with UCIL to cause, exacerbate and/or conceal the pollution problem in Bhopal"; and (3) that UCIL acted as UCC's alter ego, justifying the piercing of UCIL's corporate veil .[FN2](Compl.¶ 60.) Based on these theories, plaintiffs seek relief for negligence, public nuisance, private nuisance, strict liability, medical monitoring, battery, and injunctive relief.

> FN2. No evidence is offered by the plaintiffs that in any way implicates defendant Anderson.

On August 5, 2005, defendants moved for summary judgment, pursuant to Federal Rule of Civil Procedure ("FRCP") 56 and/or dismissal pursuant to FRCP 12(b)(6), arguing that all three of plaintiffs' theories fail as a matter of law. Plaintiffs objected and applied for a stay on the veil piercing issue in order to conduct additional discovery pursuant to FRCP 56(f).

On December 1, 2005, the Court dismissed, as a matter of law, all of plaintiffs' claims with regard to the first and second theories of liability; the direct participant and concerted action theories, respectively. *Sahu v. Union Carbide Corp.*, 418 F.Supp.2d 407 (S .D.N.Y.2005). The Court granted a stay allowing plaintiffs to conduct sixty days of additional discovery related exclusively to veil piercing, the third and remaining theory of liability.[FN3] After the Court granted two additional extensions, discovery concluded on April 30, 2006. With the benefit of this additional discovery, plaintiffs filed renewed objections to defendants' motion for summary judgment on the veil piercing issue.

> FN3. A discovery dispute followed, in which plaintiffs sought to broaden the scope of permissible discovery. The Court denied the request.*Sahu v. Union Carbide Corp.*, No. 04

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 4
Slip Copy, 2006 WL 3377577 (S.D.N.Y.)
**(Cite as: 2006 WL 3377577 (S.D.N.Y.))**

Civ. 8825 (S.D.N.Y. Jan. 9, 2005).

Another dispute followed, in which plaintiffs sought the issuance of a letter rogatory. Although India is not a party to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, making the likelihood of compliance with the request an unknown, the Court granted plaintiffs' request, and a letter rogatory was issued in January 2006.*Sahu,* No. 04 Civ. 8825 (S.D .N.Y. Jan. 11, 2006).

**\*3** The Court now considers whether summary judgment for the defendants dismissing plaintiffs' remaining theory of liability is appropriate.

III. *Discussion*

A. *Summary Judgment Standard*

A motion for summary judgment may be granted under Rule 56 of the Federal Rules of Civil Procedure if the entire record demonstrates that "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).* When viewing the evidence, the Court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor."*Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir.1990); seealsoMcLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir.1997); Anderson, 477 U.S. at 255.*

To survive the motion, the non-movant must present evidence of a genuine issue of fact that requires a trial. *Anderson, 477 U.S. at 257.* "The non-moving party may not rely on conclusory allegations or unsubstantiated speculation."*Scotto v. Alemas, 143 F.3d 105, 114 (2d Cir.1998).*

B. *New York Veil-Piercing Standard*

In an action based on the Court's diversity jurisdiction, the choice-of-law rules of the forum state apply. *Krauss v. Manhattan Life Ins. Co., 643 F.2d 98, 100 (2d Cir.1991).* Under New York choice-of-law rules, because no conflict has been demonstrated between the veil-piercing laws of India and New York, the

Court will apply New York law.[FN4]*SeeEmployers Insurance of Wassau v. The Duplan Group, 899 F.Supp. 1112, 1118-19 (S.D.N.Y.1995).*

FN4. It should also be noted that plaintiffs request the application of New York law, and defendants do not object. Both parties cite New York law throughout their memoranda of law.

