McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
88 Pine Street
24th Floor
New York, New York 10005
Telephone: (212) 483-9490
Facsimile: (212) 483-9129
Attorneys for Respondent-Defendant,
Stewart's Mobile Concepts, Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENROD MANAGEMENT GROUP, INC.,

    Plaintiff-Petitioner,

v.

STEWART'S MOBILE CONCEPTS, LTD.,

    Defendant-Respondent.

Civil Action No. 07-10649

---

MEMORANDUM OF LAW BY DEFENDANT-RESPONDENT, STEWART'S MOBILE CONCEPTS, LTD., IN OPPOSITION TO THE MOTION IN LIMINE BY PLAINTIFF-PETITIONER, PENROD MANAGEMENT GROUP, INC., TO EXCLUDE THE DIRECT TESTIMONY AFFIDAVIT OF BOB HISS AND EXHIBITS 14, 16 AND 51

---

Of Counsel and on the Brief

Ryan P. Mulvaney, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................i

PRELIMINARY STATEMENT..........................................................................1

LEGAL ARGUMENT.........................................................................................3

    POINT I...................................................................................................3

        THE COURT SHOULD DENY PMG'S MOTION IN LIMINE
        TO EXCLUDE THE DIRECT TESTIMONY AFFIDAVIT OF
        BOB HISS AND EXHIBITS 14, 16 AND 51 BECAUSE THE
        PROPOSED TESTIMONY AND EXHIBITS ARE RELEVANT
        AND DO NOT UNFAIRLY PREJUDICE PMG..........................3

        A.    Mr. Hiss's Direct Testimony Affidavit and Exhibits 14, 16
                  and 51 are Relevant to the Issues in this Litigation...............3

        B.    Mr. Hiss's Testimony and Exhibits 14, 16 and 51 would not
                  Unfairly Prejudice PMG...........................................................6

    CONCLUSION.......................................................................................10

## TABLE OF AUTHORITIES

American Fuel Corp. v. Utah Energy Development Co.,
　　122 F.3d 130 (2d Cir. 1997)...................................................................................3

Carter v. Hewitt,
　　617 F.2d 961 (3d Cir. 1980)...................................................................................3

Constantino v. David M. Herzog, M.D., P.C.,
　　203 F.3d 164 (2d Cir. 2000)...................................................................................7

Dollar v. Long Manufacturing, N.C., Inc.,
　　561 F.2d 613 (5th Cir.1977), cert. denied, 435 U.S. 996, 98 S.Ct. 1648, 56
　　L.Ed.2d 85 (1978)...................................................................................................8

Leopold v. Baccarat, Inc.,
　　174 F.3d 261 (2d Cir. 1999)...................................................................................7

Perry v. Ethan Allen, Inc.,
　　115 F.3d 143 (2d Cir. 1997)...................................................................................8

Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.,
　　38 F.3d 627 (2d Cir. 1994)(A)................................................................................9

U.S. v. Bedford Associates,
　　713 F.2d 895 (2d Cir. 1983)...................................................................................9

U.S. v. Gelzer,
　　50 F.3d 1133 (2d Cir.1995).....................................................................................8

U.S. v. Figueroa,
　　618 F.2d 934 (2d Cir. 1980)................................................................................6, 8

U.S. v. Harvey,
　　991 F.2d 981 (2d Cir. 1993)...................................................................................7

U.S. v. Southland Corp.,
　　760 F.2d 1366 (2d Cir. 1985).................................................................................3

N.J. v. Ventron Corp.,
　　94 N.J. 475 (1983) .................................................................................................3

Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,
　　933 F.2d 131 (2d Cir. 1991)...................................................................................4

## STATUTES

Fed.R.Evid. 401 .................................................................................................................3

Fed.R.Evid. 402 .................................................................................................................3

Fed.R.Evid. 403 ..........................................................................................................6, 7, 8

