McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
88 Pine Street
24th Floor
New York, New York 10005
Telephone: (212) 483-9490
Facsimile: (212) 483-9129
Attorneys for Respondent-Defendant,
Stewart's Mobile Concepts, Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENROD MANAGEMENT GROUP, INC.,

        Plaintiff-Petitioner,

v.

STEWART'S MOBILE CONCEPTS, LTD.,

        Defendant-Respondent.

Civil Action No. 07-10649

**MEMORANDUM OF LAW BY DEFENDANT-RESPONDENT, STEWART'S MOBILE CONCEPTS, LTD., IN OPPOSITION TO THE MOTION IN LIMINE BY PLAINTIFF-PETITIONER, PENROD MANAGEMENT GROUP, INC., TO QUASH THE TRIAL SUBPOENA ISSUED TO JACK PENROD, AND IN SUPPORT OF STEWART'S MOBILE CONCEPTS, LTD.'S REQUEST FOR AN ADVERSE INFERENCE INSTRUCTION**

Of Counsel and on the Brief

Ryan P. Mulvaney, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………...............i

PRELIMINARY STATEMENT…………………………………………….........1

LEGAL ARGUMENT…………………………………………………….3

POINT I………………………………………………………………..3

THIS COURT SHOULD STRIKE AND DISREGARD THE
UNSIGNED DECLARATION OF JACK PENROD
SUBMITTED IN SUPPORT OF PMG'S MOTION <u>IN</u>
<u>LIMINE</u> TO QUASH THE TRIAL SUBPOENA …………………….3

POINT II…………………………………………………………………6

THE TRIAL SUBPOENA ISSUED TO JACK PENROD
SHOULD NOT BE QUASHED AND HE SHOULD BE
COMPELLED TO APPEAR AND PROVIDE TESTIMONY
AT THE JUNE 23, 2008, HEARING IN THIS MATTER…………….6

A.     Mr. Penrod Has Knowledge of the Issues in Dispute…………7

B.     Nowhere Does Mr. Penrod Declare that Appearing to Testify
Would Constitute an "Annoyance, Undue Burden and
Expense……………………………………………………………17

POINT III…………………………………………………………………19

SMC IS ENTITLED TO AN ADVERSE INFERENCE FOR PMG'S
REFUSAL TO PRODUCE JACK PENROD AT TRIAL……………..19

CONCLUSION………………………………………………………………...21

## TABLE OF AUTHORITIES

Amherst Leasing Corp. v. Emhart Corp.,
    65 F.R.D. 121 (D. Conn. 1974)..............................................................6, 16, 17

CBS, Inc. v. Ahern,
    102 F.R.D. 820 (S.D.N.Y. 1984) ...........................................................6, 7, 8, 9

Consolidated Rail Corp. v. Primary Industries Corp.,
    Civ. A. No. 92-4927, 1993 WL 364471 (S.D.N.Y. 1993)....................................6, 8, 16

General Star Indemnity Co. v. Platinum Indemnity Ltd.,
    210 F.R.D. 80 (S.D.N.Y. 2002) .................................................................6

Mugno v. Societe Internationale De Telecommunications Aeronautiques, Ltd.,
    No. 05-cv-2037, 2007 WL 316573 (E.D.N.Y. Jan. 30, 2007).......................................4

Parkhurst v. Kling,
    266 F. Supp. 780 (E.D. Pa. 1967) ..........................................................6, 17

Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,
    486 F. Supp. 414 (S.D.N.Y. 1980) ............................................................19

Simplicity Pattern Co., Inc. v. Miami Tru-Color Off-Set Service, Inc.,
    210 A.D.2d 24, 619 N.Y.S.2d 29 (N.Y.A.D. 1st Dep't 1994) ...................................20

Speadmark, Inc. v. Federated Department Stores, Inc.,
    176 F.R.D. 116 (S.D.N.Y. 1997) ..............................................................7

St. Paul Fire & Marine Insurance Co. v. Royal Insurance Co. of America,
    No. 91-6151, 1993 WL 267347 (S.D.N.Y. 1993)..........................................................19

Sterling Fifth Associates v. Carpentile Corp., Inc.,
    No. 03-cv-6569, 2003 WL 22227960 (S.D.N.Y. Sept. 26, 2003) .............................4, 5

Treppel v. Biovail Corp.,
    No. 03-3002, 2006 WL 468314 (S.D.N.Y. 2006)................................................6, 8, 16

Yearwood v. LoPiccolo,
    No. 95-cv-2544, 1998 WL 474073 (S.D.N.Y. Aug. 10, 1998)......................................4