Under New York law, veil piercing is a rare exception to the well-settled American principle of limited liability for individual and corporate shareholders. *SeeDavid v. Glemby Co., 717 F.Supp. 162, 166 (S.D.N.Y.1986); Billy v. Consolidated Machine Tool Corp., 51 N.Y.2d 152, 163 (N.Y.1980).*"Indeed, the avoidance of personal liability for obligations incurred by a business enterprise is one of the fundamental purposes of doing business in the corporate form."*Billy, 51 N.Y.2d at 163;accordWilliam Wrigley Jr. Co. v. Waters, 890 F.2d 594, 600 (2d Cir.1989).* Courts start with the presumption of corporate regularity and will only disregard the corporate form when the party seeking to veil pierce makes a substantial showing that the subject corporation is really a dummy or decoy corporation, *seePardo v. Wilson Line of Washington, Inc., 414 F.2d 1145 (D.C.Cir.1969)* (applying New York law), or where the subject corporation's "separate identity [is] so disregarded that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego,"*Garter v. Snyder, 607 F.2d 582 (2d Cir.1979).* Thus, the party seeking to veil pierce bears a "heavy burden." *TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339 (N.Y.1998); seeCargill Investor Services, Inc. v. Cooperstein, 587 F.Supp. 13, 15 (S.D.N.Y.1984).*

**\*4** That party must prove " '(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; *and* (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." ' *Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d 95, 97 (2d Cir.1997)* (quoting *American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir.1997),* and citing *Freeman v. Complex Computing Co., 119 F.3d 1044, 1052-53 (2d Cir.1997)).*

This standard is a shift from earlier New York decisions in which courts would veil pierce upon a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5
Slip Copy, 2006 WL 3377577 (S.D.N.Y.)
(Cite as: 2006 WL 3377577 (S.D.N.Y.))

substantial showing of either control *or* fraud. *Id.* Requiring both control and fraud "comports with the law of corporate veil piercing as stated most recently by the New York Court of Appeals."*Id.*"Unless the control is utilized to perpetrate a fraud or other wrong, limited liability will prevail."*Freeman,* 119 F.3d at 1053.

*1. Prong One: Domination*

In New York, mere ownership of a controlling number of shares in the subsidiary is "never" enough on its own to demonstrate the level of direct intervention necessary for veil piercing. *Bill*v. 51 N.Y.2d at 163 Likewise, "[t]he mere existence of a parent-subsidiary corporate relationship is insufficient to establish a unity of interest between the two corporations" absent a showing of "complete dominion and control [over] the subsidiary's daily operations."*Feszczyszyn v. General Motors Corp.,* 669 N.Y .S.2d 1010, 1012 (N.Y.App.Div.1998).

To decide whether the individual or corporate shareholder dominated the subject corporation in the necessary fashion, courts may consider various factors, including: (1) the absence of corporate formalities; (2) inadequate capitalization; (3) whether corporate funds are used for personal purposes; (4) overlap in ownership, officers, directors, and personnel; (5) common office space; (6) the amount of business discretion of the corporation; (7) whether a parent corporation deals with the subject corporation at arms length; (8) whether parent and subsidiary corporations are treated as independent profit centers; (9) payment of the allegedly dominated corporation's debts by a parent corporation; and (10) whether the corporation had property that was used by the parent as its own. *Bridgestone/Firestone, Inc. v. Recovery Credit Card Services, Inc.,* 98 F.3d 13 (2d Cir.1996); *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir.1991). (Because the defendants' summary judgment motion focuses on prong two of the veil piercing test, neither party explicitly addresses these factors in its motion papers.)

Courts examine the above-listed factors with the following core requirement in mind: "At the very least, there must be direct intervention by the parent in the management of the subsidiary to such an extent that 'the subsidiary's paraphernalia of incorporation, directors and officers' are completely ignored."*Billy,*

51 N.Y.2d at 163 (quoting *Lowendahl v. Baltimore & Ohio R.R. Co.,* 287 N.Y.S. 62, 73-74 (App.Div.1936)); *see*Truglia v. KFC Corp., 692 F.Supp. 271, 275 (S.D.N.Y.1998) ("The mere assertion that a corporate parent is or was involved in the decision-making process of its subsidiary, or that it controlled the legitimate policies of its subsidiary, will not shift liabilities among distinct corporate entities.") The burden is on the plaintiff to demonstrate such direct intervention on the part of the parent. *See*Walkovszky v. Carlton, 18 N.Y.2d 414 (1966).