## PRELIMINARY STATEMENT

Defendant-Respondent, Stewart's Mobile Concepts, Ltd. ("SMC") submits this brief in opposition to the motion in limine by Plaintiff-Petitioner, Penrod Management Group, Inc. ("PMG"), to bar the direct testimony declaration of Bob Hiss in support of SMC. In support of its motion, PMG argues that Mr. Hiss's testimony is somehow irrelevant and would be unfairly prejudicial, and further seeks to bar the introduction of SMC's proposed exhibits 14 (Mr. John, Inc. credit application completed by PMG); 16 (wire transfer confirmation of PMG wiring $17,700 to Mr. John, Inc. in furtherance of the "Nikki Beach" bar in Atlantic City); and 51 (a September 21, 2005, letter from Mr. Hiss to Michael Register of PMG regarding the outstanding invoices in the amount of $110,452.71). PMG's motion is baseless and should be denied.

To be clear, SMC provides a brief review of PMG's tactics in this case. First, although the arbitrator compelled PMG to produce documents related to its defense to SMC's alter ego claim – its defense here – it produced a paltry amount of documents, represented that it had produced all of the documents that it had and agreed that discovery had been completed, and then produced significantly more documents months later when it served its exhibit binder, and proceeded to refer to a litany of other documents in its direct testimony declaration that still have not been produced.

Next, after SMC issued a subpoena to Jack Penrod, the admitted Chief Executive Officer and President of PMG, and President of NBAC, to testify at the hearing in this case, PMG refuses to produce him, files an in limine motion to quash the subpoena arguing by way of an unsigned and uncertified declaration that he lacks personal knowledge about his own companies, argues that Mr. Register is the PMG officer who apparently has "the most direct knowledge," yet in his own direct testimony declaration, Mr. Register testified that Michael Penrod, not he or

1

Jack Penrod, actually has the knowledge because he "was in charge of the NBAC operation." When Michael Penrod was previously deposed in a case involving the same defendants and same claims, however, Michael Penrod testified that he knew little if anything about the interrelationship between NBAC and PMG. Now, continuing its pattern of conduct, PMG seeks to bar the testimony of Bob Hiss, a person like SMC's Keith Futerman who actually has relevant personal factual knowledge and information regarding the interrelation between PMG and NBAC. Clearly, PMG does not want anyone with personal knowledge to testify – even on behalf of itself – about what happened in Atlantic City in the summer of 2005.

For the continuing shell-games that PMG plays, it is time for the Court to say enough is enough. Just as it has used the maze of corporate structure and shells to avoid legitimate creditors such as SMC, PMG now uses those same tactics in this litigation to evade the Court's search for the truth. It is remarkable that PMG would argue that an independent witness who himself was a similarly situated creditor and who has relevant personal knowledge of the precise issue to be litigated and resolved at the upcoming hearing – namely, whether NBAC and PMG are one in the same – should be barred from testifying.

For the reasons set forth below, it is respectfully submitted that PMG's baseless motion in limine to exclude the direct examination testimony of Bob Hiss and exhibits 14, 16, and 51 should be denied.

## **LEGAL ARGUMENT**

### **POINT I**

**THE COURT SHOULD DENY PMG'S MOTION IN LIMINE TO EXCLUDE THE DIRECT TESTIMONY AFFIDAVIT OF BOB HISS AND EXHIBITS 14, 16 AND 51 BECAUSE THE PROPOSED TESTIMONY AND EXHIBITS ARE RELEVANT AND DO NOT UNFAIRLY PREJUDICE PMG**

A.  Mr. Hiss's Direct Testimony Affidavit and Exhibits 14, 16 and 51 are Relevant to the Issues in this Litigation

Pursuant to Rule 401 of the Federal Rules of Evidence, relevant evidence is:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed.R.Evid. 401. Furthermore, Rule 402 of the Federal Rules of Evidence provides, in pertinent part, that "[a]ll relevant evidence is admissible[.]" Fed.R.Evid. 402. As the Second Circuit has noted, the "standard of relevance established by the Federal Rules of Evidence is not high." U.S. v. Southland Corp., 760 F.2d 1366, 1375 (2d Cir. 1985) (quoting Carter v. Hewitt, 617 F.2d 961, 966 (3d Cir. 1980)).