### STATUTES

28 U.S.C. § 1746...............................................................................1, 3, 4, 5, 21

## PRELIMINARY STATEMENT

Defendant-Respondent, Stewart's Mobile Concepts, Ltd. ("SMC") submits this brief in opposition to the motion in limine by Plaintiff-Petitioner, Penrod Management Group, Inc. ("PMG"), to quash the trial subpoena issued to Jack Penrod, the admitted Chief Executive Officer and President of PMG, and President of NBAC. In support of its motion, PMG submitted the declaration of Mr. Penrod who feigns a lack of knowledge about the interrelation between NBAC and PMG. It should be noted at the outset that Mr. Penrod's declaration violates numerous requirements of 28 U.S.C. § 1746. First, the declaration is remarkably unsigned. Second, the declaration fails to include the statement that the facts set forth in the declaration "are true and accurate" to the best of Mr. Penrod's knowledge. Third, the declaration, presumably reviewed by Mr. Penrod while out of the country (he declares in his declaration that he "is currently out of the country") fails to state that it is made under penalty of perjury under the laws of the United States of America. For those reasons alone, case law requires that Mr. Penrod's declaration be stricken and disregarded.

Substantively, Mr. Penrod's lack of knowledge is difficult if not impossible to believe especially because he is the executive and sole shareholder of not only PMG and NBAC, but of all of the other entities formed under the "Penrod" and "Nikki Beach" names. Despite the fact that there is sufficient reason for this Court to find that Mr. Penrod – the creator and visionary of the "Nikki Beach" empire – has sufficient personal knowledge to be required to appear and provide testimony regarding the formation, operation and management of the companies that he controls, PMG argues that Mr. Register is the corporate executive who apparently has "the most direct knowledge." PMG's argument is contradicted by its own witness; in his own direct testimony declaration, Mr. Register testified that Michael Penrod, not he or Mr. Penrod, actually

has the knowledge because Michael Penrod essentially stationed in New Jersey to be "in charge of the NBAC operation." When Michael Penrod was previously deposed in a case involving the same defendants and same claims, however, Michael Penrod testified that he knew little if anything about the interrelationship between NBAC and PMG. The finger-pointing and hiding are obvious. Simply stated, who could possibly have personal knowledge about the companies and maze of corporate structures that he formed other than Mr. Penrod himself?

Furthermore, PMG argues that requiring Mr. Penrod to testify in this matter would constitute an "annoyance, undue burden, and expense" presumably to Mr. Penrod. Interestingly, however, Mr. Penrod himself fails to make that claim in his own unsigned declaration. That contention should likewise be rejected by this Court.

For the reasons set forth below, it is respectfully submitted that PMG's baseless motion in limine to quash the trial subpoena of Mr. Penrod should be denied. Furthermore, SMC respectfully requests the imposition of an adverse inference against PMG for PMG's refusal to produce Mr. Penrod.

## ARGUMENT

## POINT I

### THIS COURT SHOULD STRIKE AND DISREGARD THE UNSIGNED DECLARATION OF MR. JACK PENROD SUBMITTED IN SUPPORT OF PMG'S MOTION IN LIMINE TO QUASH THE TRIAL SUBPOENA

In support of its motion in limine, PMG submitted the declaration of Mr. Jack Penrod.

Although Mr. Penrod makes the declaration pursuant to 28 U.S.C. § 1746, he failed to sign the

declaration. Such a failure violates to 28 U.S.C. § 1746 and, as a result, must be stricken and

disregarded by this Court.

Section 1746 of Title 28 of the United States Code provides, in pertinent part:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

> (Signature)".

> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

> (Signature)".

3

28 U.S.C. § 1746. Mr. Penrod's declaration fails in a number of respects.

First, Mr. Penrod failed to sign the declaration and, as a result, it must be disregarded. See Mugno v. Societe Internationale De Telecommunications Aeronautiques, Ltd., No. 05-cv-2037, 2007 WL 316573, at *1 (E.D.N.Y. Jan. 30, 2007) (striking unsigned declaration because "without a signature – either actual or electronic – the Court does not know whether [the declarant] subscribes to the statements made in her purported [d]eclaration."); Yearwood v. LoPiccolo, No. 95-cv-2544, 1998 WL 474073, at *5 (S.D.N.Y. Aug. 10, 1998) (holding unsigned declaration fails to comport with the requirements of 28 U.S.C. § 1746 and should be disregarded.") According to the court in Mugno, "it is the signature that provides assurance to the Court that the declarant swears or attests to what is stated in the declaration." Id. Here, there is no way to know whether Mr. Penrod "swears or attests to what is stated in [his] declaration." Mr. Penrod's unsigned declaration therefore violates section 1746 of Title 28 and must be stricken.

Second, aside from requiring execution, subsections (a) and (b) of section 1746 require Mr. Penrod to certify that the facts set forth in his declaration "are true and correct." Mr. Penrod, however, failed to do so. Such a failure provides another basis for striking and disregarding Mr. Penrod's unsigned and uncertified declaration. See Sterling Fifth Associates v. Carpentile Corp., Inc., No. 03-cv-6569, 2003 WL 22227960, at *5 (S.D.N.Y. Sept. 26, 2003) (noting that "[s]ection 1746 permits an unsworn declaration made under penalty of perjury to substitute for a sworn affidavit, but only if the claimant states that its contents are true and correct; striking declaration for failure of declarant to certify to truth and correctness). Mr. Penrod's unsigned and uncertified declaration violates section 1746 of Title 28 and must be stricken.