**\*5** Although veil-piercing is often a fact-specific inquiry, *MAG Portfolio Consultant v. Merlin Biomed Group,* 268 F.3d 58, 64 (2d Cir.2001), because the burden on the party seeking to veil pierce is high and the presumption of corporate normalcy well-established, courts have summarily dismissed attempts to veil pierce where the record failed to establish any triable issue of fact. *Pfohl Brothers Landfill Site Steering Comm. v. Allied Waste Systems, Inc.,* 255 F.Supp.2d 134, 179 (W.D.N.Y.2003) (citing *Potash v. Port Authority of New York and New Jersey,* 719 N.Y.S.2d 290, 291 (2001) (dismissing on summary judgment where plaintiff failed to meet burden of establishing any basis for veil piercing); *Katz v. N.Y. Tint Taxi Corp.,* 624 N.Y.S.2d 65, 66 (1995) (same); *Sovereign Metal Corporation v. Ciraco,* 621 N.Y.S.2d 296, 296-97 (1994) (same)); *see*Favour Mind Ltd. v. Pacific Shores, Inc., 2004 WL 97649, at \*8 (S.D.N.Y. Jan. 20, 2004) (same).

Illustrative of the high level of domination a party seeking to veil pierce must establish, the Second Circuit, applying New York law, has even dismissed veil-piercing claims, as a matter of law, where the record seemed replete with evidence of control. *See,e.g.,American Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir.1997). In *American Fuel,* the Circuit dismissed a veil-piercing claim where the subject corporation had no contacts, no employees, no independent space, no bank account, no capital or assets, and the shareholder paid the corporation's expenses from his own pocket without keeping record of the transactions. Nonetheless, the Court held that the evidence of domination was inadequate as a matter of law because the level of control demonstrated was "no more than that [the subject corporation] was a start-up company...."[FN5]*Id.* at 135.

FN5. In *American Fuel,* 122 F.3d at 131-32,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 6
Slip Copy, 2006 WL 3377577 (S.D.N.Y.)
**(Cite as: 2006 WL 3377577 (S.D.N.Y.))**

the plaintiffs sought to reverse pierce to bind the subject corporation to an arbitration agreement entered into individually by the company's president. The plaintiff argued that the corporation was bound by the agreement because the corporation was the president's alter ego. *Id.* The District Court held, as a matter of law, that plaintiffs could veil pierce, thereby binding the subject corporation to the arbitration clause. *Id.* The Second Circuit found that the District Court had erred in piercing the corporate veil. *Id.* The Circuit Court then entered judgment for the defendants because "the evidence of domination [wa]s inadequate as a matter of law."*Id.* at 135.

Unlike in *American Fuel,* the record in the case at bar is far from replete with evidence of domination, thus making summary judgment more appropriate. Plaintiffs have offered documents in support of their veil-piercing claim, but the vast majority tends to negate the kind of domination required by the veil-piercing standard. The Court discussed this evidence in detail in its previous decision. *SeeSahu, 418 F.Supp.2d at 412-15.* To summarize that discussion here for the sake of brevity, plaintiffs have offered documents, which they represent as being UCC documents when, in fact, the documents prove to be UCIL documents. *Id.* In other circumstances, plaintiffs, mischaracterize and misquote evidence to make it look inculpatory when the evidence, on inspection, is actually exculpatory or benign. *Id.* The summary judgment standard only requires courts to "draw all *reasonable* inferences" in the non-movant's favor.*Delaware & Hudson Ry. Co. V. Cinsol. Rail Corp.,* 109 F.2d 174, 177 (2d Cir.1997) (emphasis added).

As an example of the type of evidence the Court is referring to, plaintiffs have argued that the defendants made the decision to back-integrate the UCIL plant to manufacture pesticides. (Compl.¶¶ 70-75.) The documents establish that the decision to back-integrate was proposed by UCIL, not UCC. A December 2, 1973 cover letter forwarding UCIL's 1973 Capital Budget Proposal to the UCC Management Committee states:

*6 Attached is a proposal by Union Carbide India Limited to manufacture methyl-isocyanate based

agricultural chemicals in India, beginning with Sevin and Temik. Manufacture is necessary in support of the market already developed by UCIL because the Government of India (GOI) will not permit further imports of Sevin and Temik if this proposal is not implemented.