In this case, the parties consented to magistrate jurisdiction so that the Court can resolve the issue of whether PMG is the dominant and controlling parent of NBAC such that PMG should be required to continue with the currently pending but stayed arbitration in the American Arbitration Association. In order to pierce the corporate veil under New York law, a party must show "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997); see also N.J. v. Ventron Corp., 94 N.J. 475, 500 (1983) (holding to pierce corporate veil, courts must find "that the parent so dominated the subsidiary that it had no

3

separate existence but was merely a conduit for the parent," and that the subsidiary was used "to perpetuate a fraud or injustice, or otherwise circumvent the law.") To determine whether those assertions are correct, the trier of fact is entitled to consider factors that would tend to show that NBAC was a dominated corporation, such as: "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of officers and directors, keeping of corporate records and the like; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlap in ownership, officers, directors and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the amount of business discretion displayed by the allegedly dominated corporation; (7) whether the related corporations deal with the dominated corporation at arms length; (8) whether the corporations are treated as independent profit centers; (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group; and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own." Wm. Passalacqua Builders, Inc., v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991).

Mr. Hiss's direct testimony declaration, which is indeed relevant to the issue of whether PMG is NBAC's alter ego, was submitted in support of SMC's claim that PMG should be held liable for NBAC's breaches. A review of Mr. Hiss's declaration reveals that his testimony is relevant to the interrelation between PMG and NBAC, namely Mr. John's transactions with PMG regarding the "Nikki Beach" bar in Atlantic City. Mr. Hiss testified that representatives of PMG – not Nikki Beach – contacted Mr. John, Inc. about its products and services. Declaration of Christine Tramontano, Esq. ("Tramontano Dec."), at Exh. D (Hiss Direct Aff., at ¶ 5). In response to the request from PMG – not anyone on behalf of any Nikki Beach entity – Mr. John,

Inc. sent PMG a credit application because it was a potential new customer with which Mr. John had not previously conducted business. Id. (Hiss Direct Aff., at ¶ 5). Indeed, Mr. John, Inc. received a completed credit application from PMG – not any other Nikki Beach entity – that was completed by a PMG representative, and listed all of PMG's credit references, banking information, and contact information. Id. at Exhs. D and E (Hiss Direct Aff., at ¶ 6; SMC Exh. 14).

Thereafter, PMG – not any other Nikki Beach entity – ordered and consummated a wire transfer in the amount of $17,700 to Mr. John, Inc. in furtherance of Mr. John, Inc. providing its products and services to the Nikki Beach bar in Atlantic City. Id. at Exhs. D and E (Hiss Direct Aff., at ¶ 11; SMC Exh. 16). Thereafter, Mr. John, Inc. mailed invoices to PMG's attention at 1 Ocean Drive, Miami Beach, Florida. Id. at Exhs. D and E (Hiss Direct Aff., at ¶¶ 12 – 16; SMC Exh. 51). Furthermore, after not having received payment, Mr. Hiss wrote to Mr. Register, included the outstanding invoices, and demanded payment. Id. (Hiss Direct Aff., at ¶ 17; SMC 51).

The negotiation, payment, and execution of a contract with Mr. John, Inc., among other vendors and suppliers, is absolutely related to and goes to proving some of the factors of SMC's alter ego claim, namely whether NABC was undercapitalized and whether PMG guaranteed NBAC's debts. Those facts are relevant because it shows that NBAC was undercapitalized and, correspondingly, that PMG was responsible for funding NBAC's operations. Those facts are also relevant because it shows that NBAC had little if any independent business discretion. Furthermore, accepting PMG's argument – that PMG guaranteed NBAC's contract with Mr. John, Inc. – as true, its admission would further support SMC's claim. Indeed, another factor of

the alter ego analysis is whether the dominant and controlling corporation, here PMG, paid or guaranteed the debts of the dominated corporation, here NBAC.