Finally, in Paragraph 8 of his unsigned and uncertified declaration, Mr. Penrod declares:

> 8.    I am a resident of Florida and I am currently out of the country on business. I will remain out of the country during the tentatively scheduled trial date in this matter.

Penrod Dec., at ¶ 8. First, assume for purposes of only this issue that Mr. Penrod truly is out of the country, his unsigned and uncertified declaration must be stricken because he fails to state that he made the declaration "under penalty of perjury under the laws of the United States of America that the foregoing is true and correct" pursuant to subsection (1) of section 1746. Indeed, such a failure provides another basis for striking and disregarding Mr. Penrod's unsigned and uncertified declaration. See Sterling Fifth Associates, 2003 WL 22227960, at *5 (giving no weight to declaration filed in support of motion to remand to state court for want of diversity jurisdiction that declared principal place of company's business because "when executed outside the United States, such an unsworn statement must indicate that the statement is made under penalty of perjury *under the laws of the United States of America*. Again this declaration contains no such language. Here, the declarant simply states: "YOUSEF S. AL MAJID, pursuant to 28 U.S.C. § 1746 and under penalty of perjury declares and says...."). Thus, accepting as true for purposes of only this issue Mr. Penrod's representation that he is indeed not currently (or was not when he presumably reviewed his declaration) in Miami, Florida, then his declaration must be stricken and disregarded because of his failure to comply with the requirements of section 1746.

Indeed, Mr. Penrod's failure to comply with the specific requirements of section 1746 is not insubstantial or immaterial. To the contrary, the failures and violations present not one but three justifiable bases on which to strike and disregard Mr. Penrod's declaration. Accordingly, for the reasons set forth above, this Court should strike and disregard Mr. Penrod's unsigned uncertified declaration because it violates at least three requirements of 28 U.S.C. § 1746.

## POINT II

### THE TRIAL SUBPOENA ISSUED TO JACK PENROD SHOULD NOT BE QUASHED AND HE SHOULD BE COMPELLED TO APPEAR AND PROVIDE TESTIMONY AT THE JUNE 23, 2008, HEARING IN THIS MATTER

To resolve whether Mr. Penrod should be compelled to testify at the upcoming hearing, we begin with the three guiding principles to which this Court must refer to resolve PMG's in limine motion.  First, it is widely recognized that "high ranking corporate executives are not automatically given special treatment which excuses them from being deposed." Treppel v. Biovail Corp., Civ. A. No. 03-3002, 2006 WL 468314, at *1 (S.D.N.Y. 2006) (quoting General Star Indemnity Co. v. Platinum Indemnity Ltd., 210 F.R.D. 80, 83 (S.D.N.Y. 2002)); see Consolidated Rail Corp. v. Primary Industries Corp., Civ. A. No. 92-4927, 1993 WL 364471, at *1 (S.D.N.Y. 1993) ("Highly-placed executives are not immune from discovery.")  Second, "the fact that the witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." CBS, Inc. v. Ahern, 102 F.R.D. 820, 822 (S.D.N.Y. 1984); see Consolidated Rail Corp., 1993 WL 364471, at *1 (citing CBS, Inc.); Treppel, 2006 WL 468314, at *1 (citing CBS, Inc.).

Third, even where a high-ranking corporate officer contends that he or she lacks knowledge, as Mr. Penrod does here, that contention "is subject to testing by the examining party." Treppel, 2006 WL 468314, at *1 (quoting Consolidated Rail Corp., 1993 WL 364471, at *1 (citing Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 122 (D. Conn. 1974))).  Indeed, "the general rule is that a claimed lack of knowledge does not provide sufficient grounds for a protective order; the other side is allowed to test this claim[.]" Amherst Leasing Corp., 65 F.R.D. at 122 (citing Parkhurst v. Kling, 266 F. Supp. 780, 781 (E.D. Pa. 1967) (and citing 4 J. Moore, Federal Practice ¶ 26.69, at 26-496 to 26-497 (Rel. No. 11-1970)).  Some cases in this

District have held that all that the requesting party is required to show is that the proposed witness has some personal knowledge of the facts in issue, and once that initial showing is made, the party seeking to quash the trial subpoena, bears the "heavy burden to demonstrate good cause for a protective order." CBS, Inc., 102 F.R.D. at 822. Other cases have held that the party seeking to preclude or bar a party from testifying "bears the burden of proving that the proposed deponent has nothing to contribute." Speadmark, Inc. v. Federated Dep't Stores, Inc., 176 F.R.D. 116, 118 (S.D.N.Y. 1997).