(Defs.' Ex. D1 at 4186, D5 at 4242.)

The only evidence that could possibly weigh in favor of control are three statements made by defendant Anderson: (1) "Suppose we were a 40 percent owned company or a 35 percent owned company, raises some inquiries on our part, do we want to participate around the world where you have less than absolute control?"; (2) "I am telling you if I knew personally of any location in the corporate world of Union Carbide that had an unsafe operation it would have been shut down"; and (3) "Yes ... We had operated [the Bhopal site] safely for seven years."(Compl.¶ 65.) If these statements were taken as admissions of control, they would seem to demonstrate simply that UCC may have "controlled the legitimate policies of its subsidiary."*Truglia, 692 F.Supp. at 275.* Such control does not warrant the shifting of liabilities between corporations. *Id.* Even viewing these statements in a light most favorable to plaintiffs, they are simply not enough, especially in the face of ample contradictory evidence.

If anything, the evidence here, taken as a whole, shows nothing more than that UCIL was UCC's subsidiary. As Chief Judge Kimba Wood made clear in a different case involving Union Carbide, "the mere establishment of a subsidiary, for the purpose of financial gain, in and of itself [does not] establish[ ] 'control' or 'domination' on the part of the parent."*Maltz v. Union Carbide,* 992 F.Supp. at 302 (S.D.N.Y.1998).

The Court stops short of granting summary judgment on this prong because prong one is not the source of defendants' summary judgment motion and because such a ruling is unnecessary. As discussed below, even if plaintiffs could establish that UCC dominated UCIL, which they have not for veil-piercing purposes, summary judgment dismissing plaintiffs veil-piercing claim is appropriate based on prong two. As New York law makes clear, satisfaction of both prongs is required.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2. *Prong Two: Fraud or Wrong*

The second prong encompasses the overarching goal of the veil-piercing doctrine, which is to prevent fraud or achieve equity. See*International Aircraft Trading Co. v. Manufacturers Trust Co.,* 297 N.Y. 285, 292 (N.Y.1948). To satisfy this prong the party seeking to veil pierce must establish that the parent corporation misused the corporate form for its own ends to commit a fraud or avoid its obligations. See*TNS Holdings, Inc. v. MKI Securities Corp.,* 92 N.Y.2d 335, 339-40 (1998). As stated by the New York Court of Appeals in *Morris v. New York State Dep't of Taxation and Finance,* 82 N.Y.2d 135 (1993),

*\*7 domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required. The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetuate a wrong or injustice against that party such that a court in equity will intervene.

a. *Inference of Abuse*

As a threshold matter, "[a]n inference of abuse [of the corporate form] does not arise ... where a corporation was formed for legal purposes or is engaged in legitimate business."*TNS Holdings,* 92 N.Y.2d at 339-40;see*OM Intercontinental v. Geminex Int'l, Inc.,* No. 03 Civ. 6471, 2006 WL 2707327 (S.D.N.Y. Sept. 18, 2006) (dismissing on summary judgment where corporation "[wa]s a legitimate and functioning corporation duly incorporated under the laws of New York [and][t]here [wa]s no evidence that it [wa]s undercapitalized, [ ]or ... insolvent ..., and it had gross revenues estimated at $5.4 to $8.69 million.")

According to the defendants, this is a case in which no inference of abuse of the corporate form arises because after UCC sold its shares in UCIL, (i) UCIL changed its name to EIIL, and (ii) EIIL remains an economically viable corporation engaged in a legitimate business.

i. *Name Change Issue*

Plaintiffs contend the Court is precluded from granting summary judgment in defendants' favor

because whether EIIL is the same corporation as UCIL with a new name, "is an issue of fact that Defendants never raised in their summary judgment motion or 56.1 statement, and which therefore cannot form the basis for summary judgment."(Pls.' Mem. L. 14 note 10) (internal citations omitted).