As an aside, what's surprising about PMG's recent concession that it guaranteed NBAC's debts to Mr. John, Inc., is that at no time did it do so during the Mr. John, Inc. case. In fact, like it does here, PMG flatly denied responsibility for NBAC's breaches, specifically argued – like it does here – that it was not a party to the contract with Mr. John, Inc., and maintained its denial of liability until only a few days before the scheduled trial date. A review of the deposition transcript of Michael Penrod reveals why PMG's recent admission is so shocking:

> Q. But it's your position as a representative of Penrod Management that Penrod Management doesn't owe anything to Mr. John.
>
> Mr. Savola: Object to form.
>
> A. Correct.

Mulvaney Dec., at Exh. A (Transcript, 33:23 – 34:2 (Mar. 20, 2007)).

Accordingly, PMG's motion in limine to exclude this testimony and evidence should be denied because the direct examination testimony of Mr. Hiss, and exhibits 14, 16 and 51, are relevant to the factors of SMC's alter ego claim, namely undercapitalization and guaranteeing debts.

B. Mr. Hiss's Direct Testimony Affidavit and Exhibits 14, 16 and 51 would not Unfairly Prejudice PMG

Rule 403 of the Federal Rules of Civil Procedure requires a trial court to determine whether the probative value of evidence on a disputed issue in a case "is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. Evidence is not unfairly prejudicial to the extent that it serves the proper purpose for which it is potentially admissible. U.S. v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980).

6

Otherwise admissible evidence, however, always poses a risk of unfair prejudice if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403, advisory committee note. As the Second Circuit has noted, "virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*." Constantino v. David M. Herzog, M.D., P.C., 203 F.3d 164, 174-75 (2d Cir. 2000) (emphasis supplied) (affirming trial court's finding that probative value of videotape produced by a professional association of obstetricians and gynecologists regarding how to perform shoulder dystocia births, which was admitted in malpractice action brought by parents of child injured in such birth, was not substantially outweighed by its danger for unfair prejudice or confusion, because to prove that doctor committed malpractice under governing New York law, plaintiffs had to show that doctor deviated from accepted obstetrical practices of medical profession); see Leopold v. Baccarat, Inc., 174 F.3d 261, 269-70 (2d Cir. 1999) (holding evidence at issue was not needlessly cumulative, but, if believed, it easily might have created feelings of antagonism and even disgust toward plaintiff, which in turn might have unfairly prejudiced plaintiff by providing jurors with a reason, unrelated to the merits of the case, to return a verdict against her); U.S. v. Harvey, 991 F.2d 981 (2d Cir. 1993) (holding cross-examination questions and answers concerned material for which defendant was not being prosecuted and that did not bear on the disputed trial issues, and likely effect of this evidence was to create disgust and antagonism toward defendant, and resulted in overwhelming prejudice against him). The unfairness contemplated involves some adverse effect beyond tending to prove a fact or issue that justifies admission. Constantino, 203 F.3d at 174-75. Indeed, the standard for excluding evidence under Rule 403 is seemingly high:

> As the terms of the Rule indicate, for relevant evidence to be excluded on this basis, the imbalance must be substantial, and the

7

> prejudice must be unfair. "The prejudice that Rule 403 is concerned with involves some adverse effect ... beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir.1995) (internal quotation marks omitted); see, e.g., United States v. Figueroa, 618 F.2d 934, 943 (2d Cir.1980) (same); Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613, 618 (5th Cir.1977) ("'[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party .... The prejudice must be 'unfair.'"), cert. denied, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). Although any evidence that tends to establish liability is prejudicial to the interests of the defendant, the prejudice is unfair only if the evidence has "an undue tendency to suggest decision on an improper basis." Fed.R.Evid. 403 Advisory Committee Notes (1972).

Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997).