Here, PMG first argues that Mr. Penrod, who admittedly serves as PMG's Chief Executive Officer and President, lacks knowledge of the facts at issue in this case. Declaration of Jack Penrod ("Penrod Dec."), at ¶¶ 1, 7. Second, although not actually declared by Mr. Penrod in his declaration, PMG apparently contends that Mr. Penrod testifying in this case would be an "annoyance, undu[ly] burdensome, and expens[ive]." PMG Br. Supp., at p.5. Each baseless argument will be taken in turn.

A.    Mr. Penrod Has Knowledge of the Issues in Dispute

Here, Mr. Penrod claims through a declaration that he lacks knowledge regarding practically everything to do with NBAC. Mr. Penrod declares that he now apparently lacks knowledge about NBAC's formation; about NBAC's operation; about NBAC's management; about the negotiation of the contract with SMC; and "did not have any contact with SMC[.]" Penrod Dec., at ¶¶ 3-7. Pursuant to documents produced during discovery in this and another case, and according to public records obtained by SMC, however, the facts tell a much different story and provide, at the very least, a basis for this Court to infer that Mr. Penrod has knowledge regarding NBAC such that he should be required to testify. See Spreadmark, Inc., 176 F.R.D. at 117-18 (inferring personal knowledge and denying protective order where senior management

official was present for numerous discussion concerning contract at issue); CBS, Inc., 102 F.R.D. at 822 (denying protective order where facts "suggest[]" that corporate executive "apparent[ly]" had personal knowledge of facts).

In support of its in limine motion, PMG relies only on Treppel v. Biovail Corp., No. 03-3002, 2006 WL 468314 (S.D.N.Y. Feb. 28, 2006) and Consol. Rail Corp. v. Primary Indus. Corp., No. 92-4927, 1993 WL 364471 (S.D.N.Y. Sept. 10, 1993). PMG's reliance, however, is severely misplaced because those cases are factually different from the facts of the present case.

In Treppel, this Court granted the defendant's application for a protective order seeking to avoid producing its chief executive officer and board member, and another board member, for depositions in a case involving an alleged smear campaign that sabotaged the plaintiff's career. 2006 WL 468314, at *1. Those were the only depositions sought by the plaintiff. Id. Both proposed deponents submitted declarations claiming that they lacked personal knowledge of the facts underlying the claims asserted by the parties. Id. Although noting that the plaintiff was entitled to "extensive discovery" regarding his claims, the Court held that the plaintiff failed to demonstrate why the noticed corporate representatives were believed to have personal knowledge of the facts at issue. Id. at *3. The Court further noted that the plaintiff did not first attempt to depose any lower level corporate officers before noticing the depositions of the chief executive officer and board member. Id. Although it granted the defendant's application for a protective order, the Court specifically noted that the plaintiff was free to again seek the depositions if the plaintiff could show that those proposed deponents "possess personal, non-duplicative knowledge of the relevant facts." Id.

In Consol. Rail Corp., this Court granted the defendant's application for a protective order precluding the depositions of the chairman, president, and chief executive officer; the vice

8

president of labor relations; and the senior vice president of operations in a case involving damages allegedly suffered by the plaintiff as a result of the defendant's decision to close its Philadelphia port facility.  1993 WL 364471, at *1.  The Court first recognized the three principles outlined above, namely that executives are not immune from testifying, a busy schedule does not shield an executive from appearing and testifying, and that a party seeking the testimony may test the executive's claim of lack of knowledge.  Id.  The Court further recognized that "unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation."  Id.  In granting the defendant's application, the Court deferred the live depositions of those proposed deponents until the plaintiff demonstrated that they had some unique knowledge relevant to the facts in dispute. Id.

This issue presented here is akin to CBS, Inc. in which this Court denied the corporate plaintiff's application for a protective order seeking to avoid the continuation of its president's deposition, and ordered that the plaintiff produce its witness for the remainder of the deposition. 102 F.R.D. at 823.  In support of its application for a protective order, the plaintiff submitted the affidavit of the president in which he claimed to lack knowledge about the facts relevant to the dispute, and that certain corporate subordinates are more knowledgeable about the facts.  Id. at 822.  The Court reviewed the transcript from the first day of the corporate president's deposition and, despite questioning that it deemed less than stellar, found that it was "apparent" that the president had personal knowledge about the facts in dispute.  Id.  The Court held that the plaintiff failed to meet its "heavy burden to demonstrate good cause" for the issuance of the protective order because, again, a review of the transcript "suggests" that the president possessed

"sufficient personal knowledge – some of which may be unique to him – to justify at least some further questioning.  Id.