This argument is odd given the first paragraph of Defendants' 56.1 Statement, which states: "Union Carbide India Limited is now named Eveready Industries India Ltd." Defendants reiterate this statement in their Memorandum of Law in Support of Summary Judgment. (Defs.' Mem. L. 18.) Even more compelling, the complaint filed by plaintiffs specifically states, "After the sale [of UCC's shares in UCIL], UCIL changed its name to Eveready Industries India Limited."(Compl.¶ 123.) This fact is confirmed by the Fresh Certificate of Incorporation Consequent on Change of Name issued under seal of the Registrar of Companies, West Bengal dated July 17, 2006. (Heck Aff. Ex. 1A.) Plaintiffs have failed to establish a material issue of fact regarding UCIL's name change to EIIL.

ii. *EIIL's Viability*

Plaintiffs have also failed to establish a material issue of fact regarding EIIL's financial viability and status as an independent, legitimate corporation. It is undisputed that EIIL has a market capitalization of 5.19 billion rupees, which translates to 115 million dollars. (Defs.' 56.1 Statement; Pls.' Mem. L. 13.) Defendants have produced, among other pieces of evidence, a certified copy of the Annual Report of EIIL for the period ended March 31, 2005, issued under the seal of the Registrar of Companies, West Bengal, dated December 21, 2005, which provides the details of the audited financial statements and shareholding pattern for EIIL, (Heck Aff. Ex. 1B), and EIIL's audited financial results for the year ended March 31, 2006, (Heck Aff. Ex. 3).

*\*8 Instead of arguing that EIIL is not a financially viable, independent corporation, Plaintiffs argue that "damages will far exceed this figure [of 115 million dollars]." Plaintiffs assert that the "evidence is not sufficient to establish that EIIL is capable of paying any judgment now or in the future."

These statements illustrate a misunderstanding of the relevant law. EIIL's economic viability is not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

important for the purpose of looking into the future to see if EIIL can pay a specific dollar amount of damages. EIIL's financial status is material to the extent it sheds light on EIIL's legitimacy as a corporation. If, for example, EIIL were now defunct or had a negligible net worth, an inference of abuse would arise. Presumably, such a lack of funds could be the result of a parent skimming money from its subsidiary to avoid obligations or adverse judgments. In this case, however, where EIIL is a bona fide corporation, no inference of abuse of the corporate form arises.

Plaintiffs' reliance on *Path Instruments International Corp. v. Asahi Optical Co.*, 312 F.Supp. 805 (S.D.N.Y.1970), is misplaced. In *Path*, the defendant parent tried to argue that the plaintiff could proceed against the parent "only in the event that any resulting judgment against [the subsidiary] is unsatisfied."*Id.* at 811.The District Court rejected this argument.*Id.Path* does not control the case at bar because here the Court is not saying plaintiffs must first sue EIIL as a procedural matter. Rather, the Court is saying, substantively, that no inference of abuse of the corporate form arises because EIIL remains a functional, financially viable corporation.

b. *Further Inquiry into Fraud Prong*

In cases where an inference of abuse arises, courts conduct further inquiry to determine whether the corporations's tenuous condition was caused purposely by the shareholders in order to commit a fraud or avoid obligations. See*Cary Oil Co. v. MG Refining & Marketing, Inc.*, 230 F.Supp.2d 439, 460 (S.D.N.Y.2002); *Favour Mind Ltd. v. Pacific Shores, Inc.*, No. 98 Civ. 7038, 2004 WL 97649, at *8 (S.D.N.Y. Jan. 20, 2004). A classic example of conduct in satisfaction of the fraud prong is the stripping of assets of the subsidiary corporation by the parent to render the subsidiary judgment-proof. See*American Fuel*, 122 F.3d at 135 (citing *Carte Blanche (Singapore) PTE, Ltd. v. Diner's Club Int'l, Inc.*, 758 F.Supp. 908, 917 (2d Cir.1997)).