Here, PMG argues that Mr. Hiss's testimony would prejudice PMG by casting it "in a bad light as an entity that defaults on its debts." PMG Br., at p. 7. It is not necessarily PMG's refusal to pay, but rather PMG's guaranteeing of NBAC's debts that is important to the alter ego analysis. That PMG refuses to pay any vendors and suppliers who provided services to NBAC – such as SMC, Mr. John, Inc. and 2005 Florida Festival d/b/a Track Entertainment (another entity to which PMG expressly guaranteed payment yet refused to pay until sued in this Court) – although indeed relevant to prove PMG's pattern of business practices, is secondary to the overriding piercing factor of guaranteeing the debts of the dominated and controlled company, here NBAC. Evidence that PMG refuses to pay vendors, even if offered here, does not rise to the level of unfair prejudice that would result in the exclusion of Mr. Hiss's testimony and the proposed exhibits.

PMG also argues that Mr. Hiss's testimony is unrelated to and involved a dissimilar transaction than the one in dispute here. First and foremost, what is in dispute here is whether PMG is the alter ego of NBAC. The negotiation, payment, and execution of a contract with Mr.

8

John, Inc., among other vendors and suppliers, is absolutely related to and goes to proving some of the factors of SMC's alter ego claim, namely whether NABC was undercapitalized and whether PMG guaranteed NBAC's debts. Indeed, PMG, by and through its in-house counsel, now admits to guaranteeing Mr. John, Inc.'s debts; it cannot now seek to exclude its own admission of a material fact. See Potamkin Cadillac Corp. v. B.R.I. Coverage Corp., 38 F.3d 627, 633-34 (2d Cir. 1994) ("Assertions by a party in documents it has prepared and offers into evidence are admissible against it as admissions ... and hence are evidence on the basis of which the court may make findings of fact") (citing Fed.R.Evid. 801(d)(2)(A) and United States v. Bedford Associates, 713 F.2d 895, 905 (2d Cir. 1983)). Here, SMC must show several factors to pierce the corporate veil. Two of those factors are undercapitalization and guaranteeing of debts. Mr. Hiss's testimony and exhibits 14, 16 and 51, coupled with Mr. Register's admission, go toward proving those particular elements.

Accordingly, PMG's motion in limine to exclude this testimony and evidence should be denied because the admission of Mr. Hiss's direct examination testimony, and exhibits 14, 16 and 51, would not unfairly prejudice PMG.

## CONCLUSION

For the reasons set forth herein, it is respectfully submitted that PMG's motion in limine to exclude the direct examination testimony of Bob Hiss and exhibits 14, 16, and 51 should be denied.

McELROY, DEUTSCH, MULVANEY & CARPENTER LLP
Attorneys for Respondent-Defendant,
Stewart's Mobile Concepts, Ltd.

Date: June 13, 2008        By: _____
Richard S. Mills
Ryan P. Mulvaney
88 Pine Street
24th Floor
New York, New York 10005
Telephone: (212) 483-9490
Facsimile: (212) 483-9129

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2008, I caused to be served the memorandum of law of Defendant-Respondent, Stewart's Mobile Concepts, Ltd., in opposition to the motion in limine by Plaintiff-Petitioner, Penrod Management Group, Inc., to exclude the direct testimony affidavit of Bob Hiss and exhibits 14, 16, and 51, Declaration of Ryan P. Mulvaney, Esq., and this Certificate of Service on all counsel of record and the Clerk of Court via hand delivery and electronic filing.

                                                  McELROY, DEUTSCH, MULVANEY & CARPENTER LLP
                                                  Attorneys for Respondent-Defendant,
                                                  Stewart's Mobile Concepts, Ltd.

Date: June 13, 2008          By: _____
                                                  Richard S. Mills
                                                  Ryan P. Mulvaney
                                                  88 Pine Street
                                                  24th Floor
                                                  New York, New York 10005
                                                  Telephone: (212) 483-9490
                                                  Facsimile: (212) 483-9129