Here, other than the self-serving (and unsigned and uncertified) declaration of Mr. Penrod, PMG offers no support for its refusal to produce him at the hearing.  It is unmistakably clear that Mr. Penrod possesses personal knowledge of the facts at issue because, among other reasons discussed below, he was a party to e-mails regarding the formation, establishment and management of NBAC at the Resorts International Casino.  Pursuant to documents produced by PMG during Mr. John, Inc. v. Nikki Beach Atlantic City, LLC and Penrod Management Group, Inc., a case that involved the very same claims and parties that are presented here and was pending in the Superior Court of the State of New Jersey, Law Division, Middlesex County, under Docket Number MID-L-7951-05, Mr. Penrod was a party to e-mail correspondence from Mr. Register who requested from Mr. Penrod and his son, Michael, responses and comments to questions and issues such as rent, management fees, and contribution amounts.  Mulvaney Dec., at Exh. A.  Furthermore, Mr. Penrod was a party to e-mail correspondence from his son, Michael, highlighting inventory and hard and soft costs for NBAC's opening night, and was asked to provide "additional items so we can create a master list we [can] use going forward."  Mulvaney Dec., at Exh. B.  In addition, on June 26, 2005, during the very summer of NBAC's operation and continued failure to pay, among other vendors and suppliers, SMC, Mr. Penrod was a party to e-mail correspondence, along with representatives from Resorts and accounting representatives from PMG, regarding the end-of-night closing procedures regarding money drops and checking and balancing of NBAC's cash registers.  Mulvaney Dec., at Exh. C.  Furthermore, regarding the formation and opening of NBAC, Mr. Penrod was quoted in news publications:

> "We've traveled for many years visiting famous beaches around
> the world to find that special recipe that now makes Nikki Beach

the ultimate beach club in the world," recounts Jack Penrod, owner of the Nikki Beach organization. "Even though we are in six different countries, we maintain our unique style, a kind of global culture. We are very excited to bring the Nikki Beach lifestyle to this beach and contribute to the development of Atlantic City."

Mulvaney Dec., at Exh. D. If Mr. Penrod lacks personal knowledge abut the formation and management of NBAC, as he declares under penalty of perjury, then why would he be quoted in news publications and included on various e-mails regarding ... for formation, management and operation of NBAC?

Furthermore, in or about the week of June 20, 2005, SMC complained to Mr. Register about its outstanding balance. Mulvaney Dec., at Exh. E (Futerman Direct Testimony Declaration ("Futerman Direct Dec."), at ¶ 38). Mr. Register informed SMC that he had to first meet and confer with Mr. Penrod before SMC received any payments. Mulvaney Dec., at Exhs. E, F (Futerman Dec., at ¶¶ 38-39). Indeed, the very person who PMG identifies and declares as having the most direct knowledge regarding the issues here – Mr. Register – actually lacked authority to make decisions on behalf of and bind NBAC and/or PMG without first obtaining approval and authority from Mr. Penrod, who now hides behind a lack of knowledge about the issues involved in this case. That Mr. Register had to meet and confer and obtain the authority and permission from Mr. Penrod before paying SMC is not surprising because Mr. Penrod is listed on corporate documents as an officer/director of every entity formed under the "Penrod" or "Nikki Beach" name including PMG, NBAC, Penrod Management Company, Penrod Management International, LLC, Penrod Property Management, Inc., Nikki Marina, LLC, Nikki Beach Club, Nikki Beach At Sea, LLC, Nikki Beach Music, LLC, Nikki Beach Publishing, LLC, Nikki Beach Holdings, LLC, to name but a few. Mulvaney Dec., at Exhs. G-Q. If Mr. Penrod's claim that he lacks information about the issues in this case was true, then why would Mr.

Register need to confer with and obtain approval from Mr. Penrod for anything related to NBAC, including the payment of its debts to SMC?

Perhaps shedding the most light on Mr. Penrod's obvious misrepresentations is an affidavit filed in this very tribunal some three years ago in a case captioned <u>2005 Florida Festival, LLC v. Nikki VIP, LLC and Penrod Management Group, Inc.</u>, which was pending under Civil Action Number 05-6856. Mulvaney Dec., at Exh. R. In that case, Lee Heiman, a principal of the plaintiff filed an affidavit in opposition to the defendants' motion to dismiss for lack of <u>in personam</u> jurisdiction. Mulvaney Dec., at Exh. R (Heiman Aff., at ¶ 1). According to Mr. Heiman, his company was contacted and engaged by, and eventually contracted with, Nikki VIP and PMG to assist with the production of concerts and live performances to be held at NBAC throughout the 2005 summer and, in particularly, on NBAC's opening night in late May 2005. Heiman Aff. In direct contrast to Mr. Penrod's contention in this case that he knows nothing about NBAC, Mr. Heiman's affidavit proves relevant:

> 14.    In or about the second week of April 2005, [David] Cardaci and Peter Higley, the Nikki executive with responsibility for its operations at Resorts, traveled to [Florida Festival's ("FF")] offices in New York City to meet me, Andrew Fox and other FF representatives. The principal purpose of this meeting was for the parties' representatives to meet, in the same room, face-to-face, to hammer out the final terms of the agreement. At this meeting in New York, Cardaci and I went through the contract, point-by-point, and successfully reached an accord on all of the remaining material terms – including Penrod's agreement to guaranty Nikki's obligations under the contract. ***Immediately thereafter, from FF's offices in New York, Cardaci called Jack Penrod, Mike Penrod's father and principal of the entire Nikki Beach empire, and reviewed the final terms of the contract with him point-by-point. As Cardaci expressly stated to me following this call from FF's offices in New York, Jack Penrod signed-off on all of the terms of the deal, including the Penrod guaranty.***

Mulvaney Dec., at Exh. R (emphasis supplied).  Aside from the fact that Mr. Penrod's review and approval of agreements and other issues related to, and making decisions for, NBAC further supports SMC's piercing argument, it also supports at the very least the inference that Mr. Penrod has personal knowledge regarding NBAC.  It is equally incredible to believe that Mr. Penrod would personally review and sign-off on one but not other contracts with vendors and suppliers of NBAC.