*Cary Oil Co. v. MG Refining & Marketing, Inc.*, 230 F.Supp.2d 439, 460 (S.D.N.Y.2002) presents a good example of the level of purposeful conduct necessary to satisfy the fraud or wrong prong of the veil-piercing test. The *Cary Oil* case involved three corporations, a grandparent, a parent, and a subsidiary. The subsidiary

entered into contracts with customers for the sale of petroleum products. *Id.* at 443.The contracts helped customers hedge the risks of volatile prices by allowing them "an option to unwind the hedges early to take advantage of favorable market movements."*Id.* The grandparent corporation planned to eliminate the contracts because it decided the contracts of the subsidiary "definitely are not good for us."*Id.* at 459.The grandparent then directed the firing of officers of the subsidiary who disagreed with the grandparent about the contracts. *Id.* The grandparent also directed the hiring of an employee by the parent corporation, who following the directive of the grandparent unwound the hedges that had secured the subsidiary's contracts, causing the subsidiary to be in breach, thereby harming the plaintiffs who had contracted with the subsidiary. *Id.*

*9 This situation should be contrasted with the facts of *Favour Mind*, 2004 WL 97649, where the District Court decided the corporate form had not, as a matter of law, been abused. The evidence on the record demonstrated that the corporation's financial deterioration was not part of a purposeful scheme by the shareholders to denude the subject corporation of its assets and avoid the corporation's obligations to the plaintiffs, but was instead due to the unforseen return of a number of defective goods to the corporation. *Id.* at *6-*8.

The difference between these two cases demonstrates the crux of the second prong of the veil-piercing test: The domination must have occurred *"forthepurpose* of committing a wrong."*MAG Portfolio Consultant v. Merlin Biomed Group*, 268 F.3d 58, 64 (2d Cir.2001) (emphasis added); see*Maltz v. Union Carbide Chemicals & Plastics Co.*, 992 F.Supp. 286 (S.D.N.Y.1998) ( "[D]omination [must be] complete in respect to the transaction attacked."(internal quotations omitted)). In *Cary Oil*, the parent dominated the subsidiary for the purpose of causing the subsidiary to breach its contracts. Whereas in *Favour Mind*, the controlling shareholder did not dominate the corporation for the purpose of causing financial ruin to the corporation in order to avoid obligations to creditors.

Similarly, in the case before the Court, there is no showing that UCC dominated UCIL for the purpose of avoiding its obligations to the plaintiffs. (The Court conducts this analysis keeping in mind that this is a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                        Page 9
Slip Copy, 2006 WL 3377577 (S.D.N.Y.)
**(Cite as: 2006 WL 3377577 (S.D.N.Y.))**

somewhat theoretical discussion given the absence of evidence that UCC even dominated UCIL within the meaning of the veil-piercing test.) Though it is not completely clear from the complaint, the fraud or wrong alleged seems to be that defendants controlled UCIL in order to perpetrate a scheme to pollute the environment, and/or to conceal the pollution, and/or to prevent plant remediation.

The evidence on the record contradicts such allegations. The Court discussed this evidence in detail in its previous decision under the umbrella of plaintiffs other two theories of liability. _Sahu v. Union Carbide Corp., 418 F.Supp.2d 407, 412-15 (S.D.N.Y.2005)._

By way of example, plaintiffs' allegation that UCC predicted the pollution problem is based on two out-of-context quotations from UCC documents. Defendants produce copies of the documents from which plaintiffs quote, and the documents establish that UCC was not predicting pollution, but instead was suggesting measures to its subsidiary to prevent pollution.

The first quotation plaintiffs misleadingly quote, "[a]ll wastewater from the Pesticide Unit at Bhopal will discharge into solar evaporation ponds" (Compl.¶ 84), is actually followed by an even more important sentence omitted by plaintiffs, which states: "Plans are to construct the ponds ... with impermeable linings to prevent contamination of groundwater."(Defs.' Ex. D3 at 4295.)

**\*10** Plaintiffs' second quotation says that UCC "discussed the 'danger of polluting subsurface water supplies in the Bhopal area.'" (Compl.¶ 85.) Plaintiffs leave out the beginning and end of the sentence, omissions that completely change the sentence's meaning. The sentence actually reads: "_to avoid_ danger of polluting subsurface water supplies in the Bhopal area, this pond should be lined with clay suitable for rendering the pond bottom and dikes impervious to water."(Defs.' Ex. D3 at 4129) (emphasis added). Such obviously purposeful omissions by counsel are outrageous and seem to be designed to intentionally mislead the Court.