Equally compelling is the absence of any indication by Mr. Penrod of who at PMG, other than he, would have personal knowledge of the facts at issue about which he claims to lack.  For instance, Mr. Penrod declares that he "was not responsible for the formation or operation of NBAC."  Penrod Dec., at ¶ 5.  Mr. Penrod conveniently fails to declare who, if not he, was responsible for "the formation or operation of NBAC."  In addition, Mr. Penrod declares that he "did not oversee the day-to-day management of NBAC."  Penrod Dec., at ¶ 6.  Again, Mr. Penrod conveniently fails to declare who, if not he, was responsible for "the day-to-day management of NBAC."  Finally, Mr. Penrod declares that he "do[es] not have direct knowledge of the issues in dispute concerning the dispute between SMC and NBAC."  Penrod Dec., at ¶ 7.  Likewise, Again, Mr. Penrod conveniently fails to declare who, if not he, has such direct knowledge.

PMG also argues that it intends to offer Mr. Register, who was barred from testifying in the Mr. John, Inc. case for refusing to appear for his noticed deposition, rather than anyone else because he "has the most direct knowledge concerning the facts relating to the formation and operation of NBAC."  PMG Br., at p. 4.  First, "the most direct knowledge" does not constitute "personal knowledge."  Second, PMG's argument that Mr. Register "has the most direct

knowledge" is contradicted by the very testimony from Mr. Register that PMG seeks to offer and on which it intends to rely:

> 42.    NBAC had its own officers who were responsible for the daily management of the corporation.  Michael Penrod was in charge of the NBAC operation, lived in New Jersey, and had no position with PMG.

Declaration of Christine Tramontano, Esq. ("Tramontano Dec."), at Exh. C (Register Dec., at ¶ 42).  Indeed, in one breath, Mr. Register testifies that Michael Penrod was in charge of the entire NBAC operation, yet when Michael Penrod was deposed he apparently knew nothing about the relationship between PMG and NBAC.  A review of excerpts of the deposition transcript of Michael Penrod, a corporate subordinate to Mr. Penrod, from the Mr. John, Inc. case reveals that he was either confused or his deposition testimony about the "Penrod" and "Nikki Beach" companies that his father started and for which he serves as an officer and employee was intentionally evasive.  First, Michael Penrod, a subordinate corporate executive to Mr. Penrod, waffled on whether the companies for which he works – without a title – are in any way related:

> Q.    Michael, for whom do you currently work?
>
> A.    I work with Penrod Brothers, Inc. with – I also have a place called the Elbow Room in Fort Lauderdale and I got a salary from Penrod Management Group also.
>
> Q.    Is Penrod Management a subsidiary of Penrod Brothers?
>
> Mr. Savola:    Object.  Form.
>
> A.    No.
>
> Mr. Savola:    Just for the record purposes, if I object to the form it doesn't mean that you don't answer the question.  Go ahead and answer the question.  It just puts a notation on the record so if it comes up at trial it means I can address it with the judge.
>
> A.    Okay.  What were you asking?

Q.      Is Penrod Management a subsidiary of Penrod Brothers?

Mr. Savola:    Object.

A.      I don't think so.  I don't know.

Q.      Do you receive a salary from Penrod Management?

A.      Yes.

Q.      Do you have a title at Penrod Management?

A.      No.

Q.      What is your title at Penrod Brothers?

A.      I don't think I have one.  I guess I do marketing and stuff there.  That's our property in Miami Beach.

Mulvaney Dec., at Exh. S (Transcript, at 8:18 – 9:24 (Mar. 20, 2007)).  Next, Michael Penrod

testified that he did not even know what PMG does:

Q.      What exactly does Penrod Management do?

A.      I'm not sure.  What's the structure of it.  I don't know.  I'm not sure exactly what it does.

Q.      Is it a holding company for any subsidiaries?

A.      I don't know.

Q.      Do you know if it has any subsidiaries?

A.      I wouldn't know.  I'm not on the board so I'm not sure.

Q.      You receive a salary from Penrod Management?

A.      Uh-huh.  Yes.

Q.      And you don't know what it does?

A.      I'm not sure exactly.  You're asking me does it have subsidiaries.  I don't know any of the corporate structure.

Id. (Transcript, 10:23 – 11:16 (Mar. 20, 2007)).