Plaintiffs also offer evidence, which they claim proves that defendants knowingly transferred inadequate technology to UCIL. (Compl.¶¶ 76-83.) Plaintiffs rely

on references to and quotations from the UCIL Capital Budget Proposal discussed above. Plaintiffs, however, refer falsely to this document as "Union Carbide's 1973 Capital Budget Proposal."(Compl.¶ 76). Upon inspection of the document, it is a UCIL, not a UCC, document (Defs.' Ex. D1 at 4188).

Even if this document were a UCC document and not a UCIL document, there would still be no evidence of an inadequate technology transfer by UCC. This document and other documents establish just the opposite; that UCIL elected to develop its own technology rather than using UCC technology. With regard to UCC's carbon monoxide ("CO") Process, UCIL's Budget Proposal states that,

The UCC process is unsuitable because it is based on methane, which is unavailable at Bhopal.

Two other processes ... were investigated and rejected.... Instead, UCIL has elected to develop its own process ... with the help of an Indian-based consultant.

(Defs.' Ex. D1 at 4204.) UCIL also rejected UCC's 1-Naphthol technology because it would not be practical in India, and instead developed its own process. (Defs.' Ex. D1 at 4204-05.) Though the UCIL proposal did not reject the use of UCC's MIC-to-Sevin technology, a Bhopal plant chronology shows that MIC-to-Sevin was never actually used (Defs.' Ex. D19 at 3791).

After this misleading evidence has been weeded out, plaintiffs actually offer no evidence that supports the second prong of New York's veil-piercing test. On such a record, summary judgment is appropriate. _See Law Offices of Curtis V. Trinko v. Verizon Communications, Inc.,_ No. 00 Civ.1910, 2006 WL 2792690, at \*9 (S.D.N.Y. Sept. 27, 2006) (granting summary judgment where evidence offered by the plaintiff was incredible); _see also Jeffreys v. City of New York,_ 426 F.3d 549 (2d Cir.2005) (granting summary judgment where "no reasonable person would undertake the suspension of disbelief necessary to give credit to [plaintiff's] allegations" (internal quotations omitted)).

C. _Additional Discovery_

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                  Page 10
Slip Copy, 2006 WL 3377577 (S.D.N.Y.)
**(Cite as: 2006 WL 3377577 (S.D.N.Y.))**

Plaintiffs argue that summary judgment is premature because they need time for additional discovery. The Court has already, at the plaintiffs' request, delayed disposition of this motion three times for a total period of about five months. Based on the extensive record already before the Court, it seems unlikely that further discovery would be fruitful. The plaintiffs have not made any showing of a likelihood that there is additional evidence, nor any demonstration of how further discovery might reveal the existence of such evidence. See *Waldron v. Cities Services Co.,* 361 F.2d 671 (2d Cir.1966), *aff'd,* 391 U.S. 253 (1968). Plaintiffs' argument that letters rogatory customarily take from six months to a year to execute is unpersuasive. Plaintiffs could have initiated the process in November of 2004, but instead waited until December 2005. See *Sitts v. United States,* 811 F.2d 736 (2d Cir.1987); *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.,* 769 F.2d 919 (2d Cir.1985). Plaintiffs request for additional discovery is denied.

D. *"Unclean Hands" Doctrine*

**\*11** Plaintiffs' attempt to use the "unclean hands" doctrine to defeat this motion is also without merit. Plaintiffs assert that "UCC seeks to invoke equity having profited from its own fraud." However, it is plaintiffs, not defendants, who seek to invoke equity to veil pierce. Furthermore, the "unclean" activities defendants allegedly took part in, were not alleged in the complaint and are different from the claims at issue in this case.

IV. *Conclusion*

For the reasons set forth above, defendants' motion for summary judgment dismissing plaintiffs' claims is granted. This case is closed, and the Court directs the Clerk to remove the case from the Court's docket.

SO ORDERED.

S.D.N.Y.,2006.
Sahu v. Union Carbide Corp.
Slip Copy, 2006 WL 3377577 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.