15

Strangely, after declaring through Mr. Register, PMG's in-house counsel, that Michael Penrod was essentially stationed in New Jersey and in charge of NBAC's operation, PMG elects not to produce him for trial testimony and subject him to cross-examination. Tramontano Dec., at Exh. ___ (Register Direct Dec., at ¶ 42). Instead, PMG intends to produce Mr. Register because, as PMG now suggests, it is Mr. Register – and no one else – who has the most direct knowledge of the facts at issue here. Based on Mr. Register's own concession, however, it is not he who has personal knowledge of the facts at issue here, namely whether PMG is the alter ego of NBAC and presumably other "Nikki Beach" entities formed by Mr. Penrod and managed by PMG. To PMG's credit, the mystery of what PMG actually does, and who can testify about what it actually does, has remained just that, a mystery. At the very least, Mr. Penrod, as the president of PMG, which is coincidentally the managing member of NBAC, should be compelled to testify at the hearing so that his apparent lack of knowledge can be challenged and tested before the fact-finder, here a federal court, especially because the only discovery permitted in the currently pending but stayed arbitration proceeding was the service of notices to produce documents. It is a corporate structure issue, not a mere coincidence, that PMG is the managing member of NBAC. The managing member of NBAC is PMG, of which Mr. Penrod is the managing member. Structurally, who other than Mr. Penrod could be more appropriate to provide testimony?

As previously stated, where a high-ranking corporate officer contends that he or she lacks knowledge in an affidavit, as Mr. Penrod does here, then that contention "is subject to testing by the examining party." Treppel, 2006 WL 468314, at *1 (quoting Consolidated Rail Corp., 1993 WL 364471, at *1 (citing Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 122 (D. Conn. 1974))). "[A] claimed lack of knowledge does not provide sufficient grounds for a protective

order; the other side is allowed to test this claim by deposing the witness." <u>Amherst Leasing</u>

<u>Corp.</u>, 65 F.R.D. at 122 (citing <u>Parkhurst v. Kling</u>, 266 F. Supp. 780, 781 (E.D. Pa. 1967) (and

citing 4 J. Moore, Federal Practice ¶ 26.69, at 26-496 to 26-497 (Rel. No. 11-1970)).  Moreover,

where, as here, subordinate executives have been deposed or offer direct testimony that is less-

than-forthcoming, the corporate executive "should have to establish his ignorance at his

deposition rather than through affidavit[] [because] [t]he wide scope of discovery afforded by the

federal rules … demands no less." <u>Amherst Leasing Corp.</u>, 65 F.R.D. at 123.

     PMG has failed to satisfy its significant burden to preclude Mr. Penrod from having to

provide testimony in this matter, PMG's motion <u>in limine</u> should be denied.

B.     Nowhere Does Mr. Penrod Declare that Appearing to Testify Would Constitute an
<u>"Annoyance, Undue Burden, and Expense"</u>

     On page 5 of its brief, PMG argues, in relevant part, that "[Mr.] Penrod should be

protected from the annoyance, undue burden, and expense that would result from being

compelled to testify[.]" PMG Br. Supp., at p.5.  Although PMG casually asserts that argument,

Mr. Penrod's own supporting declaration is remarkably silent with respect to "the annoyance,

undue burden, and expense that would result" from him being required to testify in this case.

     Indeed, Mr. Penrod is by all stretches of the imagination of significant wealth.  Indeed, all

one has to do is perform a Google.com search on his name to discover a seemingly endless

number of news articles reporting everything from yet another opening of a "Nikki Beach" club

in yet another part of the world; webcasts of parties hosted by him and his son, Michael, at the

Cannes Film Festival; and the overall success of his other "Nikki Beach" business ventures.  It is

therefore no wonder why Mr. Penrod did not – and could not – actually declare that traveling to

New York to testify in this case would constitute an "expense."

17

As to Mr. Penrod's suggestion that requiring him to testify would constitute "an annoyance [and] undue burden," it is respectfully submitted that the argument is baseless. First, it is interesting to note that Mr. Penrod's cleverly crafted declaration fails to mention where he is; if he flew there and, if so, when he purchased the airline tickets; when he left; and if he has been back to Florida since he first left. Those facts are significant because, if disclosed, they may show that Mr. Penrod had absolutely no intention of ever reporting to New York to testify in this case, despite serving as an officer, director, managing member and sole shareholder to PMG and NBAC. Quite clearly Mr. Penrod was consulted by his own representatives regarding, "among other issues," paying SMC. Mulvaney Dec., at Exhs. A-C, E-F.

Mr. Penrod should, at the very least, be required to testify about his personal knowledge about the interrelation between PMG and his "Nikki Beach" entities including, but not limited to, NBAC. As the head of the "Nikki Beach" empire and the obvious mastermind of the many shells that make up "Nikki Beach," there is no person more appropriate to testify than Mr. Penrod. Mr. Penrod should not be allowed to escape testifying under oath in federal court about his companies while he sends his minions – who between them admit and to knowing next to nothing – to speak for him. To suggest that Mr. Penrod cannot spare two days to testify about his former club, NBAC, for which his company, PMG, served as managing member, is an affront to SMC and this Court. Although SMC's independent investigation reveals that Mr. Penrod was recently in the Middle East to personally negotiate the formation of yet another "Nikki Beach" entity on behalf of his "Nikki Beach" empire – a negotiation that culminated in the signing of a contract on or about May 5, 2008 – and presumably again hosting parties at the Cannes Film Festival, SMC would be more than amenable to adjourning the June 23, 2008, hearing date until

18

Mr. Penrod returns from whatever undisclosed business trip he is apparently on.  Mulvaney Dec.,

at Exh. T.

## POINT III

### SMC IS ENTITLED TO AN ADVERSE INFERENCE FOR PMG'S REFUSAL TO PRODUCE JACK PENROD AT TRIAL

In instances where a party causes the quashing of a subpoena, this and other courts have

imposed an adverse inference for that party's refusal to produce its witness.  In St. Paul Fire &

Marine Ins. Co. v. Royal Ins. Co. of America, No. 91-6151, 1993 WL 267347 (S.D.N.Y. 1993),

this Court imposed an adverse inference on a party that successfully quashed a trial subpoena for

an employee of the corporate defendant.  In that case, the corporate defendant moved to quash a

trial subpoena issued to its employee who worked in Atlanta, which required the employee to

travel more than 100 miles from his place of residence or business to testify in violation of Rule

45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure.  Id. at *1.  Although it quashed the

subpoena, this Court held that "[t]here is no reason … why a party which causes the quashing of

such a subpoena should be protected from any adverse inference which may be drawn from the

failure of the subpoenaed person to testify."  Id.  The Court further noted that the defendant, who

still employed the employee, could easily produce him to testify "and would do so if it

considered this advantageous.  In such instances, an adverse inference is appropriate."  Id. (citing

Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc., 486 F. Supp. 414, 433 (S.D.N.Y.

1980)).

Likewise, in a case involving piercing the corporate veil on a breach of a lease agreement,

such as here, the New York Supreme Court, Appellate Division, First Department, affirmed not

only the trial court's piercing of the corporate veil, but also its decision that an adverse inference

could be drawn against the defendant for failing to produce its president at trial.  <u>Simplicity Pattern Co., Inc. v. Miami Tru-Color Off-Set Service, Inc.</u>, 210 A.D.2d 24, 25, 619 N.Y.S.2d 29, 29-30 (N.Y.A.D. 1st Dep't 1994).  The court specifically found that the witness was the president of both the dissolve corporation and its dominant alter ego, and under the control of that alter ego.  <u>Id.</u>

Here, it is undisputed that Mr. Penrod is the president and sole shareholder of both NBAC and PMG.  It is also undisputed that PMG is the managing member of NBAC.  Indeed, PMG would naturally be anxious to produce Mr. Penrod, whose creations include PMG and the entities operating under the "Nikki Beach" trade name, if doing so would support PMG's position.  PMG should therefore not protected from, and be afforded the benefit of, refusing to produce Mr. Penrod at trial.  Accordingly, an adverse inference is appropriate.

## CONCLUSION

For the reasons set forth herein, it is respectfully submitted that PMG's motion in limine to quash the trial subpoena issued to Mr. Jack Penrod be denied.  It is additionally respectfully submitted that SMC's request that the Declaration of Jack Penrod be stricken and disregarded for its failure to comply with the requirements set forth in 28 U.S.C. § 1746.  Finally, it is respectfully submitted that SMC's request for the imposition of an adverse inference against PMG for its refusal and failure to produce Mr. Jack Penrod should be granted.

McELROY, DEUTSCH, MULVANEY & CARPENTER LLP
Attorneys for Respondent-Defendant,
Stewart's Mobile Concepts, Ltd.

Date: June 13, 2008          By: _____

Richard S. Mills
Ryan P. Mulvaney
88 Pine Street
24th Floor
New York, New York 10005
Telephone: (212) 483-9490
Facsimile: (212) 483-9129

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2008, I caused to be served the memorandum of law of

Defendant-Respondent, Stewart's Mobile Concepts, Ltd., in opposition to the motion in limine

by Plaintiff-Petitioner, Penrod Management Group, Inc., to quash the trial subpoena issued to

Jack Penrod, and in support of Stewart's Mobile Concepts, Ltd.'s request for an adverse

inference, Declaration of Ryan P. Mulvaney, Esq., and this Certificate of Service on all counsel

of record and the Clerk of Court via hand delivery and electronic filing.

McELROY,    DEUTSCH,    MULVANEY    &
CARPENTER LLP
Attorneys for Respondent-Defendant,
Stewart's Mobile Concepts, Ltd.

Date: June 13, 2008                    By:    _____
                                              Richard S. Mills
                                              Ryan P. Mulvaney
                                              88 Pine Street
                                              24th Floor
                                              New York, New York 10005
                                              Telephone: (212) 483-9490
                                              Facsimile: (212) 483-9129